John E. Schmidtlein (CA State Bar No. 163520)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:   (202) 434-5000
Facsimile:   (202) 434-5029
Email:       jschmidtlein@wc.com

*Attorney for Defendant Google LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| RUMBLE, INC.,<br><br>  Plaintiff,<br><br> v.<br><br> GOOGLE LLC and DOES 1-10, inclusive,<br><br>  Defendants. | Case No. 4:21-cv-00229-HSG<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MOTION TO STRIKE: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: September 9, 2021<br>Time:  2:00 p.m.<br>Place:  Courtroom 2<br>Judge:  Hon. Haywood S. Gilliam, Jr. |

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 9, 2021, at 2:00 p.m., or as soon thereafter as this matter may be heard, either in Courtroom 2 of this Court, located on the 4th Floor of the United States Courthouse, 1301 Clay Street, Oakland, California, or by videoconference or teleconference, Defendant Google LLC will hereby move the Court for an order dismissing the tying and search dominance theories of liability in Plaintiff's First Amended Complaint and striking the allegations in support thereof.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff failed to adequately plead coercion and a plausible antitrust injury, which deficiencies are fatal to Plaintiff's tying and search-dominance theories of liability in support of its monopolization claim under Section 2 of the Sherman Act. This Motion is also made pursuant to Federal Rule of Civil Procedure 12(f) on the grounds that the allegations in paragraphs 34, 35, and 75 through 176 of Plaintiff's First Amended Complaint are immaterial and impertinent, and as a result the Court should strike them.

The Motion is based upon this Notice; the accompanying Memorandum of Points and Authorities; any reply memorandum; the pleadings and files in this action; and such other matters Defendant may present at or before the hearing.

DATED: June 16, 2021

WILLIAMS & CONNOLLY LLP

By: /s/ John E. Schmidtlein

John E. Schmidtlein (CA State Bar No. 163520)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:   (202) 434-5000
Facsimile:    (202) 434-5029
Email:         jschmidtlein@wc.com

*Attorney for Defendant Google LLC*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

BACKGROUND ..............................................................................................................................2

LEGAL STANDARD .......................................................................................................................3

ARGUMENT ....................................................................................................................................4

I.   THE COURT SHOULD DISMISS PLAINTIFF'S TYING AND SEARCH-DOMINANCE THEORIES AS INADEQUATELY PLEADED ..........................................................................4

  A. Plaintiff has not pleaded facts establishing coercion in support of its tying theory ..................4

   *1. Plaintiff has not pleaded that Google coerced device manufacturers into preinstalling the YouTube app instead of a possibly desirable substitute* ..................................................5

   *2. Plaintiff has not pleaded that its product is a desirable substitute for the YouTube app* ......................................................................................................................................................7

   *3. Plaintiff's tying allegations address only a subset of the greater alleged video-sharing platform market*..........................................................................................................................8

  B. Plaintiff failed to plead an antitrust injury as part of its search-dominance allegations .............8

II.  THE COURT SHOULD STRIKE THE ALLEGATIONS SUPPORTING PLAINTIFF'S TYING AND SEARCH-DOMINANCE THEORIES AS IMMATERIAL AND IMPERTINENT .......................................................................................................................11

CONCLUSION ...............................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Ad Mgmt., Inc. v. Gen. Tele. Co. of Calif.*,
  190 F.3d 1051 (9th Cir. 1999) ............................................................................................ 10, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................ 3, 4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 3

*Brantley v. NBC Universal, Inc.*,
  675 F.3d 1192 (9th Cir. 2012) ............................................................................................ 5, 6, 7

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
  217 F. Supp. 2d 1028 (C.D. Cal. 2002) ...................................................................................... 14

*In re DRAM Antitrust Litig.*,
  536 F. Supp. 2d 1129 (N.D. Cal. 2008) ................................................................................ 11, 14

*Fantasy, Inc. v. Fogarty*,
  984 F.2d 1524 (9th Cir. 1993) ........................................................................................ 12, 13, 14

*Feitelson v. Google Inc.*,
  80 F. Supp. 3d 1019 (N.D. Cal. 2015) ..................................................................................... 8, 10

*FTC v. Qualcomm Inc.*,
  969 F.3d 974 (9th Cir. 2020) ....................................................................................................... 10

*In re Google Digit. Advert. Antitrust Litig.*,
  No. 20-cv-03556, 2021 WL 2021990 (N.D. Cal. May 13, 2021) ................................................. 5

*Hu Honua Bioenergy, LLC v. Haw. Elec. Indus., Inc.*,
  No. 16-cv-00634, 2018 WL 491780 (D. Haw. Jan. 19, 2018) .................................................... 10

*Lee v. Hertz Corp.*,
  330 F.R.D. 557 (N.D. Cal 2019) ............................................................................................ 4, 14

*Lorenzo v. Qualcomm, Inc.*,
  603 F. Supp. 2d 1291 (S.D. Cal. 2009) ....................................................................................... 10

*Moore v. James H. Matthews & Co.*,
  550 F.2d 1207 (9th Cir. 1977) ............................................................................................ 5, 6, 7

*NetApp, Inc. v. Nimble Storage, Inc.*,
  No. 13-cv-05058, 2015 WL 400251 (N.D. Cal. Jan. 29, 2015) ............................................ 11, 12

*Overhead Door Corp. v. Nordpal Corp.*,
  No. 4-75-Civ. 523, 1978 WL 1479 (D. Minn. Sept. 1, 1978) ..................................................... 14

*Paladin Assocs. Inc. v. Mont. Power Co.*,
   328 F.3d 1145 (9th Cir. 2003) ............................................................................................... 5

*Pixels.com, LLC v. Instagram, LLC*,
   No. 15-cv-03610, 2015 WL 10943591 (N.D. Cal. Dec. 21, 2015) ..................................... 11, 14

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
   471 F. Supp. 3d 981 (N.D. Cal. 2020) ................................................................................. 10

*Sahagian v. Genera Corp.*,
   No. 08-cv-07613, 2009 WL 9504039 (C.D. Cal. July 6, 2009) .......................................... 10

*Saroya v. Univ. of the Pac.*,
   --- F. Supp. 3d ----, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) .................................. 13, 14

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
   No. 19-cv-01461, 2020 WL 7022364 (D. Del. Nov. 30, 2020) ............................................ 3

*Sidibe v. Sutter Health*,
   4 F. Supp. 3d. 1160 (N.D. Cal. 2013) .................................................................................... 7

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) ................................................................................................. 4

*Smith v. eBay Corp.*,
   No. 10-cv-03825, 2012 WL 1951971 (N.D. Cal. May 29, 2012) ......................................... 6

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................................................ 9, 10

*Staley v. Gilead Scis., Inc.*,
   No. 19-cv-02573, 2020 WL 5507555 (N.D. Cal. July 29, 2020) ..................................... 3, 4

*Synopsys, Inc. v. ATopTech, Inc.*,
   No. 13-cv-02965, 2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) ....................................... 11, 14

*Teradata Corp. v. SAP SE*,
   No. 18-cv-03670, 2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ........................................ 6, 7

*United States v. Google LLC*,
   No. 20-cv-03010 (D.D.C. Jan. 15, 2021) ...................................................................... 1, 2, 8, 9

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010) ................................................................................................. 3

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1, 3, 12

Fed. R. Civ. P. 12(f) .................................................................................................... 3, 4, 12, 14

- iv -
DEFENDANT'S MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE
Case No. 4:21-cv-00229-HSG

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff filed this case on January 11, 2021, asserting two claims: (1) that Google allegedly maintained a monopoly in a United States online video-sharing platform services market in violation of Section 2 of the Sherman Act, and (2) that Google allegedly tied its YouTube app to a license for its Android mobile operating system, in violation of Section 1 of the Sherman Act. (Dkt. 1.) The original complaint was based on conjecture, speculation, and uninformed media reports about how Google displays and ranks videos on its search engine results pages and how mobile device manufacturers license the YouTube app for preinstallation on Android devices. Google filed a Rule 12(b)(6) motion seeking dismissal of Plaintiff's Section 1 tying claim. (Dkt. 16.) Rather than defend against the motion, Plaintiff filed a First Amended Complaint ("FAC").

The FAC jettisons the Section 1 tying claim and asserts only a single Section 2 claim, which is based on three distinct theories of liability. Like Plaintiff's original complaint, the FAC again alleges so-called "self-preferencing," namely, that Google "willfully maintained and abused its monopoly power in the U.S. video platform market by . . . rigging its search engine algorithms so that YouTube videos will always be listed first and requiring pre-installation and prominent placement of Google's YouTube apps on all Android smartphones in the United States." (Dkt. 21, FAC ¶ 194.)[1] The other two theories—spanning over 100 paragraphs newly added to the FAC— are based on allegations largely copied from a complaint filed last year by the United States Department of Justice ("DOJ") and certain State Attorneys General. *Compare* FAC ¶¶ 75-176 *with* Am. Compl., *United States v. Google LLC*, No. 20-cv-03010 (D.D.C. Jan. 15, 2021), ECF No. 94. These theories, which Plaintiff alleges for the first time in its FAC, allege (1) that Google tied its YouTube app to other Google apps licensed to Android device manufacturers, *see* FAC ¶¶ 150-51, and (2) that Google unlawfully dominates the search market with agreements involving the distribution of its Search product, *see* FAC ¶¶ 75-176.

The Court should not countenance Plaintiff's attempt to smuggle the *United States v. Google* allegations into this case. The newly added tying allegations fail to plead coercion—and thus cannot

---

[1] All references to "FAC" below refer to docket entry 21.

support a Section 2 monopolization claim. And the search-dominance allegations that Plaintiff repackages from the *United States v. Google* complaint are likewise insufficient, as they allege monopolization of a general search or search advertising market and therefore cannot support Plaintiff's claim of monopolization of the entirely different alleged video-sharing platform market. So that discovery in this case remains focused on the only theory not challenged by this motion—namely, the allegation that Google "self-preferences" YouTube—Defendant respectfully asks that the Court dismiss Plaintiff's tying and search-dominance liability theories and strike as impertinent and immaterial the newly added allegations in paragraphs 34, 35, and 75 through 176 of the FAC.

## BACKGROUND

Plaintiff hosts a video streaming website that purportedly competes against Google's YouTube service. The core of Plaintiff's original Complaint consisted of allegations that Google's search algorithms are rigged in favor of YouTube as part of a scheme to monopolize a video platform market, *e.g.*, that Google "unfairly rigg[ed] its search algorithms such that YouTube is the first listed links 'above the fold' on its search results page . . . ." (Dkt. 1, Compl. ¶ 3.) These "self-preferencing" allegations, which Plaintiff retains in the FAC, include experiments purportedly showing that in response to three search queries, Google Search ranked a video on YouTube higher than the same video that appeared on other platforms like Plaintiff's. *See, e.g.*, FAC ¶¶ 9-13, 69-74. Google does not seek dismissal of these allegations at the pleading stage; rather, Google will disprove this patently erroneous theory on summary judgment. As discovery will show, rival search engines like Microsoft Bing, Yahoo Search, and DuckDuckGo each return results similar to Google—they too rank YouTube's videos ahead of Rumble's. This, along with other evidence, will demonstrate that Google attempts to return search results most likely to satisfy consumers, regardless of whether such results include content found on Google's YouTube service—and Plaintiff offers no personal knowledge of any facts demonstrating otherwise. *See* FAC ¶¶ 28 (citing a newspaper article speculating about Google's video-search algorithm), 29-30 (citing a congressional report relying on the same newspaper article).

Rather than stand on the original allegations to prove its monopolization claim, Plaintiff's FAC also attempts to inject into this case legally deficient and irrelevant allegations, some copied

from a different lawsuit involving different legal claims and markets. In particular, Plaintiff now claims that Google's Mobile Application Distribution Agreements (MADAs) are unlawful tying agreements. FAC ¶¶ 150-51, 155. Plaintiff also claims that Google's search distribution agreements with smartphone, tablet, and browser manufacturers amount to monopolization of the general search market. FAC ¶¶ 75-176. These allegations are all derived from complaints filed by DOJ and various State Attorneys General in the United States District Court for the District of Columbia. As explained below, Plaintiff's new allegations are fatally flawed and irrelevant to its core "self-preferencing" theory, and thus should be dismissed and stricken from the FAC.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Despite this liberal standard, the Supreme Court has warned: "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

When a plaintiff advances multiple theories of liability in support of a single monopolization claim, courts may consider each theory separately and dismiss the improperly pleaded theories accordingly. As another court in this District recently explained in the context of a monopolization claim under Sections 1 and 2 of the Sherman Act, "[o]ften, a plaintiff asserts a single cause of action that is predicated on more than one liability theory, and a court eliminates one theory through a motion to dismiss." *Staley v. Gilead Scis., Inc.*, No. 19-cv-02573, 2020 WL 5507555, at *11 (N.D. Cal. July 29, 2020); *see also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, No. 19-CV-01461, 2020 WL 7022364, at *3-4 (D. Del. Nov. 30, 2020) (dismissing "a portion" of Plaintiffs' theories in support of their single Section 2 claim, while finding that other theories survived the motion to dismiss).

Whereas Rule 12(b)(6) motions challenge a complaint's legal sufficiency, Rule 12(f) motions address questions of relevancy. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-75 (9th Cir. 2010). When a complaint contains "immaterial, impertinent, or scandalous" allegations, the

court may strike those allegations to streamline the real issues in the case and "avoid the expenditure of time and money that must arise from litigating spurious issues." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). "A motion to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal 2019).

## ARGUMENT

Plaintiff's FAC contains three theories of liability in support of its Section 2 monopolization claim. The first is the "self-preferencing" theory carried over from Plaintiff's original Complaint, which alleges that Google "wrongfully divert[ed] massive traffic to YouTube" "[b]y unfairly rigging its search algorithms." FAC ¶ 3. The other two theories, newly introduced in the FAC, allege: (1) that Google unlawfully tied its YouTube app to five other Google apps, FAC ¶¶ 150-51, and (2) that Google unlawfully maintained a monopoly in the "general search services market," which "allowed Google to unfairly and wrongfully direct massive video search traffic to its wholly-owned YouTube platform." FAC ¶¶ 175, 176. Plaintiff's new tying theory is facially deficient, as Plaintiff fails to plead one of the necessary elements of a tying claim—coercion. And its new search-dominance theory is similarly flawed, as Plaintiff fails to allege a plausible antitrust injury. Because Plaintiff failed to plead an essential element of both liability theories, the Court should dismiss them accordingly. *See Iqbal*, 556 U.S. at 678; *Staley*, 2020 WL 5507555, at *11. As a result, the allegations in paragraphs 34, 35, and 75 through 176—all of which purport to support these two flawed theories—are immaterial and impertinent to the only potentially remaining theory in the FAC. The Court should strike these allegations under Rule 12(f). *See Lee*, 330 F.R.D. at 560.

I. **THE COURT SHOULD DISMISS PLAINTIFF'S TYING AND SEARCH-DOMINANCE THEORIES AS INADEQUATELY PLEADED.**

   A. **Plaintiff has not pleaded facts establishing coercion in support of its tying theory.**

The newly added tying theory in Plaintiff's FAC is grounded on the assertion that Google, through the MADA, ties the YouTube app to other preinstalled Google applications and certain Android application programming interfaces. FAC ¶¶ 149-51, 155. But Plaintiff alleges no facts plausibly suggesting that Google coerced device manufacturers into accepting the YouTube

application. At most, Plaintiff pleads that Google offers Android device manufacturers a free group license to multiple Google apps for preinstallation, including the YouTube app—which Plaintiff itself concedes is "genuinely useful" to Android users. *See* FAC ¶¶ 34, 150-51. Because Plaintiff does not plead coercion, which is a necessary element of a well-pleaded tying claim, the Court should dismiss Plaintiff's tying theory from the FAC.

To prevail on an illegal tying claim, a plaintiff must prove three elements: "(1) that there exist two distinct products or services in different markets whose sales are tied together; (2) that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market." *Paladin Assocs. Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) (internal quotation marks omitted). "Essential to the second element of a tying claim is proof that the seller *coerced* a buyer to purchase the tied product. A plaintiff must present evidence that the defendant went beyond persuasion and coerced or forced its customer to buy the tied product in order to obtain the tying product." *Id.*; *see also In re Google Digit. Advert. Antitrust Litig.*, No. 20-cv-03556, 2021 WL 2021990, at *4 (N.D. Cal. May 13, 2021) (explaining that a plaintiff must plead facts demonstrating that a defendant's "conduct was coercive, as opposed to merely persuasive").

Plaintiff fails to plead coercion for three reasons. As explained below, the FAC does not include allegations that: (1) Google coerced device manufacturers into preloading the YouTube app instead of a possibly desirable substitute, (2) Plaintiff's product is a desirable substitute for the YouTube app, or (3) Google's alleged coercion broadly extends across the many types of devices used for accessing the alleged video-sharing platform market.

### 1. Plaintiff has not pleaded that Google coerced device manufacturers into preinstalling the YouTube app instead of a possibly desirable substitute.

"Coercion occurs when the buyer must accept the tied item and *forego* possibly desirable substitutes." *Moore v. James H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977) (emphasis added); *see also Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1199 (9th Cir. 2012) (listing one "potential injury to competition threatened by . . . [a] tying arrangement" as "forc[ing] buyers into

giving up the purchase of substitutes for the tied product."). Absent from the FAC are any allegations that Google forced Android device manufacturers to take the YouTube app over a possibly desirable substitute. Plaintiff does not plead, for example, that it attempted to seek preinstallation of the Rumble app on even one Android device and was denied for any reason, let alone because of YouTube's preinstallation. Plaintiff also has pleaded no facts suggesting that an Android device manufacturer ever contacted Plaintiff about preinstalling the Rumble app (assuming it qualifies as a "desirable substitute"), or further that a manufacturer did so but ultimately decided against such preinstallation because it had already agreed to preinstall the YouTube app. Thus, Plaintiff has not alleged that any manufacturer had to "forego" or was "forced" into giving up an allegedly desirable substitute product in favor of the YouTube app. *See Moore*, 550 F.2d at 1217; *Brantley*, 675 F.3d at 1199.

At most, Plaintiff speculates that "[o]nce the manufacturer is forced to preinstall the YouTube app and give it a prime-real-estate location, the manufacturer has no incentive to waste space on another video platform app." FAC ¶ 155. But the FAC fails to explain what "prime-real-estate" is given to YouTube, how adding a single additional app "waste[s] space" on the device, or why no incentives exist to preinstall the Rumble app. The FAC likewise contains no allegation that the MADA requires displaying the YouTube app directly on a device's default home screen; nor could it, as the YouTube app is placed in a folder of Google apps on the default home screen, leaving ample room for other apps to be preloaded on the default home screen and other screens on a device.[2] In addition, Plaintiff does not allege that Google prohibits end users from freely and easily downloading the Rumble app, or any other video-sharing platform's app, onto their Android devices. This is not a case of a plaintiff alleging "that they have been *precluded* from offering [their product] as an alternative to [the alleged monopolist]." *Smith v. eBay Corp.*, No. 10-cv-03825, 2012 WL 1951971, at *4 (N.D. Cal. May 29, 2012) (emphasis added).

The allegations in the FAC thus fall far below what other courts in this District have found "enough to plead an anticompetitive injury." *See Teradata Corp. v. SAP SE*, No. 18-cv-03670, 2018

---

[2] If Plaintiff's reference to "space" is meant to refer to disk space, then the FAC alleges no facts plausibly suggesting that the disk space required for the YouTube and Rumble apps poses any impediment to a device manufacturer's preinstallation of both apps.

WL 6528009, at *18 (N.D. Cal. Dec. 12, 2018) (finding a tying theory sufficiently pleaded when the plaintiff alleged "prohibitive costs of switching" from the defendant's product to the plaintiff's and that the defendant's conduct "prevent[ed Plaintiff's] product offerings . . . from entering the market"). A buyer with no interest in a substitute is not the same as a buyer who "must . . . forego possibly desirable substitutes," *see Moore*, 550 F.2d at 1217, or is "force[d] . . . into giving up the purchase of substitutes for the tied product." *See Brantley*, 675 F.3d at 1199. Because the FAC fails to allege that any OEM had any interest in installing the Rumble app, the FAC thus fails to allege that Google precluded Plaintiff from offering its product as a competitor to YouTube.

### 2. *Plaintiff has not pleaded that its product is a desirable substitute for the YouTube app.*

The FAC contains no plausible allegation that Plaintiff's Rumble app is a desirable substitute that device manufacturers would prefer to preinstall instead of the YouTube app. As explained above, Plaintiff alleges nothing that suggests any Android device manufacturer has shown any interest in pre-installing the Rumble app. The lack of any allegation concerning device manufacturers outside the Android context underscores the point. Even though Plaintiff acknowledges that there are devices on other platforms outside the scope of Google's app distribution agreements and thus without YouTube preinstalled (such as devices on Apple's iOS platform, Microsoft's Windows platform, and Amazon's Fire OS platforms), *see* FAC ¶¶ 125, 145, Plaintiff cannot allege that Rumble has been preinstalled on any of these devices. In short, the FAC fails to allege that *any* device manufacturer views the Rumble app as a "desirable substitute" to preload instead of the YouTube app. *See Moore*, 550 F.2d at 1217. Thus, Plaintiff has not alleged a "significant negative impact on competition in the tied product market" because Plaintiff has not alleged that it was hindered from competing in the alleged video-sharing platform market. *See Sidibe v. Sutter Health*, 4 F. Supp. 3d. 1160, 1178 (N.D. Cal. 2013) ("[A] plaintiff must allege and ultimately prove facts showing a significant negative impact on competition in the tied product market.").

        3.    *Plaintiff's tying allegations address only a subset of the greater alleged video-sharing platform market.*

Plaintiff's tying allegations pertaining to YouTube's preinstallation on Android devices also cannot support a claim of monopolization because Plaintiff has not (and cannot) allege that Android has sufficient share in any market that could result in monopolization by YouTube of a video-sharing platform market. As Plaintiff admits, Android devices make up a minority of the mobile devices in the United States, trailing the leading Apple iOS mobile platform that runs on a majority of devices. FAC ¶ 125. Further, mobile devices are only a subset of the larger number of devices consumers use to access video-sharing platforms, which include laptop and desktop computers, televisions, and other smart devices. FAC ¶¶ 125, 145. The FAC is devoid of any allegation concerning the share of mobile Android devices relative to that of the numerous other devices used for accessing the video-sharing platform market. Accordingly, Plaintiff provides no basis for making the leap from allegations involving YouTube pre-installation requirements on Android devices to monopoly power in the far broader market for all "online video platforms" that may be accessed through a wide variety of non-Android devices. FAC ¶ 61; *see Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1031-32 (N.D. Cal. 2015) (faulting Plaintiff for failing to tie the effect of Google's "MADA[s] that admittedly only cover a subset of Android devices" to the broader "general Internet search and handheld search" markets).

                                \*        \*        \*

For each of these reasons, Plaintiff has alleged no facts plausibly suggesting that Google coerced device manufacturers into accepting the YouTube application and thereby monopolized a properly defined relevant market. The Court should therefore dismiss Plaintiff's flawed tying theory of liability.

    **B.**    **Plaintiff failed to plead an antitrust injury as part of its search-dominance allegations.**

The Court should also dismiss Plaintiff's search-dominance theory, because Plaintiff failed to allege a valid antitrust injury. As noted above, Plaintiff's FAC copies and repackages allegations and theories from a complaint in *United States v. Google* that predates Plaintiff's original Complaint in this action. The allegations in the *United States v. Google* complaint do not involve an online

video-sharing platform market; rather, they are based on alleged markets for general search and search engine advertising. *See* Am. Compl., No. 20-cv-03010, ¶¶ 88-110 (D.D.C. Jan. 15, 2021), ECF No. 94. Similarly, virtually all of Plaintiff's newly added allegations here are predicated on participation in a market for general search. *See* FAC ¶¶ 75-176.[3] But by Plaintiff's own account, this is a case about an alleged market for online video-sharing platform services, not any alleged market for search. FAC ¶ 61 ("[T]he market for consumers in the United States and globally for online video platforms are the relevant markets for antitrust purposes and for purposes of this lawsuit.").

To have standing to bring a Section 2 monopolization claim, Plaintiff must allege an antitrust injury. *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (explaining that "causal antitrust injury is a substantive element of an antitrust claim, and the fact of injury or damage must be alleged at the pleading stage"). An antitrust injury consists of five elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, . . . (4) that is of the type the antitrust laws were intended to prevent," and (5) "the injured party [is] a participant in the same market as the alleged malefactors." *Id.* (internal quotation marks omitted). Stated another way, the fifth element requires that "the party alleging [an antitrust] injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." *Id.*

The only injury Plaintiff alleges with respect to Google's alleged search dominance is that Google has "unfairly and wrongfully direct[ed] massive video search traffic to its wholly-owned YouTube platform." FAC ¶ 176. In other words, Plaintiff alleges that Google's alleged search dominance exacerbates the effects of Google's alleged "self-preferencing." But nowhere in the FAC does Plaintiff allege that it is a consumer or competitor of Google *with respect to search services*. Indeed, nowhere does Plaintiff allege that it participates in any way in any alleged search market. Plaintiff's alleged injury, therefore, is insufficient to support a theory of antitrust liability outside the video-sharing platform market.

---

[3] As discussed above, certain allegations in paragraphs 150, 151, and 155 of the FAC involve a theory that Google unlawfully ties the YouTube app to other Google products. The Court should dismiss that theory for the reasons stated in Section I.A, *supra*.

The case law sets out specific requirements for pleading that one is a consumer or competitor for purposes of establishing antitrust injury. To plead that it is a consumer of an alleged monopolist, a plaintiff must allege "specific facts detailing their alleged purchases" or uses of the monopolist's product. *Sahagian v. Genera Corp.*, No. 08-cv-07613, 2009 WL 9504039, at *5 (C.D. Cal. July 6, 2009). If a plaintiff fails to do so, "it is impossible to tell whether the Complaint plausibly alleges that they *are* market participants." *Id.*; *see also Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 1000 (N.D. Cal. 2020) (dismissing for failure to allege that "Plaintiffs participate in" the purported relevant market). In *Lorenzo v. Qualcomm, Inc.*, the court held that even an indirect purchaser, who alleged that he purchased a phone connected to the alleged monopolist's product through the supply chain, was "too remote from [the defendant's] alleged antitrust violations to support standing." 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009). And in *Feitelson v. Google, Inc.*, another court in this District dismissed a claim by indirect purchasers because they "failed to allege that they have suffered 'antitrust injury' in the same market as and sufficiently close to the alleged anticompetitive conduct to allow them to pursue private antitrust remedies." 80 F. Supp. 3d at 1028. To plead that it is a competitor of an alleged monopolist, a plaintiff must plead that it sells similar products or services to the same consumer base. *See FTC v. Qualcomm Inc.*, 969 F.3d 974, 985 n.8 (9th Cir. 2020); *Hu Honua Bioenergy, LLC v. Haw. Elec. Indus., Inc.*, No. 16-cv-00634, 2018 WL 491780, at *1 (D. Haw. Jan. 19, 2018).

Here, Plaintiff has not plausibly alleged that it is a consumer of or competitor with Google's search services. The FAC contains no allegation that Plaintiff's claim is based on its own use of, or any attempt by Plaintiff to offer to others, any general search product or service. It likewise contains no allegation that Google and Plaintiff compete for the same customers with respect to any search service. As such, Plaintiff has failed to allege that it is a consumer or competitor of Google's search service. Indeed, Plaintiff has made no attempt to allege that it participates in *any* capacity in the alleged market for general search. *Cf. Am. Ad Mgmt., Inc. v. Gen. Tele. Co. of Calif.*, 190 F.3d 1051, 1057 (9th Cir. 1999).

These pleading deficiencies are fatal to Plaintiff's search-dominance theory. *See Somers*, 729 F.3d at 963. To establish antitrust standing, a plaintiff must "have suffered its injury in the

market where competition is being restrained." *Am. Ad Mgmt.*, 190 F.3d at 1057-58. Where, as here, Plaintiff's alleged "injuries, though flowing from that which makes the defendant's conduct [allegedly] unlawful, are experienced in another market [the Plaintiff does] not suffer antitrust injury." *Id.* Because Plaintiff's only alleged injury occurs in an alleged "online video platform market," which is a different market altogether from the search market Google allegedly dominates, Plaintiff has not adequately pleaded an antitrust injury and has no standing to assert its search-dominance theory. The Court should therefore dismiss this theory. *See Pixels.com, LLC v. Instagram, LLC*, No. 15-cv-03610, 2015 WL 10943591, at *1 (N.D. Cal. Dec. 21, 2015) (dismissing claim in part because "alleged monopolistic behavior in . . . [an] 'ancillary or related market'" is insufficient to give rise to antitrust standing); *Synopsys, Inc. v. ATopTech, Inc.*, No. 13-cv-02965, 2015 WL 4719048, at *8 (N.D. Cal. Aug. 7, 2015) (dismissing Section 2 monopolization claim because plaintiff's "injuries [we]re alleged to have been sustained solely in" a market other than the market in which defendant's allegedly unlawful conduct occurred); *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1141 (N.D. Cal. 2008) (finding no antitrust standing and strictly enforcing the "same market" requirement despite econometric analysis showing that activity in one market allegedly affected another). And because there is no way Plaintiff "could plausibly allege antitrust injury to itself" under its search-dominance theory, the Court should dismiss that theory with prejudice. *See Pixels.com*, 2015 WL 10943591, at *2.

## II. THE COURT SHOULD STRIKE THE ALLEGATIONS SUPPORTING PLAINTIFF'S TYING AND SEARCH-DOMINANCE THEORIES AS IMMATERIAL AND IMPERTINENT.

For the reasons set forth above, the Court should dismiss Plaintiff's tying and search-dominance theories of liability. Upon doing so, the Court also should strike the allegations underpinning those dismissed theories (found in paragraphs 34, 35, and 75 through 176 of the amended complaint) as immaterial and impertinent to the remaining "self-preferencing" theory of Section 2 liability. *Cf. NetApp, Inc. v. Nimble Storage, Inc.*, No. 13-cv-05058, 2015 WL 400251, at *25-26 (N.D. Cal. Jan. 29, 2015) (striking under Rule 12(f) allegations that were "irrelevant" because they were directed at "claims that this Court previously dismissed for lack of supplemental

jurisdiction"). Leaving the underlying allegations to remain a part of this case "would only serve to unnecessarily complicate trial [and] cause the jury to draw unwarranted inferences." *See id.*

But even apart from dismissal under Rule 12(b)(6), the Court has an independent basis under Rule 12(f) to strike those allegations as failing to meet the standard for materiality and pertinence. Rule 12(f) provides that courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogarty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks omitted), *reversed on other grounds*, 510 U.S. 517 (1994). And "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id* (internal quotation marks omitted). Because the allegations in paragraphs 34, 35, and 75 through 176 of the amended complaint are both impertinent and immaterial to Plaintiff's "self-preferencing" claim, the court should strike them under Rule 12(f).

In its seminal case on Rule 12(f), the Ninth Circuit struck fraudulent inducement allegations from a breach of contract counterclaim. *Fogarty*, 984 F.2d at 1526. The court rejected the counterclaimant's argument that these "allegations were not meant to constitute an independent ground for rescission, but rather to present 'relevant background and foundational facts' establishing a pattern of abuse to support his [breach of contract] claim." *Id*. at 1527-28. Rather, because the counterclaimant offered "no legal theories . . . nor any coherent legal argument" articulating the relevance of the allegations to the underlying claim, and the allegations risked prejudice to the other party, delay, and confusion of the issues, striking the allegations under Rule 12(f) was appropriate. *Id*. at 1528. The allegations also involved third parties, so it would be burdensome for the opponent to answer them and could result in unwarranted and prejudicial allegations against the opponent. *Id*.

> Finally, the stricken allegations would have unnecessarily complicated the trial of the [underlying] claim by requiring the introduction of extensive evidence . . . and a mass of related documents, potentially adding weeks to the trial. The district court could properly grant the motion to strike for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case.

*Id.*

Another court in this District recently granted a motion to strike on similar grounds. In *Saroya v. University of the Pacific*, a plaintiff sued a university seeking a tuition refund because the university switched to an online format in the Spring 2020 semester. --- F. Supp. 3d ----, 2020 WL 7013598, at *1 (N.D. Cal. Nov. 27, 2020). The university moved to strike allegations in the complaint surrounding the university's stated plans for the Fall 2020 semester. *Id.* The court found that the university's plans for the fall semester, even if they generally shed light on the value of online learning, had no bearing on resolution of the underlying claim—*i.e.*, whether the university breached its contract for the spring semester. *Id.* at *9. Thus, the university's conduct during the fall semester was "immaterial and impertinent" to the remedy the plaintiff sought for conduct in the previous semester. *Id.* The court also held that allegations relating to the fall semester could prejudice the university by "unnecessarily complicat[ing]" the issues or causing a jury to "draw 'unwarranted' inferences at trial." *Id.* at *9 (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). The court thus struck the challenged allegations under Rule 12(f). *Id.*

As in *Fogarty* and *Saroya*, the allegations in paragraphs 34, 35, and 75 through 176 of the FAC are immaterial and impertinent to Plaintiff's Section 2 claim, which centers on the supposed rigging of Google's search algorithms to favor YouTube. Just as the only relevant question in *Saroya* was whether the university breached its Spring 2020 contract, the litigation here should focus on whether Google has taken action to harm consumers by advantaging YouTube over Rumble; there is no coherent argument that Plaintiff's tying and search-dominance allegations are pertinent to that inquiry. *See Fogarty*, 984 F.2d at 1527; *Saroya*, 2020 WL 7013598 at *9. And as in *Fogarty*, the corresponding expansion of the scope of discovery to include, for instance, a multitude of contracts and third parties (*e.g.*, the many device makers, browsers, and others referenced throughout the irrelevant paragraphs) would unfairly burden Google and involve the Court in needless disputes, causing delay. *See* 984 F.2d at 1527-28.

The fact that the search-dominance allegations are based on an entirely different and unrelated market further underscores their irrelevance. *See Saroya*, 2020 WL 7013598 at *9; *see* FAC ¶¶ 75-149, 152-54, 156-76. According to Plaintiff, "the relevant markets . . . for purposes of

this lawsuit" are "the market[s] for consumers in the United States and globally for online video platforms." FAC ¶ 61. Permitting Plaintiff to broaden its allegations to cover Google's conduct in the market for general search—a market that, according to Plaintiff itself, is *not* "the relevant market[] . . . for purposes of this lawsuit"—would risk juror confusion and prejudice to Google. *Id.*; *see Overhead Door Corp. v. Nordpal Corp.*, No. 4-75-Civ. 523, 1978 WL 1479, at *6 (D. Minn. Sept. 1, 1978) ("[T]he Court shares Overhead's concern that reference to evidence of Overhead's conduct in a variety of different markets may tend to confuse the jury and delay conclusion of the trial."); *see Pixels.com*, 2015 WL 10943591, at *1; *Synopsys, Inc.*, 2015 WL 4719048, at *8; *In re DRAM Antitrust Litig.*, 536 F. Supp. 2d 1129, 1141 (N.D. Cal. 2008). These superfluous allegations are merely an attempt by Plaintiff to complicate the issues unnecessarily and to imply that because Google allegedly engages in monopolistic conduct in the unrelated search market, it must do so as well in the video-sharing market—*i.e.*, the exact "prejudice that is sufficient to support the granting of a motion to strike." *Alco Pac., Inc.*, 217 F. Supp. 2d at 1033.

Under Rule 12(f), therefore, the Court should strike the allegations in paragraphs 34, 35, and 75 through 176 of the amended complaint as irrelevant and impertinent. *See Fogarty*, 984 F.2d at 1526; *Lee*, 330 F.R.D. at 560; *Alco Pac., Inc.*, 217 F. Supp. 2d at 1033.

## CONCLUSION

The Court should dismiss Plaintiff's tying theory and its search-dominance theory with prejudice. It should also strike the allegations relating to those theories from the FAC.

DATED: June 16, 2021  **WILLIAMS & CONNOLLY LLP**

By: /s/ John E. Schmidtlein

John E. Schmidtlein (CA State Bar No. 163520)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone:   (202) 434-5000
Facsimile:   (202) 434-5029
Email:       jschmidtlein@wc.com

*Attorney for Defendant Google LLC*