UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUMBLE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Case No. 21-cv-00229-HSG<br><br>**ORDER DENYING MOTION TO DISMISS AND TO STRIKE**<br><br>Re: Dkt. No. 32 |

Pending before the Court is Defendant's partial motion to dismiss and motion to strike, briefing for which is complete. *See* Dkt. No. 32 ("Mot."), 44 ("Opp."), 45 ("Reply"). Defendant asks the Court to dismiss Plaintiff's tying and search-dominance theories of liability and strike paragraphs 34, 35, and 75-176 of Plaintiff's First Amended Complaint. *See* Mot. at i. The Court held a hearing on the motion, *see* Dkt. No. 50, and now **DENIES** it.

**I.  BACKGROUND**

"Since 2013, Rumble has operated an online video platform." Dkt. No. 21 ("FAC") ¶ 14. Plaintiff alleges that "Rumble is one of the most respected independent and privately owned companies in the online video platform industry and market, and its business model is premised upon helping the 'little guy/gal' video content creators monetize their videos." *Id.* According to Plaintiff, "Rumble currently has more than 2 million amateur and professional video content-creators that now contribute to more than 100 million streams per month." *Id.* ¶ 22. Plaintiff alleges that "Rumble's success, however, has been far less than it could and should have been as a direct result of Google's unlawful anticompetitive, exclusionary and monopolistic behavior . . . ." *Id.* ¶ 23.

Rumble alleges that "Google has willfully and unlawfully created and maintained a

monopoly in the online video platform market by pursuing at least two anticompetitive and exclusionary strategies":

> First, by manipulating the algorithms (and/or other means and mechanisms) by which searched-for-video results are listed, Google insures [sic] that the videos on YouTube are listed first, and that those of its competitors, such as Rumble, are listed way down the list on the first page of the search results, or not on the first page at all. Second, by pre-installation of the YouTube app (which deters smart phone manufacturers from pre-installing any competitive video platform apps) as the default online video app on Google smart phones, and by entering into anti-competitive, illegal tying agreements with other smartphone manufacturers to do the same (in addition to requiring them to give the YouTube app a prime location on their phones' opening page and making it not-deletable by the user), Google assures the dominance of YouTube and forecloses competition in the video platform market.

*Id.* ¶ 27; *see also id.* ¶ 194 (alleging that Google's "anticompetitive and exclusionary conduct . . . has included rigging its search engine algorithms such that YouTube videos will always be listed first in search results and requiring pre-installation and prominent placement of Google's YouTube apps on all Android smartphones in the United States"). Plaintiff further alleges that "manufacturers and carriers are beholden to Google's Android ecosystem, which Google uses to preserve its monopolies in general search, search advertising, general search text advertising and the online video platform market." *Id.* ¶ 147. Plaintiff alleges that Defendant's "chokehold on search is impenetrable, and that chokehold allows it to continue unfairly and unlawfully to self-preference YouTube over its rivals, including Rumble, and to monopolize the online video platform market." *Id.* ¶ 146.

Plaintiff alleges that Defendant uses various agreements with Android-based mobile smart device manufacturers and distributors to ensure its monopoly of the video platform market. *See id.* ¶¶ 75–89. According to Plaintiff, Defendant "requires Android device manufacturers that want to preinstall certain of Google's proprietary apps to sign an anti-forking agreement." *Id.* ¶ 84.[1]

---

[1] Plaintiff explains that "in general an anti-forking agreement sets strict limits on the manufacturers' ability to make and sell Android-based devices that do not comply with Google's technical and design standards." FAC ¶ 84.

2

Plaintiff alleges that once an Android device manufacturer signs an anti-forking agreement, Google will only provide access to its vital proprietary apps and application program interfaces if the manufacturer agrees: "(1) to take (that is, pre-install) a bundle of other Google apps (such as its YouTube app); (2) to make certain apps undeletable (including its YouTube app); and (3) to give Google the most valuable and important location on the device's default home screen (including for its YouTube app)." *Id.* ¶ 85. As another example, Plaintiff asserts that "Google provides a share of its search advertising revenue to Android device manufacturers, mobile phone carriers, competing browsers, and Apple; in exchange, Google becomes the preset default general search engine for the most important search access points on a computer or mobile device." *Id.* ¶ 86. "And, by becoming the default general search engine, Google is able to continue its manipulation of video search results using its search engine to self-preference its YouTube platform, making sure that links to videos on the YouTube platform are listed above the fold on the search results page." *Id.*; *see also id.* ¶¶ 161–72 (alleging that Google's revenue sharing agreements allow it to maintain a monopoly in the general search market and online video platform market).

Plaintiff alleges that Defendant uses these agreements "to ensure that its entire suite of search-related products (including YouTube) is given premium placement on Android GMS devices." *Id.* ¶ 149. Rumble alleges that the agreements "effectuate a tie" that "reinforces Google's monopolies." *Id.* ¶ 151. Specifically, Plaintiff alleges that Defendant provides "Android device manufacturers an all-or-nothing choice: if a manufacturer wants Google Play or GPS, then the manufacturer must also preinstall, and in some cases give premium placement to, an entire suite of Google apps, including Google's search products and Google's YouTube app." *Id.* Plaintiff alleges that "[t]he forced preinstallation of Google's apps (including the YouTube app) deters manufacturers from preinstalling those of competitors, including Rumble's app. . . . [and] forecloses distribution opportunities to rival general search engines and video platforms, protecting Google's monopolies." *Id.* Moreover, Plaintiff alleges that "[i]n many cases" the agreements expressly prohibit the preinstallation of rival online video platforms, like Rumble. *See id.* ¶ 87.

According to Plaintiff, Defendant's "monopolist's stranglehold on search, obtained and

3

maintained through anticompetitive conduct, including tying agreements in violation of antitrust laws, has allowed Google to unfairly and wrongfully direct massive video search traffic to its wholly-owned YouTube platform" and therefore secure monopoly profits from YouTube-generated ad revenue. *Id.* ¶ 176. Plaintiff alleges that because "a very large chunk of that video search traffic . . . should have rightfully been directly to Rumble's platform," Plaintiff and content creators who have exclusively licensed their videos to Rumble "have lost a massive amount of ad revenue they would otherwise have received but for Google's unfair, unlawful, exclusionary and anticompetitive conduct." *Id.*

Accordingly, Plaintiff alleges that Defendant's conduct violates Section 2 of the Sherman Act, which makes it unlawful for any person to "monopolize, or attempt to monopolize . . . any part of the trade or commerce among the several States, or with foreign nations. . . ." 15 U.S.C. § 2; *see id.* ¶¶ 55, 191–200.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III.   DISCUSSION

### A.   Motion to Dismiss

Plaintiff pleads a single cause of action alleging Defendant violated Section 2 of the Sherman Act. "The offense of monopoly under [Section 2] has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Plaintiff defines the relevant market as the "online video platform market," where platforms "allow content creators and other consumers to upload, view, share and download video content." FAC ¶ 55.

Without real dispute, Plaintiff has adequately alleged a Section 2 claim. First, it alleges that Defendant obtained and maintains monopoly power in the online video platform market, asserting that YouTube controls 73% of global online video activity. *Id.* ¶ 37, 63, 193. And second, Plaintiff alleges among other things that Defendant, with no valid business purpose or benefit to users, designs its search engine algorithms to show users YouTube links instead of links to its competitors' sites. *Id.* ¶ 71; *see also* ¶¶ 68-74. According to Plaintiff, "Rumble and consumers (*e.g.* content creators) are disadvantaged, and competition is harmed, in the defined market because Google provides self-preferencing search advantages to its wholly-owned YouTube platform as a part of its scheme to maintain its monopoly power, and to reap a monopolist's financial rewards." *Id.* ¶ 74.

Instead, Defendant's motion is based on the somewhat counterintuitive premise that Plaintiff has pled *too* much. Defendant argues that Plaintiff's amended complaint should be broken into distinct theories of liability based on (1) self-preferencing, (2) tying of the YouTube app to other Google apps, and (3) unlawfully dominating the search market with agreements involving distribution of Defendant's search product. Mot. at 1. Defendant does not dispute that Plaintiff has adequately pled a Section 2 claim based on the first theory of liability, self-preferencing, but argues that the second and third theories, tying and unlawful domination of the

5

search market, should be dismissed. *Id.* at 1-2.

The only authority Defendant cites for the premise that a court can disaggregate a single Section 2 cause of action into subtheories, then scrutinize and potentially dismiss some subtheories without dismissing the entire cause of action, comes from two unpublished district court cases, one from the Northern District of California and another from the District of Delaware. *See* Mot. at 3; *Staley v. Gilead Scis., Inc.*, No. 19-cv-02573, 2020 WL 5507555, at *11 (N.D. Cal. July 29, 2020); *see also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, No. 19-CV-01461, 2020 WL 7022364, at *3-4 (D. Del. Nov. 30, 2020).[2] Defendant does not cite, and the Court has been unable to find, any Supreme Court or Ninth Circuit authority ratifying this approach. And the sort of parsing urged by Defendants is at least arguably in tension with the Supreme Court's direction that Sherman Act plaintiffs "should be given the full benefit of their proof without compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *see also LePage's Inc. v. 3M*, 324 F.3d 141 (3d Cir. 2003). This is especially true given the Ninth Circuit's holding that "even though [a] restraint effected may be reasonable under section 1, it may constitute an attempt to monopolize forbidden by section 2 if a specific intent to monopolize may be shown." *California Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 737 (9th Cir. 1979) (quoting *United States v. Columbia Steel Co.*, 334 U.S. 495, 531-532 (1948). Ultimately, in the absence of controlling authority supporting Defendant's proposed approach, the Court declines to reach the viability of each of the purported subtheories, given that Plaintiff undisputedly has adequately pled a Section 2 claim based on self-preferencing. Defendant's motion to dismiss is accordingly **DENIED**.[3]

---

[2] In its Reply, Defendant cites two additional authorities referencing the expense of antitrust discovery, but these cases are also not controlling, and do not support (or even discuss) the premise that a court can dismiss select subtheories within a single cause of action. *See* Reply at 4, *Kelsey K. v. NFL Enters., LLC*, 757 F. App'x 524, 527 (9th Cir. 2018) (affirming denial of discovery where "no plausible claim for relief has been pled"); *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1025 (N.D. Cal. 2015).

[3] Plaintiff also contends that Defendant's motion to dismiss is procedurally improper under Federal Rule of Civil Procedure 12(g)(2). Opp. at 19-20. However, the Court finds that the allegations in the original complaint were insufficient to place Defendant on notice of the additional theories described in the new allegations it seeks to dismiss. The Court's finding is

6

### B. Motion to Strike

Defendant also moves to strike paragraphs 34, 35, and 75 through 176 of the amended complaint. *See* Mot. at 2. These paragraphs generally concern Plaintiff's allegations that Google has unlawfully achieved and continues to maintain a monopoly in the online video platform market by conditioning access to its mobile operating system and Defendant's other popular services on preinstallation of the YouTube app and in some cases "expressly prohibiting the preinstallation of any rival . . . apps (which would include the Rumble app)[.]" *See* FAC ¶¶ 34, 87. Plaintiff argues that the allegations Defendant seeks to strike relate to forms of exclusionary conduct that are properly considered in adjudicating a monopolization claim, and further argues that "antitrust claims are to be adjudicated as a whole, . . . not parsed into discrete pieces." Opp. at 20.

Rule 12(f) of the Federal Rules of Civil Procedure states that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are "regarded with disfavor" because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*, No. 09-CV-03557-JSW, 2010 WL 370333, at *2 (N.D. Cal. Jan. 25, 2010). Where there is any doubt about the relevance of the challenged allegations, courts in this Circuit err on the side of permitting the allegations to stand. *See id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, 114 S. Ct. 1023 (1994)); *accord Pilgram v. Lafave*, No. 12-CV-5304 GAF-EX, 2013 WL 12124126, at *5 (C.D. Cal. Feb. 7, 2013); *Art Attacks Ink, LLC v. MGA Ent., Inc.*, No. 04-CV-1035-BLM, 2006 WL 8439887, at *4 (S.D. Cal. June 21, 2006). This is particularly true when the moving party shows no prejudice and when striking the allegations will not streamline

---

consistent with the purpose of the federal rules, as described by the Ninth Circuit. *See In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) (reading "12(g)(2) in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1"). And to the extent Defendant could have raised its arguments in a prior motion, the Court nonetheless exercises its discretion to consider those arguments in the interest of judicial economy. *See id.* (quoting *Banko v. Apple, Inc.*, No. 13–02977 RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013) ("Although Rule 12(g) technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy.").

the ultimate resolution of the action.  *St. Helena Unified Sch. Dist.*, 2010 WL 370333 at *2.

For the same reasons underlying the Court's denial of the motion to dismiss, Defendant has not shown that the allegations are so redundant, immaterial, impertinent, or scandalous as to justify striking them.  As noted above, substantial authority suggests that, depending on the factual record as it actually develops, all of the interrelated conduct alleged in the complaint could be relevant to the Section 2 claim that is not being challenged in this motion.  That fact alone weighs dispositively against striking the allegations targeted by Defendant.  Obviously, whether those allegations end up being backed by sufficient evidence to survive a summary judgment motion, or to warrant presentation to the jury at trial under the Federal Rules of Evidence, is a matter for a later stage of the case.  Accordingly, Defendant's motion to strike is **DENIED**.

## IV. CONCLUSION

Defendant's motion to dismiss and to strike is **DENIED.**  The court **SETS** a telephonic case management conference on August 30, 2022 at 2:00 p.m.  The parties shall submit an updated joint case management statement by August 23, 2022.  All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:    7/29/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge