Robert W. Dickerson, Jr. (SBN 89367)
E-mail: rdickerson@bwslaw.com
Allen W. Jansen (SBN 81992)
ajansen@bwslaw.com
Jean Kim (SBN
jkim@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel: 213.236.0600       Fax: 213.236.2700

Nicholas A. Gravante, Jr.
*Admitted Pro Hac Vice*
nicholas.gravante@cwt.com
Philip J. Iovieno
*Admitted Pro Hac Vice*
philip.iovieno@cwt.com
Jack G. Stern
*Admitted Pro Hac Vice*
jack.stern@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Tel: (212) 504-6000     Fax: (212) 504-6666

Attorneys for Plaintiff
RUMBLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| RUMBLE INC.,<br><br>            Plaintiff,<br><br>v.<br><br>GOOGLE LLC and DOES 1-10, inclusive,<br><br>            Defendants. | Case No.  4:21-cv-00229-HSG<br><br>**JOINT LETTER TO COURT REGARDING DISCOVERY DISPUTES** |

Pursuant to Paragraph 19 of the Court's Standing Order for Civil Cases,

plaintiff Rumble provides the attached 5-page joint letter (with attachments, including a Rumble-proposed Order and a Google-proposed Order) to the Court regarding discovery disputes which, notwithstanding good faith efforts by the parties to resolve, requires resolution by the Court.

Dated:  April 28, 2023                    Respectfully Submitted,

                                          BURKE, WILLIAMS & SORENSEN, LLP
                                          By:  /Robert W. Dickerson, Jr./
                                          _____
                                                Robert W. Dickerson, Jr.

                                          Attorneys for Plaintiff
                                          RUMBLE INC.


Dated:  April 28, 2023                    WILLIAMS & CONNOLLY LLP


                                          By: /John E Schmidtlein/
                                          _____
                                                John E. Schmidtlein

                                          Attorney for Defendant
                                          GOOGLE LLC


## **ATTESTATION**

I, Robert W. Dickerson, Jr., am the ECF User whose ID and password are being used to file this document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that counsel for Google have concurred in this filing.


                              /s/ *Robert W. Dickerson, Jr.*

Joint Discovery Dispute Letter to Judge Gilliam

## I.      Plaintiff's Position

Plaintiff respectfully seeks an Order (as proposed in Exhibit A) compelling defendant Google to produce: (a) documents that Google has already produced in other cases and investigations involving similar anti-competitive conduct by Google, and (b) documents relating to Google's internal strategic and planning deliberations concerning the same conduct, regardless of when those deliberations occurred.   Counsel for the parties have attempted, unsuccessfully, to resolve these issues through extensive negotiations over a significant period of time.

Google, as a general search platform, faces competition from specialized (or vertical) search platforms that offer specialized search results in areas such as travel, home shopping, and navigation.   Plaintiff Rumble is a specialized search platform that focuses on videos.   In response to competition from specialized search platforms, Google developed a variety of strategies, including acquiring its own specialized platforms, such as YouTube, and then favored its own specialized platforms in general search results in an effort to stifle competition.   The First Amended Complaint (FAC) (Dkt. 21) alleges such self-preferencing extensively, including for example at Figures 1 and 2 on pages 5 and 7 and ¶¶ 9-13.   This lawsuit focuses on that anticompetitive conduct and how it was compounded by Google's strategy of favoring its own platforms through contracts controlling their placement on Android phones.   *See, e.g.,* FAC ¶¶ 75-101 and Figure 6 on page 40.

This is not the first time Google has been investigated for and found to have engaged in anti-competitive self-preferencing of its own specialized (or vertical) platforms.   As alleged at FAC ¶¶ 29-30, the 2020 U.S. Congressional Report on Competition in Digital Markets cited Google's self-preferencing conduct as one example of a range of anti-competitive strategies by Google.

Similarly, the European Commission found in 2017 that Google had illegally self-preferenced its own comparison shopping service, and levied a $2.4 billion Euro ($2.8 billion) fine against Google.   On appeal, the EU's General Court upheld the fine:

> "The General Court finds that, by favoring its own comparison shopping service on its general results pages through more favorable display and position, while relegating the results from competing comparison services in those pages by means of ranking algorithms, Google departed from competition on the merits."[1]

The Congressional Report and the lengthy final EU decision confirm that Google produced extensive internal documents concerning its strategy in relation to competing specialized search platforms, including its self-preferencing strategy and information concerning the algorithms and extensive other means that Google has used to implement that strategy.   In discovery meet and confers, Google's counsel has not denied that Google has produced that material previously.

In view of Google's prior productions, Rumble requested that Google produce documents that Google already produced within the last ten years to the Department of Justice, the Federal Trade Commission, any other U.S. Government executive branch agency, Congress and/or the European Commission and Court concerning (a) the competition Google faces from specialized online search platforms and Google's strategies and conduct in responding to, reducing or

---

[1]      *See. e.g.,*   https://www.cnbc.com/2021/11/10/google-loses-battle-with-eu-as-court-upholds-2017-order.html (last accessed on April 4, 2023).

.

1

Joint Discovery Dispute Letter to Judge Gilliam

eliminating such competition (Request 13); and (b) its Google Search Algorithms and any preference or treatment by Google of YouTube in relation to other Video Platforms in the results for a search query that directly or indirectly seeks online video content (Request 14).[2]

Google has refused to produce <u>any</u> documents in response to either Request. As to Request No. 13, Google provided a cagily worded response stating that it has not received any requests from those entities seeking documents "regarding competition that Google faces from Rumble." As to Request No. 14, Google responds similarly that it has not received any requests from those same entities seeking documents concerning "any preference or treatment by Google of YouTube in relation to other Video Platforms." Tellingly, Google has not denied that it has previously produced documents concerning its general anti-competitive strategy and conduct in relation to specialized search platforms.

Request Nos. 13 and 14 address a central issue in this case: Google's strategy and plans for quashing competition from specialized platforms, including by preferencing Google's own specialized platforms. The requests are proportional to the needs of the case and do not impose an undue burden on Google. Given that Google has already produced these documents at least once, if not multiple times, the Google databases containing these documents have likely been preserved and already exist, and thus Google can produce the documents without undue burden.

A jury should be entitled to consider evidence concerning the genesis of Google's anti-competitive conduct and intent concerning competition from specialized search platforms. Google should not be allowed to evade such discovery by trying to narrow the scope of Rumble's document requests to documents concerning only video platforms or plaintiff Rumble, and only if such documents had been expressly sought by one of the government entities. Google's internal strategy for dealing with competition from specialized search platforms, including its broad approach to self-preferencing through its algorithms and other means is highly relevant to—and in fact central to—the claims in this case. To the extent that Google's anticompetitive strategies were developed first in relation to specialized platforms other than video platforms (or without regard to a specific specialized platform), evidence of such strategies and intent is highly relevant to the claims in this case. That high degree of relevance outweighs any asserted burden of searching existing databases of previously produced documents as set forth in Rumble's proposed Order.

Google has also taken the position that the relevant date range for all discovery in this case is governed by the four year statute of limitations for antitrust claims. Putting aside the question of whether the limitations period should be expanded based on fraudulent concealment or other theories, Google refuses to produce any internal strategy and planning documents prepared before 2017. During a March 23, 2023 meet and confer, Google's counsel stated the case law was clear on this issue. Rumble's counsel requested citations to that case law. None have been provided. FRCP Rule 26 does not impose such a limitation. *See, In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021) ("The relevant time period for discovery must be determined on a case-by-case basis. There is no rule that discovery be constrained to a particular time period beyond the general standard under Rule 26(b)(1) requiring that discovery be relevant and proportionate."); *Allen v. Similasan Corp.*, 2014 WL 1672594, at *2 (S.D. Cal. Apr. 28, 2014) ("statutes of limitations may be relevant to assess the timeliness of a lawsuit, but do not necessarily determine the relevant time period for discovery . . .."). In this case, Google likely developed an anticompetitive strategy and plan well before 2017 and that strategy and plan likely has been the

---

[2] Rumble's initial document requests with Google's responses are attached as Exhibit B.

2

Joint Discovery Dispute Letter to Judge Gilliam

foundation of its later efforts to limit or quash competition from specialized search platforms. That strategy and anti-competitive plan may have been developed even before Rumble was formed but it is nonetheless highly relevant to anti-competitive conduct that has harmed Rumble and other specialized search platforms years later.

Lastly, as the Court will see from a review of Exhibit B, Google's will-not-produce-any-documents position is a typical Google response. In response to the 36 initial requests, Google refused to produce any documents at all as to 24 of the requests (as highlighted in yellow in Exhibit B). Google has adhered to that same obstructive approach in response to subsequent document requests. Plaintiff anticipates that it unfortunately may need to present additional discovery disputes to the Court for resolution. Counsel for parties have continued to exchange letters, and have met and conferred, on additional disputes concerning Google's responses to Plaintiff's discovery requests, and may soon be at an impasse. Plaintiff is concerned that such disputes will stymie efforts to complete fact discovery by the current fact discovery cutoff of December 15, 2023. Because of that concern, Plaintiff is amenable, if the Court is so inclined, to having future discovery disputes directed to an assigned  magistrate judge to avoid burdening the Court with multiple discovery disputes.

## II.     Defendant's Position

Google has agreed to search for and produce documents responsive to Plaintiffs' document requests, relevant to the claims and defenses in this litigation, and proportional to the needs of the case. The parties have agreed on ESI custodians and search terms for Plaintiffs' document requests, and Google's review of ESI is underway. Requests 13 and 14, however, seek documents far afield from the issues in *this* case and would impose significant and unjustified burdens on Google. These Requests are nothing more than a fishing expedition through a decade of unrelated and irrelevant matters for documents regarding undefined features of Google Search that are unrelated to the particular allegations here regarding rigging Google Search algorithms to favor YouTube. Plaintiff further insists that Google search for material from years beyond the applicable limitations period. Plaintiffs' requests should be denied.

### Background

Plaintiff brings a single antitrust claim alleging "Monopolization and Attempted Monopolization of the U.S. Online Video Platform Market." FAC ¶¶ 191-200. That "online video platform market" is the *only* market Plaintiff alleges is relevant to its claim. *Id.* ¶¶ 1, 61, 193. In particular, Plaintiff alleges that Google has "rigg[ed] its search engine algorithms" such that webpages containing videos from YouTube, a Google subsidiary, "will always be listed first in search results," above those from other online video platforms, such as Rumble. *Id.* ¶ 194.

### Requests for Documents from Unrelated Investigations: RFP Nos. 13 and 14

In RFP No. 13, Plaintiff seeks documents that are facially unrelated and irrelevant to its claim about YouTube and the competition that YouTube purportedly faces from Rumble. Specifically, RFP No. 13 seeks documents Google has produced to regulators and government entities around the world over the past decade "concerning the competition Google faces from specialized online search platforms and Google's strategies and conduct in responding to, reducing or eliminating such competition." Through this RFP, Plaintiff demands that Google search voluminous productions made in various other matters for documents regarding competition with any number of undefined entities that could be characterized as a "specialized online search platform"—a term that could encompass entities like Amazon, eBay, Expedia, TripAdvisor, Yelp,

Joint Discovery Dispute Letter to Judge Gilliam

Booking.com, Angi, and Thumbtack, among others, all of which are irrelevant to the "online video platform market" alleged here.

Plaintiff contends that RFP No. 13 concerns "a central issue in this case." But nowhere in its FAC does Plaintiff make a single allegation about "specialized online search platforms," much less provide any factual basis for how Google's supposed competition with "specialized online search platforms" is relevant to this case. The FAC specifically alleges that Google preferences YouTube in Google Search results, to the exclusion of other online video platforms. Plaintiff's FAC citations allege only that. *See* FAC ¶¶ 9-13 & fig. 1 & 2. The FAC says nothing about the "travel, home shopping, and navigation" platforms Plaintiff now claims are relevant.[3] There is accordingly no basis for Plaintiff to seek documents concerning these unrelated categories. Indeed, unlike YouTube, which is a standalone website, specialized search units within Google Search typically display structured data relevant to a search query (e.g., flights to New York), not links to external webpages that are crawled and indexed.

Plaintiff's citations only prove the point. EC Case AT.39740 *Google Search (Shopping)* concerned comparison shopping services. This litigation has nothing to do with comparison shopping. Moreover, that case involved allegations that "Google's comparison shopping service is *not* subject to Google's generic search algorithms" at all—not that Google rigged those algorithms in its favor. European Commission, Press Release (June 27, 2017), https://tinyurl.com/3mxjad43 (emphasis added). Plaintiff also cites a U.S. House of Representatives Staff Report. But as reflected in the portion of that Report excerpted in the FAC, its statement regarding purported "preferential treatment to YouTube" was based on reporting "by the [Wall Street] Journal," not documents produced by Google. *See* FAC ¶ 30. The Report notes that the only information provided by Google was a denial "that Google Search is designed to favor YouTube." *Id.* The Report provides no basis for Plaintiff to obtain discovery about other wide-ranging aspects of Google Search, including documents produced to Congress that have nothing to do with allegations of self-preferencing regarding YouTube.

Similarly, RFP No. 14 would impose an extraordinary burden on Google to sift through millions of documents produced to regulators and government entities around the world and over the past decade, in search of documents purportedly relevant to self-preferencing of YouTube, when there is no basis to even believe such documents exist in those productions because none of those investigations involved YouTube. Rumble can—and has—propounded discovery requests directly seeking documents concerning its allegations that Google intentionally self-preferences YouTube in its Search results by rigging its Search algorithms. And Google has agreed to search agreed-upon custodians for documents responsive to such requests—namely RFPs No. 6, 8, 15, 16, 18, and 34. But the Federal Rules do not require the type of needle-in-the-haystack searching through productions from far-flung litigations and investigations that Plaintiff seeks.[4]

RFP No. 14 is a form of "cloned discovery" that courts routinely reject. Rather than serve Google with discovery requests that "describe with reasonable particularity each item or category of items to be inspected," Fed. R. Civ. P. 34(b)(1)(A), Plaintiff seeks to piggyback off discovery from a multitude of unrelated investigations and litigation. Courts within the Ninth Circuit

---

[3] Indeed, Plaintiff lists many characteristics of "online video platforms" in its FAC, but nowhere does it allege that "online video platforms" are a type of search engine or that Rumble competes with Google in a specialized search market. *See* FAC ¶¶ 55-56.

[4] The Court should deny RFP No. 13 for the same reason, even if it were related to Plaintiff's allegations.

Joint Discovery Dispute Letter to Judge Gilliam

regularly hold such requests improper. *See Wilmington Tr. Co. v. Boeing Co.*, 2020 WL 4125106, at *2 (W.D. Wash. July 20, 2020); *Ms. J.P. v. Barr*, 2020 WL 4643928, at *2 (C.D. Cal. Jan. 17, 2020); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 4680242, at *1-2 (N.D. Cal. Oct. 18, 2017); *King County v. Merrill Lynch & Co.*, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011).

Indeed, Google has no reason to believe that relevant documents reside in those other productions, even assuming that they are still accessible. As Google explained in its response to this request, Google has undertaken a review of investigations from the last 10 years and has confirmed that it has not received any request to produce documents to the Department of Justice, the Federal Trade Commission, any other U.S. Government executive branch agency, Congress and/or the European Commission and Court concerning "any preference or treatment by Google of YouTube in relation to other Video Platforms in the results for a search query that directly or indirectly seeks online video content." There is simply no legitimate basis to impose upon Google the exceptional burden of somehow searching through millions of pages of productions from unrelated matters for purportedly relevant documents that Google has no reason to believe exist.

**Discoverable Time Period**

Plaintiff additionally misstates Google's position regarding the discoverable time period. Google's position is not that the four-year statute of limitations is an absolute limit for all discovery. Indeed, Google already has produced documents from before 2017—namely, certain agreements between Google and third-parties. Rather, Google's position is that the limitations period is both a natural cutoff for most discoverable information and results in an eminently reasonable and proportional discovery period for this case, beginning January 2017.

To the extent Plaintiff asserts it is entitled to discovery from outside the limitations period, it must explain why such discovery is relevant. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). Google has offered to consider expanding the relevant discovery period on a request-by-request basis if Plaintiff provides sufficient explanations as to relevancy. *See Dryer v. Nat'l Football League*, 2010 WL 11469574, at *3 (D. Minn. Oct. 25, 2010) ("[T]he six-year statute of limitations period shall generally govern the scope of discovery, unless, with respect to a particular request, a greater time period is relevant."). The only explanation Plaintiff has offered is that it began operations in 2013—which has no bearing on the relevancy of *Google's* documents and information. Plaintiff has not even attempted to articulate when Google's purported self-preferencing began. Absent a sufficiently compelling explanation to the contrary, the limitations period—which includes over five years of documents and information—should govern the scope of discovery from Google. *See Cyntegra, Inc. v. IDEXX Labs., Inc.*, 2007 WL 9702008, at *3 (C.D. Cal. Aug. 22, 2007) (holding that a "five-year temporal limitation is in line with other cases where more extensive discovery would have been too burdensome").

**Conclusion**

Finally, Plaintiff's assertion that Google has engaged in an "obstructive approach" is an utterly unfounded charge. As noted above, Google's document production is ongoing and the parties recently reached agreement on ESI custodians and search terms. Google's counsel has likewise participated in numerous calls, emails, and correspondence in an effort to resolve any disputes. As this letter underscores, however, much of the discovery that Plaintiff seeks, which to date has included 103 RFPs (as well as 166 RFAs and additional interrogatories), is clearly overreaching. Plaintiff should simply focus its discovery on the claims and defenses actually at issue here in a manner proportional to the needs of the case.

EXHIBIT A

Plaintiff's Proposed Order

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

RUMBLE INC.,

              Plaintiff,

v.

GOOGLE LLC and DOES 1-10, inclusive,

              Defendants.

Case No.  4:21-cv-00229-HSG

**PLAINTIFF'S [PROPOSED] ORDER RE DISCOVERY DISPUTES**

      Having reviewed the parties' joint letter (Dkt. 82) IT IS HEREBY ORDERED:

      1.     Regarding Rumble's Requests for Production of Documents Nos. 13 and 14,  the Court finds that the burden on Google to conduct ESI searches of databases of documents it has already produced in other matters is minimal compared to the relevance of the information sought.  Google is Ordered to produce documents responsive to those Requests as follows:  Google is to search its existing databases of documents previously produced since 2010 to the entities identified in those Requests (not limited to Google's identified ESI custodians) using the ESI

4:21-CV-00229-HSG
PROPOSED ORDER RE
DISCOVERY DISPUTES

search terms currently agreed upon by the parties for searching Google's ESI, and is to produce the located documents to Rumble. Such production should occur within 30 days of the date of this Order absent leave of Court for good cause shown.

2. The statute of limitations for the claims asserted in the First Amended Complaint (Dkt. 21) does not constitute the cut-off date for "relevance" under Rule 26, Federal Rules of Civil Procedure.

3. Future discovery disputes in this matter shall be submitted to Honorable Magistrate Judge _____.

IT IS SO ORDERED.

Dated: _____, 2023                    _____
                                           Hon. Haywood S. Gilliam, Jr.
                                           United States District Court Judge

Burke, Williams &
Sorensen, LLP
Attorneys At Law
Los Angeles

4862-4745-8910 v2

- 2 -

4:21-CV-00229-HSG
PROPOSED ORDER RE
DISCOVERY DISPUTES

1   Respectfully submitted,

2   Robert W. Dickerson, Jr. (SBN 89367)
    E-mail:  rdickerson@bwslaw.com
3   Allen W. Jansen (SBN 81992)
    ajansen@bwslaw.com
4   Burke, Williams & Sorensen, LLP
    444 South Flower Street, Suite 2400
5   Los Angeles, CA  90071-2953
    Tel: 213.236.0600
6   Fax: 213.236.2700

7   Nicholas A. Gravante, Jr.
    *Admitted Pro Hac Vice*
8   nicholas.gravante@cwt.com
    Philip J. Iovieno
9   *Admitted Pro Hac Vice*
    philip.iovieno@cwt.com
10  Jack G. Stern
    *Admitted Pro Hac Vice*
11  jack.stern@cwt.com
    CADWALADER, WICKERSHAM & TAFT LLP
12  200 Liberty Street
    New York, NY 10281
13  Tel: (212) 504-6000
    Fax: (212) 504-6666
14
    Attorneys for Plaintiff
15  RUMBLE INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

4862-4745-8910 v2

- 3 -

4:21-CV-00229-HSG
PROPOSED ORDER RE
DISCOVERY DISPUTES

EXIHBIT B

Google's Responses to Rumble's 1st Requests for Production

John E. Schmidtlein (CA SBN 163520)
Stephen J. Fuzesi (admitted *pro hac vice*)
Benjamin M. Greenblum (admitted *pro hac vice*)
Michaela S. Wilkes Klein (admitted *pro hac vice*)
Jesse T. Clay (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029
Email:        jschmidtlein@wc.com
              sfuzesi@wc.com
              bgreenblum@wc.com
              mwilkesklein@wc.com
              jclay@wc.com

David H. Kramer (CA SBN 168452)
WILSON SONSINI GOODRICH &
ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone:    (650) 493-9300
Facsimile:    (650) 565-5100
Email:        dkramer@wsgr.com

*Attorneys for Defendant Google LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| RUMBLE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 4:21-cv-00229-HSG<br><br>**GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF RUMBLE, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>Judge:        Hon. Haywood S. Gilliam, Jr. |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Google LLC ("Google") hereby submits these responses and objections to Rumble, Inc.'s First Set of Requests for Production of Documents, dated October 5, 2022.

## **RESERVATION OF RIGHTS**

1.  As to all matters referred to in these objections and responses, Google's investigation and discovery is ongoing.  The specific responses set forth below and any production made pursuant to the Requests are based upon, and necessarily limited by, information now available to Google.  Google reserves the right to modify and supplement its objections and responses and to present in any proceeding and at trial any further information and documents obtained during discovery.

2.  Any statement contained in these objections and responses that non-privileged information or documents will be produced in response to a specific Request does not mean that any such information or documents actually exist, but only that they will be produced to the extent that they exist and can be obtained without undue burden.  Specifically, with respect to electronically stored information, any response that advises Google will produce documents located after a reasonable search means that Google's search necessarily will be limited by, among other things, the use of de-duplication technology, custodians, search terms, and date limitations.

3.  These objections and responses are made without in any way waiving or intending to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, for any purpose, of information or documents produced in response to the Requests; (b) the right to object on any ground to the use of the information or documents produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a request for further responses to the Requests; or (d) the right at any time to revise, correct, supplement, or clarify any of the objections or responses contained herein.

4.  All information and documents supplied in response to the Requests are for use in this litigation and for no other purpose.

## **GENERAL OBJECTIONS**

1. Google objects to the Requests to the extent that they purport to seek the disclosure of information or documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, doctrine, or law that limits discovery.  To the extent that any such protected information or documents are inadvertently produced in response to the Requests, the production of such information or documents shall not constitute a waiver of Google's right to assert the applicability of any privilege, protection, or immunity to the information or documents, and any such information or documents shall be returned to counsel for Google immediately upon discovery thereof.

2. Google objects to the Requests to the extent that they purport to require Google to search for or produce documents, data, or information that are not in Google LLC's possession, custody, or control. Google will only search for and produce information and materials that are in its possession, custody, or control.

3. Google objects to each Request to the extent that it assumes or appears to assume any fact, event, or legal conclusion is true or that any characterization is accurate.  No response is an admission of any factual characterization or legal contention.

4. The foregoing General Objections and the Objections to the Instructions and Definitions are incorporated into each of the following specific responses.  Any specific objections are in addition to these General Objections and failure to reiterate a General Objection does not constitute a waiver of that or any other objection.

## **OBJECTIONS TO THE INSTRUCTIONS AND DEFINITIONS**

1. Google objects to Instruction No. 11 on the grounds that purporting to require Google to provide instructions, software, or computer code for the interpretation of the data it provides is overly burdensome.  Google does not expect to produce data that could not be read by commercially available software that is equally available to all parties. To the extent there is data that Google produces that Plaintiff contends is not possible to interpret using commercially available software, Google is willing to meet and confer.

2.    Google objects to Instruction No. 12 on the grounds that purporting to require Google to document any document that has been destroyed, lost, erased, or is no longer in its possession, custody, or control is unduly burdensome, provides no probative information, and is not proportional to the needs of the case.

3.    Google objects to Instruction Nos. 4 and 13 to the extent they purport to impose any obligations in excess of those set forth in the Protective Order entered on October 27, 2022, the Local Rules for the Northern District of California, or the Federal Rules of Civil Procedure.

4.    Google objects to the definition of "Document" as overly broad and unduly burdensome. Google will not search for drafts or produce duplicates of documents. Google also objects to this definition to the extent that it purports to require Google to search for, collect, review, and produce any documents beyond the email and electronic files of agreed-upon custodians, including documents that are not reasonably accessible.

5.    Google objects to the definition of "Google," "Defendant," "You," and "Your," as well as "YouTube," which includes "any and all of its predecessor or successor corporations, companies, or other business entities in which it is an officer, director, member, or 50% or more shareholder, as well as any agents, representatives, insurers, attorneys, directors, officers, subsidiaries, affiliates, employees, and all others over whom Google has control." Google responds to these RFPs on behalf of Google, and will search for documents within Google's possession, custody, or control.

6.    Google objects to the definition of "Online Video Platform Market," "Google Application(s)," and all other definitions to the extent they implicitly or explicitly incorporate factual or legal conclusions. By responding to these RFPs, Google is not adopting or agreeing to any of Plaintiff's factual or legal positions.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

**Request for Production No. 1**

Documents sufficient to show the current Corporate Organization Chart (name, position/title and reporting hierarchy) for Google and for YouTube, and such Charts for each of them as of January 1 of each of the following years: 2011 through and including 2021.

**Response to Request No. 1:**

Google objects to Request No. 1 on the grounds that the term "Corporate Organization Chart" is vague and ambiguous. Google further objects to Request No. 1 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks organizational charts for all employees of Google and YouTube and for the time period dating back to 2011. Google further objects to Request No. 1 on the grounds that it is unduly burdensome as Google and YouTube do not generate organizational charts in the ordinary course of business. Google will not be producing any documents pursuant to this request.

**Request for Production No. 2**

For each person listed on the current Corporate Organization Charts for Google and YouTube, documents sufficient to show that person's job description/responsibility, and the address of the Google or YouTube location where the person current works, or if that person currently works remotely, the address of that remote location.

**Response to Request No. 2:**

Google objects to Request No. 2 on the grounds that the term "Corporate Organization Chart" is vague and ambiguous. Google further objects to Request No. 2 on the grounds that it is overbroad and unduly burdensome, including to the extent that it seeks an employee's "job description/responsibility" for the time period dating back to 2011, as well as the address at which the person works (whether remote or in an office). Such information's probativeness (if any) is far outweighed by the burden posed by its collection. Moreover, Google objects to this request to the extent it seeks the address at which a given employee works as irrelevant to any party's claims or defenses, as well as on privacy grounds. Google will not be producing any documents pursuant to this Request.

**Request for Production No. 3:**

Documents sufficient to show the name of each Google employee who has, at any time between January 1, 2013 and the present, worked on developing, revising, replacing or deleting a Google search algorithm (or other means) used by Google to produce Google search results when the search is for online video content (or the user's search query will result in online video content being displayed among the search results), such as on YouTube.com or Rumble.com (a "Google Search Algorithm" or "GSA"). Hereinafter, each such person will be referred to as a "Google Search Employee" or "GSE").

**Response to Request No. 3:**

Google objects to Request No. 3 on the grounds that the terms "Google search algorithm," "search is for online video content," and "developing, revising, replacing, or deleting" are vague and ambiguous.  Specifically, Google employs many algorithms in its search stack; it is impossible to isolate in advance which of the algorithms may be implicated by a given search query. Google further objects to Request No. 3 on the grounds that it is overbroad and unduly burdensome, including to the extent that it seeks "the name of each Google employee" that performed specific functions dating back to 2013.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 3 on the grounds that it is unduly burdensome as Google does not track employees based on whether such employees "develop[ed], revis[ed], replac[ed], or delet[ed]" elements of Google's search stack in the ordinary course of business. Google will not be producing any documents pursuant to this Request.

**Request for Production No. 4:**

For each GSE identified in documents responsive to Request No. 3, documents sufficient to show, for each such person, that person's tenure at Google; that is, employment start date, and if no longer employed by Google, the end date of such employment.

**Response to Request No. 4:**

Google objects to Request No. 4 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the tenure and employment dates of specific employees that performed specific functions dating back to 2013.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 4 on the grounds that it is unduly burdensome as Google does not track employees based on whether such employees "develop[ed], revis[ed], replac[ed], or delet[ed]" elements of Google's search stack in the ordinary course of business. Google will not be producing any documents pursuant to this Request.

**Request for Production No. 5:**

For each GSE identified in documents responsive to Request No. 3, documents sufficient to show, for each such person, the date ranges when that person worked on a GSA.

**Response to Request No. 5:**

Google objects to Request No. 5 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the dates that specific employees performed specific functions dating back to 2013.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 5 on the grounds that it is unduly burdensome as Google does not track employees based on whether such employees "worked on a GSA" in the ordinary course of business. Google will not be producing any documents pursuant to this Request.

**Request for Production No. 6:**

For each GSE identified in documents responsive to Request No. 3, documents sufficient to show, for each such person, the GSA or GSAs that person worked on, the date ranges of such work, and if the worked-on GSA has a name, number, reference, indicator or other identifying information by which it is called, that name, number, reference, indicator or identifying information.

**Response to Request No. 6:**

Google objects to Request No. 6 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks information about algorithms that specific employees worked on dating back to 2013, as well as the dates specific employees worked on such algorithms.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 6 on the grounds that it is unduly burdensome as Google does not track employees based on whether such employees "worked on a GSA" in the ordinary course of business, nor does Google track which search algorithm on which a given employee worked in the ordinary course of business.  Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for non-privileged documents from 2017 to the present that provide a narrative overview of algorithms within its search stack that affect the ranking of video results.

**Request for Production No. 7:**

For each GSE identified in documents responsive to Request No. 3, documents sufficient to show each person's job title and job description for each position held at Google, documents sufficient to show each person's current employment status with Google or YouTube, the Google or YouTube location where employed, and the person's last known home address.

**Response to Request No. 7:**

Google objects to Request No. 7 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks an employee's "job title and job description" for the time period dating back to 2013, as well as the current employment location and home address of certain employees.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection and intrusiveness on privacy to the extent the request seeks home addresses.  Moreover, Google objects to this request to the extent it seeks the address at which a given employee works as irrelevant to any party's claims or defenses, as well as on privacy grounds. Google further objects to Request No. 7 on the grounds that it is unduly burdensome as Google and YouTube do not generate job descriptions in the ordinary course of business.  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 8:**

Documents describing or depicting each GSA employed by Google from 2013 to the present, and the dates when each GSA was employed, and for each GSA used by Google from 2013 to the present, documents sufficient to describe the name, number, indicator, reference or other identifying information used by Google to refer to the GSA, and the Google person or persons most knowledgeable about the GSAs.

**Response to Request No. 8:**

Google objects to Request No. 8 on the grounds that the terms "GSA" and "employed" are vague and ambiguous. Specifically, Google employs many algorithms in its search stack; it is impossible to isolate in advance which of the algorithms may be implicated by a given search query. Google further objects to Request No. 8 on the grounds that it is overbroad and unduly burdensome, including to the extent that it seeks information about "each GSA employed by Google" dating back to 2013. Such information's probativeness (if any) is far outweighed by the burden posed by its collection. Google further objects to Request No. 8 on the grounds that it is unduly burdensome as Google does not track the "persons most knowledgeable" about various elements of Google's search stack in the ordinary course of business. Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for non-privileged documents from 2017 to the present that relate to algorithms within its search stack that affect the ranking of video results.

**Request for Production No. 9:**

Documents sufficient to identify the GSA that was used by Google to generate the search results for the search entitled "Baby preciously cuddles cat for nap time" as shown and described in Paragraphs 9 to 12 of the FAC, the source code for that GSA, and the person or persons responsible for development of that GSA.

**Response to Request No. 9:**

Google objects to Request No. 9 on the grounds that the term "GSA" is vague and ambiguous.  Specifically, Google employs many algorithms in its search stack, many of which may have large or small effects on the results for a given query.  Google further objects to Request No. 9 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the source code for any of Google's algorithms.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 9 on the grounds that it is unduly burdensome as Google does not track the "persons responsible for development" of various elements of Google's search stack in the ordinary course of business.  Google will not be producing documents pursuant to this Request.

**Request for Production No. 10:**

Documents sufficient to identify the GSA that was used by Google to generate the search results for the search entitled "funny dogs" as shown and described in Paragraph 69 of the FAC, the source code for that GSA, and the person or persons responsible for development of that GSA.

**Response to Request No. 10:**

Google objects to Request No. 10 on the grounds that the term "GSA" is vague and ambiguous.  Specifically, Google employs many algorithms in its search stack, many of which may have large or small effects on the results for a given query.  Google further objects to Request No. 10 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the source code for any of Google's algorithms.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 10 on the grounds that it is unduly burdensome as Google does not track the "persons responsible for development" of various elements of Google's search stack in the ordinary course of business.  Google will not be producing documents pursuant to this Request.

**Request for Production No. 11:**

Documents sufficient to identify the GSA that was used by Google to generate the search results for the search entitled "funny dogs on rumble" as shown and described in Paragraph 70 of

the FAC, the source code for that GSA, and the person or persons responsible for development of that GSA.

**Response to Request No. 11:**

Google objects to Request No. 11 on the grounds that the term "GSA" is vague and ambiguous.  Specifically, Google employs many algorithms in its search stack, many of which may have large or small effects on the results for a given query.  Google further objects to Request No. 11 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the source code for any of Google's algorithms.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 11 on the grounds that it is unduly burdensome as Google does not track the "persons responsible for development" of various elements of Google's search stack in the ordinary course of business.  Google will not be producing documents pursuant to this Request.

**Request for Production No. 12:**

Documents sufficient to identify the GSA that was used by Google to generate the search results for the search entitled "cat watches in disbelief as two rats fight each other" as shown and described in Paragraph 72 of the FAC, the source code for that GSA, and the person or persons responsible for development of that GSA.

**Response to Request No. 12:**

Google objects to Request No. 12 on the grounds that the term "GSA" is vague and ambiguous.  Specifically, Google employs many algorithms in its search stack, many of which may have large or small effects on the results for a given query.  Google further objects to Request No. 12 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks the source code for any of Google's algorithms.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 12 on the grounds that it is unduly burdensome as Google does not track the "persons responsible for development" of various elements of Google's search stack in the ordinary course of business.  Google will not be producing documents pursuant to this Request.

**Request for Production No. 13:**

Documents and things (including communications) that Google has produced within the last ten years to the Department of Justice, the Federal Trade Commission, any other U.S. Government executive branch agency, Congress and/or the European Commission and Court concerning the competition Google faces from specialized online search platforms and Google's strategies and conduct in responding to, reducing or eliminating such competition.

**Response to Request No. 13:**

Google objects to Request No. 13 on the grounds that the phrase "specialized online search platforms" is vague and ambiguous.  Google further objects to Request No. 13 on the grounds that it is overbroad, unduly burdensome, and requests production of materials wholly irrelevant to Rumble's allegations.  Google also objects to the extent the Request seeks documents dating back to 2012, the collection of which would be unduly burdensome.  Rumble's FAC makes no allegation about, or reference to, any "specialized online search platform."  Subject to and without waiving the foregoing General and Specific Objections, Google responds that it has not received in the last 10 years any request to produce information to the Department of Justice, the Federal Trade Commission, any other U.S. Government executive branch agency, Congress and/or the European Commission and Court seeking documents regarding competition that Google faces from Rumble or Google's strategies and conduct in responding to, reducing or eliminating such competition.

**Request for Production No. 14:**

Documents and things (including communications) that Google has produced within the last ten years to the Department of Justice, the Federal Trade Commission, any other executive branch agency, Congress, or the European Commission and Court concerning its GSAs and concerning any preference or treatment by Google of YouTube in relation to other Video Platforms in the results for a search query that directly or indirectly seeks online video content.

**Response to Request No. 14:**

Google objects to Request No. 14 on the grounds that the term "GSAs" is vague and ambiguous.  Google further objects to Request No. 14 on the grounds that it is overbroad and unduly burdensome, including because every search query "indirectly seeks online video content" to at least

some degree.  Google also objects to the extent the Request seeks documents dating back to 2012, the collection of which would be unduly burdensome.

Subject to and without waiving the foregoing General and Specific Objections, Google responds that it has not received in the last 10 years any request to produce information to the Department of Justice, the Federal Trade Commission, any other U.S. Government executive branch agency, Congress and/or the European Commission and Court seeking documents concerning "any preference or treatment by Google of YouTube in relation to other Video Platforms in the results for a search query that directly or indirectly seeks online video content."

**Request for Production No. 15:**

Documents and communications that relate to competition in the Online Video Platform Market and any action or strategy proposed or taken by YouTube and/or Google in an attempt to respond to, address or deal with that competition, including documents concerning any actual, planned or contemplated attempt by Google to preference videos on the YouTube video platform ("YouTube Videos") over videos on the Rumble video platform ("Rumble Videos") in Google search results.

**Response to Request No. 15:**

Google objects to Request No. 15 on the grounds that it is overbroad and unduly burdensome to the extent it seeks all documents and communications relating to the competition Google and YouTube face from online video platforms.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.

Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for non-privileged documents from 2017 to the present that relate to Google and YouTube's strategies for responding to competition from online video platforms and for documents that relate to any intention by Google to preference YouTube over Rumble in video search results.

**Request for Production No. 16:**

Documents that relate to Google's ability to use general search results to favor Google's own specialized search platforms (such as YouTube) over competing specialized search platforms,

including in relation to searches in which the user's search query would generate references to online video content in the Google search results.

**Response to Request No. 16:**

Google objects to Request No. 16 on the grounds that the phrase "specialized search platforms" is vague and ambiguous.  Google further objects to Request No. 16 on the grounds that it requests production of materials wholly irrelevant to Rumble's allegations.  Rumble's FAC makes no allegation about, or reference to, any "specialized search platforms."  Google further objects to Request No. 16 on the grounds that it is overbroad and unduly burdensome to the extent it generally seeks documents that relate to Google's ability to provide search results for queries that generate references to online video content.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google further objects to Request No. 16 to the extent it is duplicative of Request No. 15.

Subject to and without waiving the foregoing General and Specific Objections, Google will conduct the reasonable search for non-privileged documents outlined in its response to Request No. 15.

**Request for Production No. 17:**

Documents that relate to a comparison of Google search results that include online videos to search results generated by other general search engines.

**Response to Request No. 17:**

Google objects to Request No. 17 on the grounds that it is overbroad and unduly burdensome to the extent it seeks production of all documents that include a comparison of Google video search results to results of any other general search engine, regardless of whether those results include online videos.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.

Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for non-privileged documents from 2017 to the present that reflect

- 13 -

comparisons between Google video search results and video search results provided by other general search engines.

**Request for Production No. 18:**

Documents regarding internal Google communications relating to Rumble being a competitor to YouTube, including communications regarding ways in which Google could prevent or hinder, or did prevent or hinder, Rumble's ability to compete with YouTube in the Online Video Platform market (as defined in the FAC).

**Response to Request No. 18:**

Google objects to Request No. 18 on the grounds that it is overbroad and unduly burdensome to the extent that it seeks documents relating to conduct not alleged in the FAC. Such information's probativeness (if any) is far outweighed by the burden posed by its collection. Google further objects to Request No. 18 to the extent it is duplicative of Requests No. 15 and 16.

Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for non-privileged documents from 2017 to the present reflecting communications regarding ways in which Google purportedly could prevent or hinder, or did purportedly prevent or hinder, Rumble's ability to compete with YouTube in the Online Video Platform market (as defined in the FAC).

**Request for Production No. 19:**

Documents relating to any actual, planned or contemplated attempt by Google to restrict or prevent Rumble's access to the Google Play application store, or to restrict or prevent the listing of the Rumble App in the Google Play application store.

**Response to Request No. 19:**

Google objects to Request No. 19 on the grounds that it requests production of materials wholly irrelevant to Rumble's allegations. Rumble's FAC makes no allegation about Rumble's access to the Google Play Store, or the listing of the Rumble App in the Google Play Store. Google will not be producing documents pursuant to this Request.

**Request for Production No. 20:**

Documents relating to any actual, planned or contemplated attempt by Google to restrict or prevent Rumble's access to the Google Ads platform or to otherwise prevent, hinder or diminish Rumble's ad revenue from views of Rumble Videos on the YouTube platform.

**Response to Request No. 20:**

Google objects to Request No. 20 on the grounds that it is overbroad, unduly burdensome, and requests production of materials wholly irrelevant to Rumble's allegations. Rumble's FAC makes no allegation about attempts by Google to restrict or prevent Rumble's access to the Google Ads platform or to otherwise prevent, hinder, or diminish Rumble's advertising revenue from views of Rumble Videos on YouTube. Google will not be producing documents pursuant to this Request.

**Request for Production No. 21:**

Documents that identify and discuss the specialized search platforms that Google has considered to be its competitors from 2013 to the present, including documents describing and addressing strategies or plans for responding to such competition.

**Response to Request No. 21:**

Google objects to Request No. 21 on the grounds that the phrase "specialized search platforms" is vague and ambiguous.  Google further objects to Request No. 21 on the grounds that it is overbroad, unduly burdensome, and requests production of materials wholly irrelevant to Rumble's allegations.  Rumble's FAC makes no allegation about, or reference to, any "specialized search platform." Google will not be producing documents pursuant to this Request.

**Request for Production No. 22:**

Documents sufficient to show the number of views of Rumble Videos that have occurred on the YouTube platform from January 1, 2013 to the most recent date for which data is available, annually for each of Google's fiscal years in that time frame, and in total.

**Response to Request No. 22:**

Google objects to Request No. 22 on the grounds that it is inconsistent with the definition provided in Rumble's First Set of Requests for Production of Documents for the phrase "Rumble Videos."  Rumble defined that term in Request No. 15 to mean "videos on the Rumble video

platform." By definition, videos on the Rumble video platform do not garner views on the YouTube platform. Google further objects to Request No. 22 on the grounds that it requests information that is already in Plaintiff's possession, custody, and control, and that Plaintiff has equal access to. As demonstrated by Figure 10 in Rumble's FAC, Rumble already has access to a YouTube dashboard through which it can obtain the number of views of videos associated with the Client ID linked to Rumble on the YouTube platform.

Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for the number of views of videos associated with the Client ID linked to Rumble on the YouTube platform during each fiscal year from 2017 to the present.

**Request for Production No. 23:**

Documents sufficient to show the amount of revenue that YouTube and/or Google has received from any source based upon views of Rumble Videos on the YouTube platform from January 1, 2013 to the most recent date for which data is available, annually for each Google and/or YouTube fiscal year in that time frame, and in total.

**Response to Request No. 23:**

Google objects to Request No. 23 on the grounds that it is inconsistent with the definition provided in Rumble's First Set of Requests for Production of Documents for the phrase "Rumble Videos." Rumble defined that term in Request No. 15 to mean "videos on the Rumble video platform." By definition, videos on the Rumble video platform do not garner views on the YouTube platform. Google further objects to Request No. 23 on the grounds that the phrase "from any source" is vague and ambiguous. Google further objects on the grounds that the revenue Google or YouTube makes on videos available on the YouTube platform is not relevant to any of Rumble's allegations in the FAC. Google will not be producing any documents pursuant to this request.

**Request for Production No. 24:**

Documents sufficient to show the amount of revenue that Google has paid to Rumble based upon views of Rumble Videos on the YouTube platform from January 1, 2013 to the most recent date for which data is available, annually for each Google fiscal year, and in total.

**Response to Request No. 24:**

Google objects to Request No. 23 on the grounds that it is inconsistent with the definition provided in Rumble's First Set of Requests for Production of Documents for the phrase "Rumble Videos." Rumble defined that term in Request No. 15 to mean "videos on the Rumble video platform." By definition, videos on the Rumble video platform do not garner views on the YouTube platform. Google further objects to Request No. 23 to the extent that it requests information that is already in Plaintiff's possession, custody, and control, and that Plaintiff has equal access to. As demonstrated by Figure 10 in Rumble's FAC, Rumble already has access to a YouTube dashboard through which it can obtain the estimated partner revenue generated by views of videos associated with the Client ID linked to Rumble on the YouTube platform. Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for estimated partner revenue generated by views of videos associated with the Client ID linked to Rumble on the YouTube platform during each fiscal year from 2017 to the present.

**Request for Production No. 25:**

Documents sufficient to show the amount of total revenue that YouTube has received from any source since Google's acquisition of YouTube (broken down by source), annually for each Google fiscal year in that time frame, and in total.

**Response to Request No. 25:**

Google objects to Request No. 25 on the ground that the requested financial information of YouTube is not relevant to the allegations in the FAC. Google further objects to Request No. 25 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "Google's acquisition of YouTube"—which was in 2006. Google further objects to Request No. 25 to the extent that it requests information that is publicly available and accessible to Plaintiff. *See, e.g.*, Form 10-Q of Alphabet Inc. for Q2 2022 (https://tinyurl.com/yj9kva6c) at 11 (listing revenue for "YouTube ads"). Google will not be producing any documents pursuant to this Request.

- 17 -

GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF RUMBLE, INC.'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS
Case No. 4:21-cv-00229-HSG

**Request for Production No. 26:**

Documents sufficient to show the average revenue per mille views that YouTube has received on videos viewed on the YouTube platform in the period of time from the date of Google's acquisition of YouTube to the date of the most recent available data, annually for each Google fiscal year in that time frame, and in total.

**Response to Request No. 26:**

Google objects to Request No. 26 on the grounds that the requested financial information of YouTube is not relevant to the allegations in the FAC.  Google further objects to Request No. 26 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "the date of Google's acquisition of YouTube"—which was in 2006.  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 27:**

Documents sufficient to show all revenue, profits and/or losses received by Google from its ownership and/or the operation of YouTube since its acquisition of YouTube, annually for each Google fiscal year in that time frame, and in total.

**Response to Request No. 27:**

Google objects to Request No. 27 on the grounds that the requested financial information of Google and YouTube is not relevant to the allegations in the FAC.  Google further objects to Request No. 27 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "[Google's] acquisition of YouTube"—which was in 2006.  Google further objects to Request No. 27 to the extent that it requests information that is publicly available and accessible to Plaintiff.  *See, e.g.*, Form 10-Q of Alphabet Inc. for Q2 2022 (https://tinyurl.com/yj9kva6c) at 11 (listing revenue for "YouTube ads").  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 28:**

Documents sufficient to show all revenue, profits and/or losses of YouTube since its acquisition by Google, annually for each YouTube and/or Google fiscal year in that time frame, and in total.

**Response to Request No. 28:**

Google objects to Request No. 28 on the grounds that the requested financial information of Google and YouTube is not relevant to the allegations in the FAC.  Google further objects to Request No. 28 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "[YouTube's] acquisition by Google"—which was in 2006.  Google further objects to Request No. 28 to the extent that it requests information that is publicly available and accessible to Plaintiff.  *See, e.g.*, Form 10-Q of Alphabet Inc. for Q2 2022 (https://tinyurl.com/yj9kva6c) at 11 (listing revenue for "YouTube ads").  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 29:**

Documents sufficient to show the source (such as ad revenue) of all revenue received by YouTube since its acquisition by Google, annually for each YouTube and/or Google fiscal year in that time frame, and in total, and broken down by source.

**Response to Request No. 29:**

Google objects to Request No. 29 on the grounds that the term "source . . . of all revenue" is vague and ambiguous.  Google further objects to Request No. 29 on the ground that the requested financial information of YouTube is not relevant to the allegations in the FAC.  Google further objects to Request No. 29 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "[YouTube's] acquisition by Google"—which was in 2006.  Google further objects to Request No. 29 to the extent that it requests information that is publicly available and accessible to Plaintiff.  *See, e.g.*, Form 10-Q of Alphabet Inc. for Q2 2022 at 11 (https://tinyurl.com/yj9kva6c) (listing revenue for "YouTube ads").  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 30:**

Documents sufficient to show the total amount of payments that YouTube and/or Google have made to content creators who have posted their videos on the YouTube platform since Google's acquisition of YouTube, annually for each YouTube and/or Google fiscal year in that time frame, and in total.

**Response to Request No. 30:**

Google objects to Request No. 30 on the grounds that the requested information of amount of payments to content creators is not relevant to the allegations in the Complaint.  Google further objects to Request No. 30 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "Google's acquisition of YouTube"—which was in 2006.  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 31:**

Documents sufficient to show the total number of content creators to whom YouTube and/or Google have made payments based upon views of the content creator's videos on the YouTube platform and the amount paid to each, from the date of Google's acquisition of YouTube (to date of most recent available data).

**Response to Request No. 31:**

Google objects to Request No. 31 on the grounds that the requested information of the number of content creators to whom YouTube and/or Google have made payments and the amount of such payments is not relevant to the allegations in the FAC.  Google further objects to Request No. 31 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "Google's acquisition of YouTube"—which was in 2006.  Request No. 31 is also unduly burdensome to the extent it requires Google to determine, for each individual content creator going back to 2006, whether payment has been made in the past.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 32:**

Documents sufficient to show the total number of content creators who have posted videos on the YouTube platform since its acquisition by Google, annually for each YouTube and/or Google fiscal year in that time frame, and in total.

**Response to Request No. 32:**

Google objects to Request No. 32 on the grounds that the requested information of the number of content creators who have posted videos on the "YouTube platform" is not relevant to

the allegations in the FAC.  Google further objects to Request No. 32 on the grounds that it is irrelevant, overbroad, and unduly burdensome to the extent it requests information dating back to "Google's acquisition of YouTube"—which was in 2006.  Request No. 32 is also unduly burdensome to the extent it requires Google to determine, for each individual content creator going back to 2006, whether it has posted videos on YouTube.  Such information's probativeness (if any) is far outweighed by the burden posed by its collection.  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 33:**

Documents sufficient to show the average amount of payment per mille views that YouTube and/or Google have made to content creators who have posted their videos on the YouTube platform since Google's acquisition of YouTube, annually and in total.

**Response to Request No. 33:**

Google objects to Request No. 33 on the grounds that the requested information relating to "the average amount of payment per mille" is not relevant to the allegations in the FAC.  Google further objects to Request No. 33 on the grounds it is irrelevant, overbroad, and unduly burdensome on the basis that it requests information dating back to "Google's acquisition of YouTube"—which was in 2006.  Google will not be producing any documents pursuant to this Request.

**Request for Production No. 34:**

Internal Google and/or YouTube documents and communications that relate to the actual, planned or contemplated diversion of user traffic from the Rumble platform (or other Video Platforms) to YouTube, including the use of GSAs to do so.

**Response to Request No. 34:**

Google objects to Request No. 34 on the grounds that the phrase "diversion of user traffic" and term "GSAs" are vague and ambiguous.  Google further objects to Request No. 34 to the extent it is duplicative of Requests No. 15, 16, and 18.

Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for non-privileged documents from 2017 to the present discussing or reflecting any contemplated, actual or planned diversion of user traffic from Rumble to YouTube.

**Request for Production No. 35:**

Any Agreement between Google and any other entity relating to the diversion of, or the attempt to divert, user traffic from Rumble (or other online video sharing platforms) to YouTube, including the use of GSAs to do so.

**Response to Request No. 35:**

Google objects to Request No. 35 on the grounds that the terms "diversion of," "divert," and "GSAs" are vague and ambiguous.  Google further objects to Request No. 35 on the grounds that it is overbroad and unduly burdensome to the extent it seeks "[a]ny Agreement between Google and any other entity" and without any time limit.  Google further objects to Request No. 35 to the extent it is duplicative of Requests No. 15, 16, 18, and 34.

Subject to and without waiving the foregoing General and Specific Objections, Google will conduct a reasonable search for agreements executed from 2017 to the present that relate to alleged redirection of user traffic from Rumble to YouTube.

**Request for Production No. 36:**

Internal Google and YouTube documents and communications sufficient to show Google and/or YouTube's assessment of the size, structure and characteristics of the Online Video Platform Market, including but not limited to barriers to entry or other structural factors affecting competition in that market, the identity of the participants (or competitors) in that market, the relative size of the participants' revenues and other measures of their market power, and any reporting or calculation of the search traffic directed to market participants, and documents and communications concerning Google's and YouTube's percentage of the Online Video Platform Market, as measured by revenues, on an annual basis from 2013 to the present, as well as any analysis or discussion of the market power of Google and YouTube in the Online Video Platform Market.

**Response to Request No. 36:**

Google objects to Request No. 36 on the grounds that the phrases "size, structure and characteristics of the Online Video Platform Market" and "structural factors affecting competition" are vague and ambiguous.  Google further objects to Request No. 36 to the extent it is duplicative of Request No. 15.  Google also objects to this Request insofar as the breadth of the subject-matter

1    encompassed by the Request is not reasonably susceptible to a response with documents "sufficient

2    to show."

3       Subject to and without waiving the foregoing General and Specific Objections, Google will

4    conduct a reasonable search for non-privileged documents from 2017 to the present that reflect any

5    Google or YouTube assessment of the features of an "Online Video Platform Market" as alleged in

6    the FAC.

7    DATED:  November 4, 2022          **WILLIAMS & CONNOLLY LLP**

8                                      By: /s/ John E. Schmidtlein

9                                      John E. Schmidtlein (CA State Bar No. 163520)

10                                      Stephen J. Fuzesi (admitted *pro hac vice*)
Benjamin M. Greenblum (admitted *pro hac vice*)
Michaela S. Wilkes Klein (admitted *pro hac vice*)

11                                      Jesse T. Clay (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP

12                                      680 Maine Avenue, S.W.
Washington, D.C. 20024

13                                      Telephone:    (202) 434-5000
Facsimile:    (202) 434-5029

14                                      Email:         jschmidtlein@wc.com

15                                                       sfuzesi@wc.com
bgreenblum@wc.com

16                                                       mwilkesklein@wc.com
jclay@wc.com

17                                      David H. Kramer (CA SBN 168452)
WILSON SONSINI GOODRICH & ROSATI P.C.

18                                      650 Page Mill Road
Palo Alto, CA 94304

19                                      Telephone:    (650) 493-9300
Facsimile:    (650) 565-5100

20                                      Email:         dkramer@wsgr.com

21                                      *Attorneys for Defendant Google LLC*

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2        I, John E. Schmidtlein, hereby certify that, on November 4, 2022, I caused a true and correct

3   copy of the foregoing Responses and Objections to be served via electronic mail on all counsel of

4   record in the above entitled action.

5                                                     */s/ John E. Schmidtlein*
                                                      John E. Schmidtlein
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT C

Defendant's Proposed Order

1

John E. Schmidtlein (CA SBN 163520)
Stephen J. Fuzesi (admitted *pro hac vice*)
Benjamin M. Greenblum (admitted *pro hac vice*)
Michaela S. Wilkes Klein (admitted *pro hac vice*)
Jesse T. Clay (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:     (202) 434-5000
Facsimile:     (202) 434-5029
Email:         jschmidtlein@wc.com
               sfuzesi@wc.com
               bgreenblum@wc.com
               mwilkesklein@wc.com
               jclay@wc.com

*Attorneys for Defendant Google LLC*

David H. Kramer (CA SBN 168452)
WILSON SONSINI GOODRICH &
ROSATI P.C.
650 Page Mill Road
Palo Alto, CA 94304
Telephone:     (650) 493-9300
Facsimile:     (650) 565-5100
Email:         dkramer@wsgr.com

2

3

4

5

6

7

8

9

10

## UNITED STATES DISTRICT COURT

11

## NORTHERN DISTRICT OF CALIFORNIA

12

## OAKLAND DIVISION

13

14

15

16

17

18

19

RUMBLE, INC.,

Plaintiff,

v.

GOOGLE LLC and DOES 1-10, inclusive,

Defendants.

Case No. 4:21-cv-00229-HSG

**[PROPOSED] ORDER REGARDING JOINT DISCOVERY DISPUTE LETTER**

Judge:        Hon. Haywood S. Gilliam, Jr.

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**[PROPOSED] ORDER**

The Court, having considered the Parties' Joint Discovery Dispute Letter (ECF No. 82):

**HEREBY ORDERS** that Plaintiff Rumble, Inc.'s Motion for an Order compelling Defendant Google LLC to produce documents pursuant to RFP Nos. 13 and 14 and with respect to the time period of discovery from Google is **DENIED**.

**IT IS SO ORDERED.**

Dated: _____

_____
The Honorable Haywood S. Gilliam, Jr.
UNITED STATES DISTRICT JUDGE