1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7 RUMBLE, INC., | Case No.  21-cv-00229-HSG   (LJC) |
| 8                    Plaintiff, | |
| 9         v. | **ORDER RE: JOINT LETTER TO COURT REGARDING DISCOVERY DISPUTES AND DEFENDANT GOOGLE LLC'S MOTION FOR LEAVE TO FILE REPLY LETTER BRIEF** |
| 10 GOOGLE LLC, | |
| 11                    Defendant. | |
| 12 | Re: ECF. Nos. 82, 90 |

13        Before the Court is the parties' Joint Letter to Court Regarding Discovery Disputes (Joint

14 Discovery Letter), ECF No. 82, and Defendant Google LLC's (Google) Motion for Leave to File

15 Reply Letter Brief, ECF No. 90.  In the Joint Discovery Letter, Plaintiff Rumble, Inc. (Rumble)

16 seeks to compel Google to produce documents in response to two Requests for Productions

17 (RFPs) related to prior antitrust investigations and enforcement actions by the Department of

18 Justice (DOJ), the Federal Trade Commission (FTC), the U.S. House of Representatives, and the

19 European Commission.  Google objects that both RFPs amount to a fishing expedition that seeks

20 irrelevant records and imposes a significant, unjustified burden.  ECF No. 82 at 5.[1]  Google also

21 contends that the four-year statute of limitations for antitrust claims should serve as the discovery

22 cutoff date in this case.  Id. at 7.  The Court held a hearing on the parties' Joint Discovery Letter

23 and ordered supplemental briefing on certain specified topics.  ECF No. 87.  In the supplemental

24 briefing, new disputes were raised concerning which Electronically Stored Information (ESI)

25 search terms to apply and the timeline for document productions, should the Court grant Rumble's

26 request for discovery.  See ECF Nos. 89, 90-1.

27

28 [1] Unless specified otherwise, the Court refers to the PDF page number generated by the Court's e-filing system when the document is electronically filed on the court docket.

Having carefully considered the parties' arguments and supplemental briefing, as well as the relevant legal authority, and for the reasons explained below, the Court **GRANTS** in part and **DENIES** in part Rumble's request to compel discovery from Google as to the two RFPs at issue, **GRANTS** Google's Motion for Leave to File Reply Letter Brief, **DENIES** Plaintiff's Phased Search and Production Protocol, and **DENIES** Google's request that the statute of limitations period act as the discovery cutoff date.

**I.      BACKGROUND**

   **A.      Rumble's First Amended Complaint**

Rumble brings a single antitrust claim against Google pursuant to Section 2 of the Sherman Act (15 U.S.C. § 2) and Sections 4 and 15 of the Clayton Act (15 U.S.C. §§ 4, 15) for "Monopolization and Attempted Monopolization of the U.S. Online Video Platform Market." First Amended Complaint (FAC) ¶¶ 1, 191-200, ECF No. 21.  Rumble is a privately-owned, online video-sharing platform that has been in operation since 2013.  Id. ¶ 14.  According to Rumble, its "business model is premised upon helping the 'little guy/gal' video content creators monetize their videos."  Id.  Creators upload their videos onto the Rumble platform and assign Rumble licensing and enforcement rights.  Id. ¶ 15.  In turn, Rumble makes these videos available under licenses to other companies that have websites or social media sites for advertising purposes.  Id.  Rumble claims that it has more than two million amateur and professional content creators that contribute to more than 100 million streams per month.  Id. ¶ 22.

However, Rumble alleges that its success has been hindered by Google's "unlawful anticompetitive, exclusionary and monopolistic behavior."  Id. ¶ 23.  According to Rumble, Google has allegedly manipulated the algorithms for searched-for video results, so that videos on YouTube are listed first, and its competitors' videos (such as Rumble) are listed way down the list on the first page, or not on the first page at all.  Id. ¶ 27.  It also alleges that Google has pre-installed the YouTube app as the default online video app on Google smartphones and entered into anticompetitive, illegal tying agreements with other smartphone manufacturers to do the same, which assures the dominance of YouTube and forecloses competition in the video platform market.  Id.

United States District Court
Northern District of California

2

United States District Court
Northern District of California

Rumble alleges several relevant antitrust markets, including the market for online video platforms accessible in the United States and globally, the United States as a separate relevant geographic market, and the market for U.S. and global consumers for online video platforms.  Id. ¶¶ 55, 59, 61.  Rumble also alleges that Google has achieved dominance globally in several online markets, including search, navigation, and video.  Id. at ¶ 63.  Rumble alleges that YouTube has a dominant and growing share of the online video platform market, because of Google's exclusionary practices that thwart otherwise natural competitive forces.  Id. at ¶¶ 63, 64.

**B.    The Parties' Discovery Disputes**

On October 5, 2022, Rumble submitted its First Set of Requests for Production of Documents, to which Google served its responses and objections on November 4, 2022.  ECF No. 82 at 14, 37.  Subsequently, the parties negotiated the production of responsive documents, including ESI custodians and search terms for Rumble's document requests.  Id. at 5, 9-10. Google, however, continues to object to Rumble's RFP Nos.13 and 14, contending that the documents sought are "far afield from the issues in *this* case and would impose significant and unjustified burdens on Google."  Id. at 5.  Google has refused to produce any documents in response to either request but has otherwise produced over 100,000 pages of documents to Rumble.  Id. at 4; ECF No. 88 at 1.

RFP No. 13 seeks: "Documents and things (including communications) that Google has produced within the last ten years to the Department of Justice, the Federal Trade Commission, any other U.S. Government executive branch agency, Congress and/or the European Commission and Court concerning the competition Google faces from specialized online search platforms and Google's strategies and conduct in responding to, reducing or eliminating such competition." ECF No. 82 at 24.

RFP No. 14 seeks similar materials: "Documents and things (including communications) that Google has produced within the last ten years to the Department of Justice, the Federal Trade Commission, any other executive branch agency, Congress, or the European Commission and Court concerning its GSAs and concerning any preference or treatment by Google of YouTube in relation to other Video Platforms in the results for a search query that directly or indirectly seeks

3

online video content." Id.

After the parties submitted their Joint Discovery Letter, the Court held a hearing, and ordered supplemental briefing. ECF No. 87. In further briefing, Rumble clarified that it "seeks only limited search and production of documents previously produced by Google in: (1) the investigation by a Congressional Committee that culminated in the House Report entitled 'Investigation of Competition in Digital Markets', (2) the European Commission case concerning Google's anticompetitive self-preferencing conduct, (3) the FTC investigation that resulted in the 2012 FTC Staff Report, and (4) antitrust investigations and cases by the U.S. Department of Justice and various State Attorneys General." ECF No. 89 at 3. Google also moved for leave to file further briefing after Rumble shifted its position with respect to the ESI search terms to be applied to RFP Nos. 13 and 14 and proposed a production schedule that Google found objectionable. ECF No. 90.

### C.     The Investigations and Cases at Issue

Google has faced multiple government investigations and lawsuits regarding its allegedly anticompetitive and monopolistic business practices. The Court briefly describes each investigation and/or litigation that is the subject of Rumble's disputed discovery requests.

#### 1.     Congressional Antitrust Subcommittee Investigation Culminating in the 2020 Congressional Report

Rumble's Complaint cites at length a congressional report initially published in 2020, see e.g., FAC ¶¶ 29-30, 33, 70, 73, and Rumble now seeks to compel Google to search the same trove of documents that Google produced to the congressional committee that produced the report. In June 2019, the Subcommittee on Antitrust, Commercial, and Administrative Law of the Committee on the Judiciary from the U.S. House of Representatives initiated a bipartisan investigation into competition in online digital markets, and Google was one of several major technology companies that were the focus of the inquiry. See Staff of S. Comm. On Antitrust, Com., and Admin. L., 117th Cong., Investigation of Competition in Digital Markets, Majority Staff Report and Recommendations 8, at 1 (Comm. Print 2020) (Congressional Report).[2]

---

[2] The Congressional Report was initially released in October 2020 and officially published in July

United States District Court
Northern District of California

United States District Court
Northern District of California

During the investigation, the Subcommittee sent Requests for Information (RFIs) to Alphabet (the parent company of Google).  Id. at 14.  The RFI to Alphabet asked for information about its relevant products and services, including YouTube; a list of Alphabet's top ten competitors for each product or service, as well as internal and external analyses of Alphabet's market share relative to its competitors; and communications from high-level executives relating to "the deal rationale and any competitive threat posed by the acquired company" for several acquisitions, including Google/YouTube in 2006.  Id. at 15, n.36.  The RFI contains multiple other requests related to YouTube.  Id.; see also Letter from Hon. Jerrold Nadler at al, Subcomm. on Antitrust, Com. and Admin. L. of the H. Comm. on the Judiciary to Larry Page, CEO, Alphabet Inc. (Sept. 13, 2019) (Alphabet RFI).[3]  Alphabet ultimately produced 1,135,398 documents as part of the Subcommittee's investigation, including "strategy memoranda, presentations, and materials produced in prior investigations."  Congressional Report at 15.

The Congressional Report addressed multiple aspects of Google's business practices that raised the prospect of unlawful, anticompetitive conduct.  The Report described Google's view, over a decade ago, that its continued leadership in general search underpins its entire business.  Id. at 148.  By recounting the experiences of various vertical competitors, the Congressional Report illustrated how Google's dominance in general search allowed it to become the gatekeeper for various vertical rivals.  Id. at 150.  The Congressional Report cited studies and discussed Google's self-preferencing of its own services and products, including a July 2020 Wall Street Journal article which found that "Google executives in recent years made decisions to prioritize YouTube on the first page of search results, in part to drive traffic to YouTube rather than to competitors, and also to give YouTube more leverage in business deals with content providers seeking traffic for their video."  Id. at 151-152, 155-160.  The Subcommittee also described Google's

---

2022.  See https://www.govinfo.gov/content/pkg/CPRT-117HPRT47832/pdf/CPRT-117HPRT47832.pdf

[3] The Congressional Report includes a non-functioning web link to the Alphabet RFI.  Id. at 15, n.36.  The Court retrieved a copy of the RFI from a press release issued by the Judiciary Committee on September 13, 2019, regarding the requests for records to various technology companies, including Alphabet.  See https://judiciary.house.gov/media/press-releases/judiciary-committee-requests-tech-company-records.

establishment of "extensive default positions across both browsers and mobile devices" through "both integration and contractual arrangements," creating a significant barrier to competition in general online search.  Id. at 65, 177-181.

### 2. 2020 Antitrust Lawsuit Filed by the U.S. Department of Justice and Various State Attorneys General, Consolidated Litigation and Precursor Investigations

Rumble's Complaint also draws heavily from a civil antitrust lawsuit brought by the U.S. Department of Justice and eleven state Attorneys General against Google.  See, e.g., FAC ¶¶ 23-26, 35, 73, 183 (citing the original complaint filed in United States of America et al v. Google LLC, Case No. 1:20-cv-03010 (D.D.C. Oct. 20, 2020)).  Rumble relies heavily on the Department of Justice's allegations to describe Google's exclusionary and monopolistic behavior that allegedly undercut its ability to compete.  Compare FAC ¶¶ 100-101 with United States of America et al v. Google LLC, Case No. 1:20-cv-03010, Amended DOJ Complaint (Amended DOJ Compl.) ¶¶ 65-66, ECF No. 94.

On December 17, 2020, a coalition of 38 state Attorneys General, including Colorado and Nebraska, filed their own civil antitrust lawsuit against Google, also in the District of Columbia. See State of Colorado et al v. Google LLC, Case No. 1:20-cv-03715-APM (D.D.C. Dec. 17. 2020).  On January 7, 2021, the lawsuit was consolidated with United States of America et al v. Google LLC, Case No. 1:20-cv-03010, for pretrial purposes, including discovery and related proceedings.  See id., ECF No. 67.  Both cases are still ongoing and in the discovery phase of litigation.  The DOJ-led lawsuit and the action filed by the multistate coalition led by Colorado followed an investigation by the DOJ's Antitrust Division initiated in the summer of 2019 as well as inquiries previously launched by the various states.  Congressional Report at 146.

### 3. European Commission Case and Investigation

Rumble's allegations refer only in passing to the European Commission's investigation of anticompetitive behavior by Google.  FAC ¶ 106.  However, in the Joint Discovery Letter, Rumble describes the Commission's finding in 2017 that Google illegally self-preferenced its own comparison-shopping service, as well as its €2.4 billion fine against Google.  ECF No. 82 at 3.

United States District Court
Northern District of California

### 4.     Federal Trade Commission Investigation and 2012 Staff Report

Neither Rumble's Complaint nor its briefing provides much substantive detail concerning the genesis of the 2012 Federal Trade Commission Staff Report.  The Congressional Report, however, states, "From 2011 to 2013, the Federal Trade Commission investigated Google's role in search and advertising markets, culminating in a staff recommendation to file a complaint against Google—although the Commission ultimately decided not to do so."  Congressional Report at 145-146.  According to Rumble, the FTC Staff Report "cites many highly relevant documents that Google had produced to the FTC, DOJ, and the European Commission."  ECF No. 89 at 3. Rumble also attaches to its Opposition to Google's Motion for Leave to File Reply Letter Brief a copy of footnotes in the FTC Staff Report that list "bates-stamped documents relating to the genesis of Google's strategy for preventing vertical competition."  ECF No. 92 at 3, 9-22.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 26(b)(2) requires the Court to limit discovery that is unreasonably cumulative or duplicative, that the party seeking discovery has had ample opportunity to obtain, or that is outside the scope of permissible discovery described in Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2).

A party may serve requests for documents on any other party so long as the request is within the scope of permissible discovery as defined in Rule 26(b)(1).  Fed. R. Civ. P. 34(a).  The requests "must describe with reasonable particularity each item or category of items" to be produced.  Fed. R. Civ. P. 34(b)(1)(A).

"The party seeking discovery has the initial burden of establishing that its request satisfies Rule 26(b)(1)'s relevancy requirement."  Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress, No. 16CV00236WHODMR, 2019 WL 311622, at *3 (N.D. Cal. Jan. 24, 2019).  "The

test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . . more or less probable . . . [a] fact [that] is of consequence in determining the action.'" In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liabl. Litig., 2017 WL 4680242, at *1 (N.D. Ca. Oct 18, 2017) (quoting Fed. R. Evid. 401).  On the other hand, the party opposing discovery "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting [his] objections with competent evidence." Sayta v. Martin, No. 16-CV-03775-LB, 2019 WL 666722, at *1 (N.D. Cal. Feb. 19, 2019) (quoting La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

## III.    DISCUSSION

### A.    Prior Productions by Google to Governmental Entities

Through RFP Nos. 13 and 14, Rumble seeks discovery from records that Google has produced in the prior ten years to governmental entities that have investigated or sued the firm.

#### 1.    RFP No. 13

Google objects to RFP No. 13 in part because "it has not received in the last 10 years any request to produce information" to the governmental entities listed "regarding competition that Google faces from Rumble or Google's strategies and conduct in responding to, reducing or eliminating such competition."  ECF No. 82 at 24.  Google argues that the term "specialized online search platform" in RFP No. 13 could be interpreted to encompass competition from entities like Amazon, eBay, Expedia, TripAdvisor, Yelp, Booking.com, Angi, Thumbtack, among others.  Id. at 5-6.  According to Google, these other platforms are irrelevant to Rumble's claims. Id.  In effect, Google contends that only records that directly relate to competition with Rumble or online video platforms are relevant to its claim.

Rumble responds that the documents sought concerning "the competition Google faces from specialized online search platforms and Google's strategies and conduct in responding to, reducing or eliminating such competition" are highly relevant to Rumble's allegations concerning "Google's strategy and plans for quashing competition from specialized platforms, including by preferencing Google's own specialized platforms."  Id. at 3-4.  According to Rumble, if Google's anticompetitive strategies were developed first in relation to specialized platforms other than video

platforms, "evidence of such strategies and intent is highly relevant to the claims in this case." Id.

Google's objections are unavailing. As part of the broad scope of discovery allowed under Rule 26(b), Rumble is not limited to seeking only direct evidence of Google's anticompetitive conduct with respect to Rumble. It is permissible to seek discovery of the origin, background, and purpose of Google's alleged anticompetitive conduct. See Cyntegra, Inc. v. IDEXX Lab'ys, Inc., No. CV 06-4170-PSG(CTX), 2007 WL 9701999, at *5 (C.D. Cal. June 29, 2007). Allowing this discovery is also consistent with Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 710 (1962) (permitting historical evidence of the defendants' anticompetitive scheme that predates the plaintiff firm's entrance into the market).

Rumble points to internal Google documents indicating that its executives recognized as early as 2005 that "specialized" or "vertical" search engines could undermine Google's long-term dominance. ECF No. 89 at 7; Congressional Report at 152. Google viewed vertical search providers as a threat, as a whole, even if individual vertical search providers offer different types of search services (e.g., shopping, travel, real estate, or video). The documents indicate that Google executives evaluated the threat of "proliferating verticals" by tracking their growth together and considering how to respond to maintain the company's dominance in search. ECF No. 89 at 7, 10, 14, 18-23; Congressional Report at 152. Id. The record that Rumble presents in support of its request does not indicate that Google developed its business strategy for YouTube in isolation from other vertical search engines. Therefore, at this juncture in the litigation, Google's contention that relevant information is only that which relates directly to YouTube or video is not persuasive.

Google's argument that the specific term "specialized online search platform" is not referenced in the First Amended Complaint is similarly unavailing. Rumble's RFPs are proper so long as they are within the scope of Rule 26(b) (See Fed. R. Civ. P. 34(a)), and it is not limited to propounding RFPs based on specific language or technical terms enumerated in its Complaint. Although Google challenges the specificity of the term "specialized online search platforms," the meet and confer process has sufficiently clarified Rumble's request so that the parties clearly understand what Rumble seeks: Documents concerning "specialized (or vertical) search platforms

1   that offer specialized search results in areas such as travel, home shopping and navigation."  ECF

2   No. 82 at 3.

3          In its supplemental brief, Google argues that Rumble is seeking "habit" or "routine

4   practice" evidence to show that Google engaged in self-preferencing as to unrelated online search

5   platforms that is of limited relevance.  ECF No. 88 at 1-2.  The two cases Google cites, Radware,

6   Ltd. v. F5 Networks, Inc., 2016 WL 590121 (N.D. Cal. Feb. 13, 2016) and Mattel, Inc. v. MGA

7   Ent., Inc., 2010 WL 3705864 (C.D. Cal. Sept. 2, 2010) are inapposite.  Neither case presented

8   antitrust allegations involving monopoly power, and the particular rulings are distinguishable.  In

9   Radware, the court excluded the disputed evidence as part of its ruling on the defendant's motion

10  in limine.  2016 WL 590121, at *11.  At this point, the Court is ruling only on the discoverability

11  of the disputed materials under Rule 26(b), which provides that "[i]nformation within this scope of

12  discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

13  Furthermore, the court excluded evidence of Radware's conduct in monitoring the industry for

14  competitive products and literature because it was of "marginal relevance" and likely to be

15  confusing in a case where Radware sued another firm for patent infringement.  2016 WL 590121,

16  at *11.  At trial, the only issues for the jury to decide were patent invalidity, willfulness, and

17  damages.  See Radware, Ltd. v. F5 Networks, Inc., No. 5:13-CV-02024-RMW, 2016 WL

18  6427886, at *1 (N.D. Cal. Oct. 31, 2016), aff'd, 697 F. App'x 700 (Fed. Cir. 2017).  Similarly,

19  Mattel involved an intellectual property case that presented trade secret claims, and the ruling as to

20  a motion for a protective order was specific the claims and burdens in that case; the case offers no

21  meaningful guidance here.  2010 WL 3705864, at *1.  Radware and Mattel do not persuade the

22  Court that RFP No. 13 seeks irrelevant records; rather, Rumble appropriately seeks discovery

23  concerning the origins, purpose, and context for Google's allegedly anticompetitive conduct.

24         Google also argues that discovery of records it has previously produced to governmental

25  entities is unduly burdensome.  ECF No. 88 at 2.  Rumble has responded by specifying the

26  government-led investigations and cases from which it seeks discovery of previously produced

27  records.  Supra at 4 (citing ECF No. 89 at 3).  Below, in the next section, the Court further

28  addresses Google's particular Rule 26 objections regarding burden and the extent to which

United States District Court
Northern District of California

1    Rumble's requests as to the governmental entities is proportional to the needs of the case.

2              **2.      RFP No. 14**

3              In RFP No. 14, Rumble seeks records that Google has produced within the last ten years to

4    governmental agencies "concerning any preference or treatment by Google of YouTube in relation

5    to other Video Platforms in the results for a search query that directly or indirectly seeks online

6    video content."  ECF No. 82 at 24.  Google objects that this request would require "needle-in-the-

7    haystack searching through productions from far-flung litigations and investigations," which is not

8    required by the Federal Rules.  Id. at 6.  Google claims that this is a form of "cloned discovery"

9    routinely rejected by district courts within the Ninth Circuit.  Id. at 6-7.  Finally, Google also

10   argues that RFP No. 14 imposes "an extraordinary burden…to sift through millions of documents"

11   that is not proportional to the needs of the case because there is no basis to believe the documents

12   are relevant, since none of the prior antitrust investigations involved YouTube.  Id.

13             Some courts in this Circuit have frowned upon "cloned discovery," that is "requesting all

14   documents produced or received during other litigation or investigations."  King Cnty. v. Merrill

15   Lynch & Co., No. C10-1156-RSM, 2011 WL 3438491, at *3 (W.D. Wash. Aug. 5, 2011), but see

16   In re Static Random Access Memory (SRAM) Antitrust Litigation, No. 07-cv-01819 CW, MDL

17   No. 1819 (N.D. Cal. June 21, 2007), ECF No. 217 at 2 ("Defendants shall produce to Plaintiffs all

18   documents they have produced to the Department of Justice[.]").  However, courts will allow

19   discovery when the previous litigation or investigations and the present case "have significant

20   factual and legal overlap" and involve the same legal claims.  Schneider v. Chipotle Mexican

21   Grill, Inc., No. 16CV02200HSGKAW, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017).  This

22   does not mean that the "similarities are…enough to require a *carte blanche* production of all

23   documents" from the prior investigations.  Chen v. Ampco Sys. Parking, No. 08-CV-0422-BEN

24   (JMA), 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009).  "It may very well be that each and

25   every document produced in the government investigations is relevant to Plaintiff's claims.

26   However, Plaintiff must make proper discovery requests, identifying the specific categories of

27   documents sought, in order to obtain them—and each category must be relevant to its claims and

28   defenses."  King Cnty., 2011 WL 3438491, at *3; see also In re Volkswagen, 2017 WL 4680242,

United States District Court
Northern District of California

at \*1-2.  Here, in propounding its RFPs, Rumble has identified several prior investigations and asserts that they have "significant factual and legal overlap" to its antitrust claim.  <u>Schneider</u>, 2017 WL 1101799, at \*4.

### a.   Congressional Antitrust Subcommittee Investigation Culminating in the 2020 Congressional Report

Google claims that the congressional investigation is irrelevant because it provided the Subcommittee a denial that Google Search favors YouTube, an allegation which was based on reporting by the Wall Street Journal, not documents produced by Google.  ECF No. 82 at 6.  However, Google ignores the fact that the Subcommittee requested detailed information about Google's allegedly anticompetitive conduct (including possible manipulation of its algorithms) with respect to its products and services, and specifically put YouTube on their list of requests.  <u>See</u> Congressional Report at 15, n.36.  These requests and the contents of the Congressional Report track similar allegations by Rumble and are relevant to its antitrust claim.  <u>See, e.g.</u>, FAC ¶¶ 3-4, 27, 99.   Google's parent company Alphabet ultimately produced over one million documents to the Subcommittee.  Congressional Report at 15.  And the Subcommittee's final Congressional Report expressed numerous concerns about Google's business conduct and strategies with respect to various Google products and services, including YouTube, as well as Google's requirement that "smartphone manufacturers…pre-install and give default status to Google's own apps."  <u>See, e.g., id.</u>, at 9, 30, 65, 159.

With respect to the burden associated with this discovery request, Google has not stated that it does not have access to the document production to the Subcommittee nor that it would be unduly burdensome to run ESI search terms on any databases containing the previously produced records.  "To meet their burden [of demonstrating a discovery request is unduly burdensome], Defendants must undertake a good faith effort to show the nature and extent of the hardship imposed and state specifically how compliance will be harmful or costly."  <u>Munoz v. PHH Corp.</u>, No. 1:08-CV-0759-AWI-BAM, 2013 WL 684388, at \*5 (E.D. Cal. Feb. 22, 2013).  Therefore, Rumble's request as to discovery from the investigation leading up to the Congressional Report is granted.  This ruling applies both to RFP Nos. 13 and 14.

**b.      2020 Antitrust Lawsuits Filed by the U.S. Department of Justice and Various State Attorneys General, and Related Litigation and Precursor Investigations**

The DOJ and state Attorneys General investigations focused broadly on Google's anticompetitive and exclusionary business practices implemented to maintain its monopoly power in the online search market.  In particular, the Amended DOJ Complaint describes how Google required smartphone and tablet manufacturers to pre-install a bundle of Google apps, including YouTube, on their devices in a way that prevents the consumer from deleting them.  Id. ¶ 134.  These allegations have "significant factual and legal overlap" with the allegations made by Rumble in this case.  Schneider, 2017 WL 1101799, at *4; see, e.g., FAC ¶ 27 (describing one of Google's "anticompetitive and exclusionary" strategies as the "pre-installation of the YouTube app (which deters smart phone manufacturers from pre-installing any competitive video platform apps) as the default online video app on Google smart phones, and by entering into anti-competitive, illegal tying agreements with other smartphone manufacturers to do the same.")

Although information about what documents Google produced to the DOJ and state Attorneys General is not publicly available, Google has not denied cooperating and producing documents as part of their antitrust investigations.  Moreover, the Congressional Report notes that Alphabet's document production to the Subcommittee included "materials produced in prior investigations."  Id. at 15.  As with the congressional investigation, Google does not claim it does not have access to the database(s) containing its document productions to the DOJ.  Rumble's request for discovery from the productions to the DOJ and state Attorneys General is granted.  This ruling applies to both RFP Nos. 13 and 14 and authorizes the search of not only documents produced during the investigations leading up to the antitrust lawsuits, but also documents already produced in the ongoing litigation, United States of America et al v. Google LLC, Case No. 1:20-cv-03010-APM and State of Colorado et al v. Google LLC, Case No. 1:20-cv-03715-APM, which are both in the discovery phase.  See Schneider, 2017 WL 1101799, at *4 (ordering production of documents from prior litigation with sufficient "similarities," such as asserting claims under the same statute and alleging the same facts).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### c.      European Commission Case and Investigation

Rumble contends that the lengthy final European Commission decision, like the Congressional Report, confirms that Google produced extensive internal documents to the Commission concerning its strategy for competing with specialized search platforms.  The European Commission focused its investigation on Google Shopping and found evidence that Google included certain criteria in its algorithms that would demote rival comparison shopping services in its search results.  See European Commission Press Release IP/17/184, Antitrust: Commission fines Google €2.42 billion for abusing dominance as search engine by giving illegal advantage to own comparison shopping service (June 27, 2017).  In fact, the European Commission noted how highly ranked, rival services appeared on average only on page four of Google's search results.  Id.  As with the Congressional Report, the European Commission's findings were supported by internal Google documents produced by the company in response to requests for information.  Case AT.39740, Google Search (Shopping), ¶ 111 (June 27, 2017).

However, relevancy alone is not sufficient to establish the discoverability of records. Rumble's request must also be proportionate to the needs of the case.  See Fed. R. Civ. P. 26(b)(1).  Here, Google has been the subject of multiple, overlapping investigations and enforcement actions.  The Court ordered supplemental briefing to address the issue of proportionality.  ECF No. 87.  Rumble further explained the relevancy of the European Commission decision but did not address the factors related to determining whether such discovery is proportionate.  ECF No. 89 at 4.  Google raised concerns regarding prior productions in jurisdictions outside of the United States and noted that it cannot rely on prior production of these documents as an assurance that the documents do not contain material subject to claims of privilege in this case.  ECF No. 88 at 2.  Rumble offered no argument as to why, in spite of these burdens, discovery of the documents produced to the European Commission is proportionate and justified relative to the needs of the case.  For this reason, Rumble's request as to the European Commission investigation is denied without prejudice.  This ruling applies both RFP Nos. 13 and 14.

d.      **Federal Trade Commission Investigation and 2012 Staff Report**

Rumble claims that the FTC Staff Report is relevant in part because it contains several detailed footnotes citing to internal, bates-stamped documents produced by Google as part of the FTC investigation.  ECF No. 92 at 3, 9-22.  However, the FTC Staff Report is dated August 8, 2012.  Id. at 9.  This means that any documents produced by Google to the FTC as part of its investigation were turned over before this date.  Rumble's RFP Nos. 13 and 14 request documents produced "within the last ten years."  ECF No. 82 at 24.  Because Rumble served its First Set of Requests for Production of Documents on October 5, 2022 (see id. at 14), documents produced to the FTC would necessarily fall outside of the ten-year timeframe.

The Court cannot unilaterally expand the scope of Rumble's discovery requests now when Rumble made the original decision to limit RFP Nos. 13 and 14 to a ten-year timeframe.  Therefore, Rumble's request to compel Google to produce documents as to the FTC investigation is denied without prejudice as to its ability to propound any RFPs related to the FTC investigation in the future, so long as the requests are within the scope of Rule 26(b).

**B.      ESI Search Terms and Phased Search and Production Protocol**

In the Joint Discovery Letter and at the hearing before the Court, Rumble claimed that it was not requesting all documents produced by Google in each governmental antitrust investigation and case but sought instead to have Google search existing databases "using the ESI search terms currently agreed upon by the parties for searching Google's ESI."  ECF No. 82 at 9-10.  However, in its supplemental brief, Rumble has changed course, and proposes a new list of "focused search terms," allegedly "in order to expedite the production."  ECF No. 89 at 26.  Rumble also proposes a Phased Search and Production Protocol, which describes a three-phased approach as well as deadlines as to when Google is required to provide "hit" counts and produce documents.  Id.

Google filed its Motion for Leave of Court to File Reply Letter Brief opposing Rumble's Phased Search and Production Protocol.  ECF No. 90.[4]  According to Google, only one of the

---

[4] Google cited no procedural rule for the Court to entertain its Motion for Leave to File Reply Letter Brief.  See ECF No. 91.  Nevertheless, the Court construed Google's filing as an administrative motion pursuant to Civil Local Rule 7-11.  Id.  Rumble was allowed to file an opposition/response in accordance with Rule 7-11.  ECF No. 92.  The Court now **GRANTS** Google's Motion for Leave and accepts Google's Reply Letter Brief, filed as an exhibit to the

15

United States District Court
Northern District of California

1  sixteen new ESI search terms proposed by Rumble is among those agreed upon for searching

2  Google's ESI—the term "Rumble." ECF No. 90-1 at 2. Google argues that the terms are

3  "unworkable on their face" and that Rumble has not offered any justification for changing the ESI

4  search terms at this stage. Id. In addition, Google objects to Rumble's proposal granting it

5  "unilateral ability to object to ESI search terms based on hit counts and insist upon additional

6  terms," as well as the imposition of "arbitrary and unreasonable deadlines." Id.

7       The Court rejects Rumble's attempt to introduce midstream a brand-new discovery dispute

8  over ESI search terms for the Court's resolution, after the parties represented to the Court in the

9  Joint Discovery Letter and at the hearing that they had already agreed upon an initial set of ESI

10  search terms, which if relief were granted, would be applied. The Court also rejects Rumble's

11  proposed Phased Search and Production Protocol, which purports to impose deadlines for search

12  and production without any ability for Google to object and/or the parties to meet and confer.

13       **C.**     **Statute of Limitations as the Discovery Cutoff Date**

14       Finally, Google wants to limit discovery in this case to the four-year statute of limitations

15  period for antitrust claims, despite Rumble's claim that Google's anticompetitive strategy and plan

16  was likely developed well before 2017 and is "highly relevant to anti-competitive conduct that has

17  harmed Rumble and other specialized search platforms years later." ECF No. 82 at 4-5. In

18  response, Google argues that the limitations period is a "natural cutoff" date for most discoverable

19  information, and if Rumble wants earlier discovery, Google will consider that on a request-by-

20  request basis as long as Rumble "provides sufficient explanations as to relevancy." Id. at 7.

21       "The statute of limitations is not a rigid barrier separating discoverable information from

22  information outside the scope of discovery." Gottesman v. Santana, No. 16-CV-2902 JLS (JLB),

23  2017 WL 5889765, at *5 (S.D. Cal. Nov. 29, 2017). Here, Google argues that the Court should

24

25  Motion, into the record. Rumble's Opposition was not to Google's Motion for Leave, but to the
substance of Google's Reply Letter Brief. ECF No. 92. Rumble also attaches more than 20 pages

26  of exhibits to its Opposition. Id. The Court would normally construe Rumble's Opposition Letter

27  Brief as a sur-reply filed without leave and strike it from the record. However, for the sake of
completeness, the Court has allowed and considered Rumble's Opposition Letter Brief as part of

28  its ruling on the parties' Joint Discovery Letter. In the event that a future filing by either party
violates a procedural rule or any court order, the Court may strike it.

United States District Court
Northern District of California

1    limit discovery to the limitations period because the fact that Rumble began operations in 2013 has

2    no bearing on the relevancy of Google's documents and information.  ECF No. 82 at 7.

3          The Court finds <u>Continental Ore</u> instructive.  There, the plaintiff had sought to introduce

4    evidence that the conspiracy and monopolization alleged began in the early 1930s, well before the

5    plaintiff entered the market in 1938.  370 U.S. at 709-710.  The trial court excluded this evidence

6    on the ground that nothing that transpired before 1938 could be relevant to plaintiff's suit.  <u>Id.</u>

7    The U.S. Supreme Court held that the trial court erred because the excluded evidence was "clearly

8    material to [the] charge that there was a conspiracy and monopolization in existence when they

9    came into the industry, and that they were eliminated in furtherance thereof."  <u>Id.</u> at 710.

10         Google attempts to differentiate <u>Continental Ore</u> by arguing that the complaint there

11   contained detailed allegations concerning the formation of the alleged conspiracy, while Rumble

12   has "offered no evidence that alleged unlawful conduct in this case occurred prior to January

13   2017."  ECF No. 88 at 3; <u>see also</u> <u>Cont'l Ore Co.</u>, 370 U.S. at 690, 693, 710.  But as Rumble

14   points out, "[i]f it was not permissible to exclude such evidence at trial, then such categories of

15   evidence necessarily are within the scope of Rule 26 discoverability."  ECF No. 89 at 5; <u>see also</u>

16   <u>Cyntegra, Inc. v. IDEXX Labs., Inc.</u>, No. CV 06-4170 PSG (CTX), 2007 WL 9702008, at *3

17   (C.D. Cal. Aug. 22, 2007) ("[I]n the context of anti-trust cases, the discovery period could

18   plausibly extend back to a period antedating the earliest possible wrong by a substantial number of

19   years in order to fully evidence the monopolization already in existence when Plaintiff entered the

20   market.")  Evidence of the possible creation and implementation of an anticompetitive business

21   strategy by Google prior to 2017 would clearly be relevant under Rule 26(b) and Rumble is

22   therefore entitled to seek such discovery if it is available and proportional.

23   **IV.    CONCLUSION**

24         For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Rumble's

25   request to compel discovery from Google as to RFP Nos. 13 and 14, **GRANTS** Google's Motion

26   for Leave to File Reply Letter Brief, **DENIES** Plaintiff's Phased Search and Production Protocol

27   and **DENIES** Google's request to set a discovery cutoff date based on the statute of limitations

28   period.

United States District Court
Northern District of California

1       No later than ten days from the date of this Order, Google will conduct a search of the

2 production databases for the investigations leading to the Congressional Report and the DOJ and

3 state Attorneys General lawsuits, as well as the document databases for discovery exchanged in

4 United States of America et al v. Google LLC, Case No. 1:20-cv-03010-APM and State of

5 Colorado et al v. Google LLC, Case No. 1:20-cv-03715-APM.  Google will use the ESI search

6 terms already agreed upon by the parties and then provide a "hit" count for each search term to

7 Rumble's counsel.  Rumble will advise Google as to the "hit" documents to be produced within

8 four days.  If either party wishes to modify, add, or remove any of the search terms in light of the

9 hit counts, then the parties shall meet and confer within seven days.  If the parties cannot come to

10 an agreement, then they shall present any discovery disputes to the Court for resolution following

11 the procedures set forth in Judge Cisneros's Standing Order, Part F.5.  Google shall complete

12 production no later than 45 days from the date of this Order.

13       **IT IS SO ORDERED.**

14 Dated: 5/31/2023

15

16

17 LISA J. CISNEROS
    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28