UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUMBLE, INC., | Case No.  21-cv-00229-HSG   (LJC) |
| Plaintiff, | |
| v. | **ORDER RE: SECOND JOINT DISCOVERY LETTER BRIEF REGARDING DOJ CASE DISCOVERY DISPUTE** |
| GOOGLE LLC, | |
| Defendant. | Re: ECF No. 112 |

Pending before the Court is the parties' Second Joint Discovery Letter Brief Regarding DOJ Case Discovery Dispute.  ECF No. 112.  In this letter, Plaintiff Rumble Inc. seeks to compel Defendant Google LLC to produce documents from the case, *United States of America, et. al., v. Google LLC*, Case No. 1:20-cv-03010-APM (D.D.C) (hereinafter, the DOJ Case).  The Court held a hearing on the dispute on June 27, 2024.  Having considered the parties' briefing and oral argument, the Court **GRANTS IN PART** and **DENIES IN PART** Rumble's request.

## I.    BACKGROUND

This dispute originated with a Joint Discovery Letter Brief (ECF No. 108) filed on May 24, 2024, in which Rumble requested a court order compelling Google to produce the following from the DOJ Case:

> Request for Production No. 121: All Transcripts of the proceedings (including fact and expert witness testimony, oral argument by counsel, opening statements and closing arguments), in the trial in the case entitled "*United States of America, et. al., v. Google LLC*, Case No. 1:20-cv-03010-APM.".

> Request for Production No. 122: All Exhibits admitted into evidence by any party during the trial in the case entitled "*United States of America, et. al., v. Google LLC*, Case No. 1:20-cv-03010- APM."

> Request for Production No. 123: All demonstratives, for example,

Power Point Presentations, used by Counsel for any party during the trial, including opening statements, fact and expert witness examination (direct and cross), and closing arguments, in the case entitled "*United States of America, et. al., v. Google LLC*, Case No. 1:20-cv-03010-APM."

<u>Request for Production No. 124:</u> All Expert Reports (opening, rebuttal and reply) produced by any party during the trial in the case entitled "*United States of America, et. al., v. Google LLC*, Case No. 1:20-cv-03010-APM."

*Id.* at 3. The Court found that Rumble's requests were overbroad, and denied its request to compel production, but allowed it to make a new request for a narrower set of trial transcripts, demonstratives, and/or expert reports. ECF No. 109. The Court ordered the parties to meet and confer regarding any new requests made by Rumble pursuant to the order. *Id.* Rumble's new requests consist of the following two categories of documents.

(1) The deposition and trial transcripts and associated exhibits of those Google fact and expert witnesses who testified in the DOJ case and who can be expected to testify in the Rumble case, such as Dr. Nayak and Dr. Murphy. Rumble also requests the deposition and trial transcripts and associated exhibits of any witnesses Google in the future discloses as an expert in this case and who also testified in the DOJ case and asks that they be submitted no later than the time of the expert's report.

(2) Testimony, exhibits and any other material relating to the Android default placement agreements and the effect of those agreements, including any fact and expert witness deposition and trial transcripts and/or demonstratives relating to Google's negotiation of and internal planning concerning those agreements and the effect of those agreements and their default requirements on users, as well as portions of post-trial submissions relating to those matters and citing or describing that evidence.

## II.     LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) requires the Court to limit discovery that is unreasonably cumulative or duplicative, that the party seeking discovery has had ample opportunity to obtain, or that is outside the scope of

1    permissible discovery described in Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2).  A party may serve

2    requests for documents on any other party so long as the request is within the scope of permissible

3    discovery as defined in Rule 26(b)(1).  Fed. R. Civ. P. 34(a).  The requests "must describe with

4    reasonable particularity each item or category of items" to be produced.  Fed. R. Civ. P.

5    34(b)(1)(A).

6         "The party seeking discovery has the initial burden of establishing that its request satisfies

7    Rule 26(b)(1)'s relevancy requirement."  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med.*

8    *Progress*, No. 16CV00236WHODMR, 2019 WL 311622, at *3 (N.D. Cal. Jan. 24, 2019).  "The

9    test for relevance is not overly exacting: evidence is relevant if it has 'any tendency to make . . .

10   more or less probable . . . [a] fact [that] is of consequence in determining the action.'"  *In re*

11   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liabl. Litig.*, 2017 WL 4680242, at

12   *1 (N.D. Ca. Oct 18, 2017) (quoting Fed. R. Evid. 401).  On the other hand, the party opposing

13   discovery "has the burden of showing that discovery should not be allowed, and also has the

14   burden of clarifying, explaining and supporting [his] objections with competent evidence."  *Sayta*

15   *v. Martin*, No. 16-CV-03775-LB, 2019 WL 666722, at *1 (N.D. Cal. Feb. 19, 2019) (quoting *La.*

16   *Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012)).

17   **III.    ANALYSIS**

18        **A.    Category (1)**

19        As to Rumble's Category (1) request, in which Rumble seeks the deposition and trial

20   transcripts and associated exhibits and demonstratives of those Google fact and expert witnesses

21   who testified in the DOJ Case and who can be expected to testify in the Rumble case, such as Dr.

22   Nayak and Dr. Murphy, Google has agreed to produce certain materials.  Google has agreed to

23   produce unredacted trial transcripts for the testimony of Dr. Pandu Nanak, Dr. Kevin Murphy, Jim

24   Kolotouros, and Adrienne McCallister, four witnesses that testified in the DOJ Case and who are

25   also on Google's initial disclosures or have been disclosed by Google as an expert in this case.

26   ECF No. 112 (Second Joint Discovery Letter Brief) at 6.  Therefore, Rumble's request as to these

27   materials is **DENIED AS MOOT**.  Rumble's request for Google to produce trial transcripts and

28   associated exhibits and demonstratives of any witnesses whom Google in the future discloses as

United States District Court
Northern District of California

an expert in this case and who also testified in the DOJ Case is **DENIED** without prejudice. *Id.* at 4. Google does not indicate that there are any such witnesses, but the Court notes that the deadline for the parties to exchange their expert rebuttal reports is August 2, 2024. Whether Google must produce such materials will depend on the relevance of any new expert's testimony, exhibits, and demonstratives to Rumble's claim, and whether production is proportional to the needs of the case, pursuant to Rule 26(b)(1). If Google does seek to bring in a new expert prior to the close of expert discovery, Rumble may file a new discovery letter, after meeting and conferring with Google, as to its request for that expert's materials from the DOJ Case. The discovery letter must be filed no later than fourteen days after the disclosure of the new expert.

As part of its Category (1) request, Rumble also seeks deposition transcripts for these expert witnesses. The request for deposition transcripts was not part of Rumble's original RFP Nos. 121–124, which focused on the trial in the DOJ Case. Therefore, Rumble's new broad-based request for deposition testimony from the expert witnesses is untimely. The Court, however, recognizes that the parties in the DOJ Case may have designated deposition testimony as evidence in the trial. The Court **GRANTS IN PART** Rumble's request for deposition testimony and the associated exhibits insofar as such material was designated at trial, and thus, part of the trial transcript, otherwise, Rumble's request for the deposition testimony of all expert witnesses is **DENIED**.

In the Second Joint Discovery Letter Brief, Google clarifies that for Category (1), it will produce unredacted trial exhibits and demonstratives used during the trial examinations of the expert witnesses to the extent these materials are documents originally produced by Google, but it will produce such materials with redactions if they were produced by third parties. *Id.* at 6. Google reasons that third-party confidential information is subject to the protective order in the DOJ case. *Id.* Rumble indicated in the letter that it "does not ask that Google produce confidential technological or similarly confidential information of third-parties sealed by the Court in the DOJ case." *Id.* at 4. At the hearing, Rumble clarified that it is comfortable with Google redacting any third-party confidential information only if the third party asked for that material to be sealed in the DOJ Case. Google also indicated that it does not believe the protective order in

1   the DOJ Case prohibits this Court from ordering Google to disclose third-party confidential

2   information but noted that some sort of notice process to the third parties may be appropriate if

3   their confidential information that was part of the DOJ Case must be disclosed here.

4          Google shall produce exhibits and demonstratives used with expert testimony provided at

5   trial, and the redaction of such materials is only permitted where the third party asked for that

6   information to be sealed in the DOJ Case.  For any materials where the third party did not request

7   that their information be sealed in the DOJ Case, then Google must follow the procedures set forth

8   in the Stipulated Protective Order in this case as to production of a non-party's confidential

9   information.  ECF No. 76 at 16–17.

10         Accordingly, Rumble's request to compel production of certain deposition and trial

11   transcripts and associated exhibits as set forth in Category (1) is **GRANTED IN PART** and

12   **DENIED IN PART.**

13         **B.      Category (2)**

14                **1.       Material Cited in the DOJ's Proposed Findings of Fact**

15         Turning to Category (2), Rumble has further specified the materials it seeks.  Rumble

16   requests materials cited in the U.S. Department of Justice's (DOJ) post-trial Proposed Findings of

17   Fact from the DOJ Case, specifically Paragraphs 779 through 964, and Paragraphs 1089, 1312,

18   1319, 1324, and 1326.  ECF No. 112 at 4, 14–70; *see also U.S. v. Google, LLC*, Case No. 1:20-cv-

19   03010-APM, ECF No. 839 (DOJ's Proposed Findings of Fact) ¶¶ 779–964, 1089, 1312, 1319,

20   1324, 1326 (D.D.C. Feb. 9, 2024).  According to Rumble, this material concerns "the Android

21   default placement agreements and Google's conduct in relation to those agreements, including

22   Google's coercion of certain Android phone manufacturers and service providers, statistical and

23   other information on installation rates and other measures of how Google's conduct [sic] on

24   consumers and competition."  ECF No. 112 at 4.  As to relevancy, Rumble broadly argues that

25   these paragraphs cite key evidence concerning Google's conduct and its effect on competitors and

26   competition, bearing on Rumble's allegations.  Google disputes the relevancy and proportionality

27   of these requests.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### a.      Applicable Antitrust Law and the DOJ Case

The Court considers first the law that applies to Rumble's antitrust claim.  Rumble pleads a single cause of action under Section 2 of the Sherman Act, which makes it unlawful for a person to "monopolize, or attempt to monopolize, or combine or conspire with any person or persons[] to monopolize any part of the trade or commerce among the several states."  15 U.S.C § 2.  "The offense of monopolization has two elements: (1) 'the possession of monopoly power in the relevant market' and (2) the 'willful acquisition or maintenance of that power' through 'exclusionary conduct as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'"  *United States v. Google LLC*, 687 F. Supp. 3d 48, 65 (D.D.C. 2023) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 50, 58 (D.C. Cir. 2001)).  "The sole issue for the court to resolve is whether Google as maintained monopoly power in the relevant markets through 'exclusionary conduct' as opposed to procompetitive means."  *Id.*

A burden-shifting framework applies to determine "[w]hether any particular act of a monopolist is exclusionary, rather than merely a form of vigorous competition."  *Id.*  First, the plaintiff bears the burden of establishing a *prima facie* case that the monopolist's conduct has an "anticompetitive effect," harming the competitive process, and thereby consumers.  *Id.*  If the plaintiff satisfies this prong, then the alleged monopolist may offer a "procompetitive justification" for its conduct.  *Id.*  If the plaintiff does not rebut the procompetitive justification, the plaintiff must demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit.  *Id.*

Next, the Court reviews what occurred in the DOJ Case.  Relevant to this case, Google in the DOJ Case moved for summary judgment on the DOJ's and the Colorado Plaintiffs'[1] Section 2 claim that Google unlawfully maintained its monopoly power through a set of exclusive contracts.

---

[1] The Colorado Plaintiffs consist of the Attorneys General of thirty-eight states and territories, led by the State of Colorado.  *U.S. v. Google, LLC*, 687 F. Supp. 3d at 55, n.4.  The Colorado Plaintiffs filed a complaint separate from the DOJ, but eleven states also joined the DOJ's complaint.  *Id.* at 55, n.3.  The two cases were eventually consolidated pursuant to Rule 42(a) for pretrial purposes, including discovery and related proceedings.  *Id.* at 55.

*Id.* at 54.  The Plaintiffs in the DOJ Case allege that these agreements make Google the default search engine on a range of products in exchange for a share of the advertising revenue generated by searches run on Google.  *Id.*  This Section 2 claim survived Google's motion for summary judgment based on evidence sufficient to create material disputes of fact as to (a) whether Google's conduct amounted to exclusionary dealing and (b) whether that conduct foreclosed a substantial portion of the relevant market.  *Id.* at 70–78.

Judge Mehta's decision in the DOJ Case first addressed whether Plaintiffs had presented evidence of exclusive dealing, and in turn, he addressed the evidence of substantial foreclosure of the relevant market because the "legality of an exclusive arrangement ultimately depends on whether the agreement foreclosed a substantial share of the relevant market such that competition was harmed."  *Id.* at 71.  Having determined that courts must disaggregate the exclusionary conduct into its "component parts," Judge Mehta analyzed Google's Browser Agreements and its Android Agreements to determine whether they were exclusive contracts.  *Id.* at 70–77.

Judge Mehta explained that the Android Agreements consist of two types of agreements between Google and original equipment manufacturers (OEM) and carriers—Mobile Application Distribution Agreements (MADAs) and Revenue Sharing Agreements (RSAs).  *Id.* at 60.  Under the MADA, if an OEM chooses to download any of Google's proprietary applications, absent an exemption, it must "preload on that device [the eleven] applications licensed pursuant to the MADA, and [] place on the device's default home screen the Google Search widget, the Google Play application, and a folder containing the other MADA applications."  *Id.* (citation omitted).  The eleven applications are Google Search, Google Play Store, Google Chrome, YouTube, Google Maps, Gmail, Google Photos, YouTube Music, Google Duo, Google Drive, and Google Play Movies and TV.  *Id.* at 60, n. 8.  The MADA prohibits OEMs from "encouraging, teaching, or helping end users to change an Android device's out-of-the-box default settings if Google apps are preinstalled on the device."  *Id.* at 60 (citation omitted).

Under Google's RSAs with OEMs and carriers, "Google makes monthly payments to the counterparty in exchange for Google being (1) the exclusive general search engine preinstalled on Android devices covered by the RSA, as well as (2) the search default for all search access points

on such devices." *Id.* (citation omitted). The RSA includes a provision which prohibits an OEM or carrier from "preinstalling or otherwise including a search engine substantially similar to Google's." *Id.* at 60–61. "Except for a small number of Android devices ... the overwhelming majority of Android devices sold in the United States are subject to the search default rules established in Google's RSAs." *Id.* at 61 (citation omitted). In the DOJ Case, Google conceded that the Android RSAs are exclusive contracts but disputed whether the Browser Agreements and Android MADAs were exclusive. *Id.* at 70. The parties also disagreed regarding how to gauge "substantial foreclosure" and the extent of it. *Id.*

Finally, another important aspect of the DOJ Case is the use of "defaults," an issue which Google argues is irrelevant to Rumble's case. In the DOJ Case, the DOJ defined a default as "an option pre-selected for a consumer by a third-party, such as a smartphone manufacturer, that requires an affirmative action by a consumer to change." *U.S. v. Google LLC*, ECF No. 839 ¶ 868. Defaults have a powerful impact on consumer decisions across a range of domains, which is why Google has long embraced "the power of defaults" in its own businesses. *Id.* ¶¶ 869–70. In a 2007 study conducted by Google which considered the factors that might influence a user's choice of search engines—such as results quality, search features, user experience, and brand strength— Google found that the most important factor was the default home page setting. *Id.* ¶ 878. Google showed that "users who have their home page set to Google do 50% more searches on Google compared to those who don't." *Id.* (citation omitted). It is because of how "valuable" defaults can be that Google "pays tens of billions of dollars every year" to be the default search engine across search access points in the United States. *Id.* ¶ 933 (citation omitted).

**b.      The Present Case**

In this lawsuit, Rumble has placed at issue the same Android Agreements that are central to the DOJ Case. ECF No. 112 at 3; *see also* ECF No. 21 (First Amended Complaint, or FAC) ¶¶ 27, 34, 39. Rumble's monopolization claim is based on Google's YouTube product, and it defines the relevant market as the "online video platform market," where these platforms "allow content creators and other consumers to upload, view, share and download video content." FAC ¶ 55. Rumble alleges that Google has deployed an anticompetitive, exclusionary strategy in which

8

1    "by pre-installation of the YouTube app (which deters smart phone manufacturers from pre-

2    installing any competitive video platform apps) as the default online video on Google smart

3    phones, and by entering into anti-competitive, illegal tying agreements with other smartphone

4    manufacturers to do the same (in addition to requiring them to give the YouTube app a prime

5    location on their phones' opening page and making it not-deletable by the user), Google assures

6    the dominance of YouTube and forecloses competition in the video platform market." *Id.* ¶ 27.

7            Google contends that Rumble may not discover the materials it requests from the trial in

8    the DOJ Case because, simply stated, that trial largely concerned Google Search, rather than

9    YouTube. ECF No. 112 at 6. Google argues that none of the trial materials are relevant and

10   specifically challenges the relevancy of the materials cited in various paragraphs of the DOJ's

11   Proposed Findings of Fact. *Id.* at 7–9. Google, however, concedes that "some of these paragraphs

12   [addressing the MADAs and RSAs] relate to the same contracts Rumble challenges here." *Id.* at

13   8, n.4.[2]

14           The materials cited by the DOJ in its post-trial Proposed Findings of Fact are not

15   necessarily irrelevant because the DOJ Case focused on the market for general search, whereas

16   this case focuses on YouTube and the market for online video platforms. The DOJ's evidence

17   shows that Google used these agreements for more than just Google Search and required OEMs to

18   preinstall several Google apps, including YouTube. *See U.S. v. Google LLC*, ECF No. 839 ¶ 246.

19   As described above, the DOJ marshalled evidence that defined a "default" as a broad concept,

20   describing it as "an option pre-selected for a consumer by a third-party, such as a smartphone

21   manufacturer, that requires an affirmative action by a consumer to change." *Id.* ¶ 868.

22           When adjudicating Section 2 monopolization claims, courts must consider whether

23   agreements are exclusive in their nature, and if they are, the extent to which foreclosure has

24   _____

25   [2] As noted earlier, the same agreements at issue in the DOJ Case are also important to the
     allegations in this case. Rumble's operative complaint expressly points to Google's use of
26   "preinstallation agreements—MADAs" to ensure that its entire suite of applications receives
     "premium placement" on Android devices, and it also refers to Google's "revenue sharing
27   agreements." FAC ¶¶ 118–20, 133. In addition, Rumble responded to Google's contention
     interrogatories, asserting that the RSAs require exclusivity "that precludes OEMs and carriers
28   from implementing, preloading or postloading any third party 'Alternative Service,'" and it names
     several other agreements that it believes harmed competition. ECF No. 113-1 at 14, 19.

United States District Court
Northern District of California

occurred.  *U.S. v. Google LLC*, 687 F. Supp. 3d at 71.  Relevant to the issue of exclusionary conduct, the Section 2 claim in the DOJ Case alleges that Google deployed exclusionary agreements to establish Google Search as the default search engine on a range of products, and here, Rumble asserts that Google used the same strategy.  Rumble claims that Google leveraged MADAs and RSAs to establish YouTube as a preinstalled, non-deleteable application placed in a prime location on mobile phones.  According to Rumble, these agreements had the purpose and effect of establishing YouTube as a pre-selected online video platform, undermining the competitive process.  Therefore, evidence in the DOJ Case that concerns Google's exclusionary conduct is relevant to Rumble's Section 2 claim centered on the creation of default apps and services within the mobile phone environment.

At the same time, the Court does not overlook the distinctions between the two cases.  Different markets are at issue.  This arguably bears on the requirement that, if Rumble demonstrates that the Android Agreements amount to exclusive dealing, it must also establish substantial foreclosure of the relevant market.  Evidence from the DOJ Case regarding the extent to which the market for general search services was foreclosed does not necessarily amount to evidence of the rate of foreclosure of the online video platform market.  Rumble's arguments as to relevance paint in too broad a brushstroke to establish that this type of evidence from the DOJ Case is also relevant to this case.  As it is, the MADA and RSA provisions that apply to and effect the distribution of YouTube and its competitors operate in a similar and overlapping, but not identical, manner as the provisions that establish Google Search as the default search engine at various search access points on mobile phones.

Having examined the parties' arguments regarding relevance, the Court turns to the issue of proportionality and burden.  Google argues that Rumble has failed to explain how the burden on Google to review and produce the materials requested as part of Category (2) is proportional to the needs of the case.  ECF No. 112 at 6–7.  According to Google, the materials that Rumble seeks reflect the testimony of thirty-six different witnesses, nineteen of which are employed by third parties such as Apple, Microsoft, Mozilla, etc.  *Id.*  Ten of the witnesses did not testify live at the trial, and instead, the parties submitted to the court their deposition transcripts.  *Id.*  In addition,

United States District Court
Northern District of California

1    Category (2) involves 147 trial exhibits and five trial demonstratives.  *Id.*  Google points out that

2    most of these materials are publicly available in redacted form (the ten deposition transcripts are

3    not publicly available).  *Id.*  Google argues that Rumble fails to explain how the public versions

4    are insufficient, or why it specifically needs to review the redacted material.  *Id.*

5    Because much of the information is already publicly available and centrally located, the

6    collection of the materials poses less of a burden.  Instead, Google has emphasized that there is a

7    burden in reviewing the information for confidentiality concerns.  Google's and third parties'

8    confidential information is part of the trial record in the DOJ Case, and thus, redactions appear

9    throughout the record.  The burden of reviewing the trial record has been reduced, as Rumble has

10   narrowed its request in its Second Joint Discovery Letter.  Furthermore, as explained below, the

11   Court has scrutinized each segment of evidence that Rumble has requested and found only certain

12   information is discoverable.

13   Google's arguments as to third-party confidential information are thus insufficient to

14   demonstrate undue burden.  As the Court explained above, Google may redact any materials

15   where the third party asked for that information to be sealed in the DOJ Case.  For any materials

16   where the third party did not request that their information be sealed in the DOJ Case, then Google

17   must follow the procedures set forth in the Stipulated Protective Order in this case as to production

18   of a non-party's confidential information.  ECF No. 76 at 16–17.

19   At the hearing, Google argued that it already made relevant information available to

20   Rumble by allowing Rumble to search, pursuant to this Court's order, the electronically stored

21   information (ESI) that Google produced to the DOJ and the Colorado Plaintiffs as part of

22   discovery conducted in the DOJ Case.  In Google's view, the Court should not also require it to

23   review and produce the DOJ trial record evidence that is relevant to this case.  The Court

24   disagrees.  There is no sound reason to assume that the parties' search terms have turned over

25   every piece of relevant information from the DOJ Case.  Furthermore, certain demonstratives and

26   expert testimony were likely created after discovery was completed, and those materials would not

27   have been included in the body of ESI that was searched.

28   Considering the applicable law and nature of the conduct and agreements at issue in both

United States District Court
Northern District of California

1    cases, as well as factors under Rule 26(b), the Court shall now consider whether Rumble is

2    entitled to the materials it seeks from the DOJ's Proposed Findings of Fact.

3                        **c.       Paragraphs 779 through 821**

4         Rumble has sufficiently demonstrated the relevance of materials cited in Paragraphs 779

5    through 821 of the DOJ's Proposed Findings of Fact.  These paragraphs cover three subsections

6    entitled "MADAs Contribute to Exclusivity," "RSAs Contribute to Exclusivity," and "MADAs

7    And RSAs Are a Belt-And-Suspenders Strategy to Exclude Rivals from Accessing Search

8    Distribution."  *See U.S. v. Google, LLC*, ECF No. 839 ¶¶ 779–821.  Accordingly, Rumble's

9    request as to materials cited in Paragraphs 779 through 821 is **GRANTED**.

10                       **d.       Paragraphs 822 through 831**

11        Paragraphs 822 through 831 concern Google negotiations with Verizon as to their 2021

12   RSA.  For as long as Verizon owned Yahoo, Verizon wanted to preinstall the Yahoo Mobile

13   Application with web search functionality on its Android devices, place it on the plus one screen

14   or device application tray (not the home screen), and make sure the application "didn't allow a

15   punch-out into general search."  *Id.* ¶ 825.  The circumstances surrounding Verizon's efforts to

16   optimize the Yahoo Mobile Application on Android devices illustrate the high priority that Google

17   placed on keeping its search tool on the default home screen for Android phones.  This evidence

18   bears on the effect of default placement on competition, and therefore it is relevant.  Rumble's

19   request as to Paragraphs 822 through 831 is   **GRANTED**.

20                       **e.       Paragraphs 832 through 862**

21        Paragraphs 832 through 862 concern Branch Metrics and its efforts to distribute its app-

22   search tool on every major Android OEM and U.S. carrier, including Samsung.  Rumble has

23   alleged here that Google's Android Agreements require an OEM to preinstall, and in some cases,

24   give premium placement to, an entire suite of Google apps, including YouTube, and this deters

25   OEMs from installing competitor application programs.  *See FAC ¶¶ 27, 135.  Branch Metrics

26   created an application that competes with Google Search.  Rumble does not compete for search

27   services, but it is an online video platform that competes with YouTube.  Evidence that the

28   Android Agreements thwart a competitor application's partnership with OEMs and carriers tends

to show that Google's agreements may undermine the distribution of a competitor's application program. This issue is central to Rumble's claim. Its request as to Paragraphs 832 to 862 is **GRANTED**.

**f.      Paragraphs 863 through 866**

Paragraphs 863 through 866 are all under Section IV.C of the DOJ's Proposed Findings of Fact, which is entitled "Google's Brower Contracts are Exclusive." This subsection concerns Google's RSAs with third-party browsers like Firefox and Opera to make Google Search the default search engine for certain browsers. *U.S. v. Google, LLC*, ECF No. 839 ¶¶ 863–65. Google argues that its agreements with browser developers are not relevant to Rumble's claim, especially given Rumble's focus on "Android default placement agreements." ECF No. 112 at 7–8. Rumble does not discuss browser agreements in the Second Joint Discovery Letter Brief or dispute that its case focuses on the Android Agreements. It makes no showing as to the importance of the evidence from this subsection. Accordingly, and considering the burdens asserted by Google, Rumble's request is **DENIED** as to Paragraphs 863 to 866.

**g.      Paragraphs 867 through 943**

Paragraphs 867 through 943 encompass subsections entitled, "Defaults Have a Powerful Effect on Users' Search Behavior, Particularly on Mobile Devices," "Search Engine Defaults Are the Most Efficient Method of Distribution," "Behavioral Economics Explains the Power of Defaults," and "Market Evidence Confirms Effects in Search." Having reviewed these subsections, the Court finds that the materials cited therein address examples of defaults and reasons that explain the preeminence of default distribution, including choice friction, and user confusion and awareness. This information is relevant to Rumble's claim that the agreements at issue have given YouTube a default status which harms competition in the relevant market. Thus, Rumble's request as to Paragraphs 867 through 943 is **GRANTED**.

**h.      Paragraphs 944 through 964**

This series of paragraphs concerns evidence that, in the DOJ's view, establishes substantial foreclosure of the relevant market. The evidence, however, relates to an analysis of foreclosure in the general search market. The DOJ asserts that expert evidence shows that exclusive defaults

secured by Google's exclusionary contracts cover fifty percent of all general search queries performed in the United States. *U.S. v. Google, LLC*, ECF No. 839 ¶ 954. Rumble has not explained how this evidence bears on foreclosure of the online video platform market. Rumble's request as to Paragraphs 944 to 964 is **DENIED**.

### i.      Paragraph 1089

Paragraph 1089 deals with, as Rumble puts it, "Google's internal worries regarding the decline in search volume as a result of limitations on preinstallation on Android devices in the EU." ECF No. 112 at 5. It cites to materials concerning Google's "Go Big in Europe" investments, which focused on driving daily active search users in certain European countries. *U.S. v. Google, LLC*, ECF No. 839 ¶ 1089. As a result of a 2018 ruling from the European Commission, Google was required to implement a choice screen. This choice screen allowed mobile phone users to select their default web browser and search application during initial device setup. Though this evidence is from outside of the U.S. market, it illustrates Google's investments to improve search for European consumers in the face of possible increased competition. This evidence illustrates consumer and company behavior, which as a pattern, is not limited to Europe. The evidence is relevant to show the harm to consumers if the competitive process is undermined by a strategy based on default applications. Rumble's request as to Paragraph 1089 is therefore **GRANTED**.

### j.      Paragraph 1312

Paragraph 1312 deals with "the revenue generated by Google apps that come preinstalled on Android devices, including YouTube." ECF No. 112 at 5. It provides that "Google uses the Android platform to distribute flagship, non-search applications that generate substantial revenue for the company, including YouTube, Google Maps, Gmail, and Google Drive." *U.S. v. Google, LLC*, ECF No. 839 ¶ 1312. The DOJ then cites to materials as to revenue generated for each of these Google applications. *Id.* This evidence is relevant to show Google's interests in the mass distribution of its products other than search engine services, namely YouTube. Given that Rumble's request relates directly to YouTube and its motives concerning YouTube, its request as to Paragraph 1312 is therefore **GRANTED**.

United States District Court
Northern District of California

#### k.      Paragraph 1319

Paragraph 1319 is part of Section X.C.1.b of the DOJ's Proposed Findings of Fact, entitled "Google's Purported Interest in Promoting Android's Competitiveness is Undermined by its ISA Payments to Apple."  Paragraph 1319 discusses a different arrangement than the MADAs or RSAs.  The ISA is an Information Services Agreement, which is an agreement Google reached with Apple as to advertising revenue from searches conducted on Apple devices.  *Id.* ¶ 210.  According to Rumble, Paragraph 1319 shows that "Google is unconcerned with Apple strengthening as an Android rival."  ECF No. 112 at 5.  Rumble does not discuss the ISA  in the Second Joint Discovery Letter Brief or dispute that its case focuses on the Android Agreements.  It makes no showing as to the importance of the evidence from this subsection.  Accordingly, and considering the burdens asserted by Google, Rumble's request as to Paragraph 1319 is therefore **DENIED**.

#### l.      Paragraph 1324

Rumble contends that Paragraph 1324 is evidence of "the percentage of users that would delete the Google widget on Android devices within 3 months of device activation if it were removable."  ECF No. 112 at 5.  It deals specifically with consumer complaints as to the placement of the Google Search widget across the home screen of Android smartphones.  The evidence addresses a Google widget that users, apparently, are unable to delete, similar to the YouTube application in this case.  The evidence is relevant to show that blocking users' ability to remove an application does not enhance the consumer experience; it may tend to show that the practice does not improve the product's desirability.  After a plaintiff has made a prima facie showing that conduct is exclusionary, a defendant may defeat the antitrust claim by demonstrating that the conduct has a procompetitive benefit.  *U.S. v. Google LLC*, 687 F. Supp. 3d at 65.  Because the evidence concerns the Google Search widget, the estimated percentage of users who would delete that widget will not necessarily mirror the deletion rate for YouTube.  They are different products and may have a different level of desirability.  However, the evidence still bears on the absence of a procompetitive benefit with respect to a feature barring an application's removability.  Rumble's request as to Paragraph 1324 is therefore **GRANTED**.

15

United States District Court
Northern District of California

### m.       Paragraph 1326

Finally, according to Rumble, Paragraph 1326 contains evidence showing that "Google's OEM and carrier partners discuss[ed] how they would prefer different placement of Google apps on their devices." ECF No. 112 at 5.  It concerns Android device manufacturers and carriers, specifically, their ability to control "the user experience on their devices."  *U.S. v. Google*, ECF No. 839 ¶ 1326.  For reasons similar to Paragraph 1324, the evidence cited in Paragraph 1326 relates to whether there is a procompetitive benefit to pre-selecting the placement of Google apps. The evidence indicates that if flexibility were permitted, manufacturers and carriers could exercise control to enhance the user experience through differentiation.  Rumble's request as to Paragraph 1326 is therefore **GRANTED**.

### 2.       Expert Michael Whinston

Rumble separately seeks trial transcripts and associated exhibits and demonstratives from the DOJ's expert witness, Michael Whinston.  Rumble argues that his testimony is relevant to the same topics that the DOJ's Proposed Findings of Fact concern, namely the intent, scope, and effect of the Android Agreements.  ECF No. 112 at 5.  Rumble does not dispute that the trial transcripts reflecting Whinston's testimony is available publicly in fully unredacted form.  It appears, however, that at least certain of the exhibits and trial demonstratives connected with his testimony are redacted.

In response, Google argues that production is burdensome.  Google points out that Whinston testified for multiple days, and the first two days of his testimony related solely to the alleged relevant markets at issue in the DOJ Case, which are different from the proposed market definitions in this case.  *Id.* at 9.  Furthermore, Google contends that Rumble has not shown that the burden associated with reviewing and producing the exhibits and trial demonstratives, an unspecified number of which are redacted, is proportionate to the needs of the case.  *Id.*  Indeed, Rumble's argument regarding the materials it seeks is limited to two slides from the expert's trial demonstratives.  *Id.* at 77–78.

The Court finds that Rumble has not demonstrated relevancy and proportionality sufficient to justify ordering Google to review and produce all the exhibits and trial demonstratives that were

introduced over the course of Whinston's multiple days of testimony.  Rumble has made no showing to assist the Court in understanding the scope of its request or how important the requested materials are to its case.  Rumble's request for relief is **GRANTED** solely as to the trial demonstratives it has specifically argued in the Second Joint Discovery Letter.  Google shall produce the attached demonstratives with redactions removed from its confidential information.

## IV.      CONCLUSION

For the reasons explained above, Rumble's request to compel production as to materials from the DOJ Case is **GRANTED IN PART** and **DENIED IN PART**.  For Category (1), Google shall produce unredacted trial transcripts for the testimony of Dr. Pandu Nanak, Dr. Kevin Murphy, Jim Kolotouros, and Adrienne McCallister, four witnesses that testified in the DOJ Case and who are also on Google's initial disclosures or have been disclosed by Google as an expert in this case.  This includes any deposition testimony and the associated exhibits insofar as such material was designated at trial, and thus, part of the trial transcript.  However, Rumble's request for trial materials for any expert witnesses Google in the future discloses as an expert in this case and who also testified in the DOJ Case is **DENIED** without prejudice as to Rumble's ability to seek these materials through a new discovery letter, after meeting and conferring with Google. For all the materials Google produces, it may only redact third party confidential information where the third party asked for that information to be sealed in the DOJ Case.

For Category (2), Google shall produce materials cited in Paragraphs 779–821, 822–31, 832–62, 867–943, 1089, 1312, 1324 and 1326 of the DOJ's Proposed Findings of Fact.  As with Category (1), Google may only redact third party confidential information where the third party asked for that information to be sealed in the DOJ Case.  Google shall also produce unredacted all Whinston trial demonstratives attached to the Second Joint Discovery Letter Brief.

**IT IS SO ORDERED.**

Dated: July 3, 2024

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California