1

2

3

4                              UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7    RUMBLE, INC.,                           Case No. 21-cv-00229-HSG

8                   Plaintiff,               **ORDER GRANTING DEFENDANT'S
                                             MOTION FOR SUMMARY
9           v.                               JUDGMENT**

10   GOOGLE LLC,                             Re: Dkt. No. 134

11                  Defendant.

12

13          Before the Court is Defendant's motion for summary judgment, Dkt. No. 134.  The Court

14   held a hearing on the motion, Dkt. No. 206, and now GRANTS it.

15   **I.     BACKGROUND**

16          Plaintiff Rumble, Inc. operates an online video platform ("the Rumble platform") that

17   launched in 2013.  Dkt. No. 21 ("FAC") ¶ 14.  Video content creators can upload their videos to

18   the Rumble platform, and Plaintiff makes these videos available for a fee to other companies'

19   websites or to social media websites to generate advertising revenue.  *Id.* ¶ 15.  Plaintiff shares a

20   portion of this revenue with the content creators in the form of royalty payments.  *Id.* ¶ 19.

21          In January 2021, Plaintiff filed a complaint against Defendant Google, LLC, alleging that

22   1) Defendant maintained unlawful tying arrangements in violation of 15 U.S.C. § 1; and 2)

23   Defendant maintained a monopoly in the market for online video-sharing platforms in violation of

24   15 U.S.C. § 2.  *See* Dkt. No. 1 ¶¶ 87–105.  After Defendant moved to dismiss the Section 1 claim,

25   *see* Dkt. No. 16, Plaintiff filed an amended complaint in April 2021 that removed that claim and

26   added new allegations to support the Section 2 claim.  *See generally* FAC.

27          The amended complaint asserts a single claim alleging monopolization and attempted

28   monopolization in violation of Section 2.  *See* FAC ¶¶ 191–200.  Plaintiff alleges that Defendant

*United States District Court*
*Northern District of California*

has maintained a monopoly in the online video-sharing platform market by engaging in two forms of anticompetitive conduct. First, Plaintiff alleges that Defendant manipulates the algorithms and other mechanisms by which it displays videos in Google search results to ensure that videos hosted on YouTube, Defendant's video platform, are listed first. *Id.* ¶ 27. Plaintiff calls this conduct "self-preferencing." *Id.* ¶ 29. Second, Plaintiff alleges that Defendant enters into exclusionary agreements with manufacturers of mobile devices that use Android, an operating system developed by Defendant, to ensure that the YouTube app is preinstalled on mobile smart devices as the first "page" or home screen of such devices, to the exclusion of competitor video platforms like Rumble. *Id.* ¶ 76. Specifically, Plaintiff contends that Defendant uses three types of exclusionary agreements: 1) "anti-forking" or antifragmentation agreements that forbid manufacturers of Android-based devices from developing or distributing versions of Android that do not comply with Defendant's technical standards; 2) pre-installation agreements that condition manufacturers' installation of Defendant's other apps (such as Google Play) on Android devices on the installation and preferred placement of YouTube and other Google apps; and 3) agreements in which various entities agree to make Google search the preset default general search engine on Android devices in exchange for a portion of Defendant's search advertising revenue. *See id.* ¶¶ 84–86, 105, 151, 161. According to Plaintiff, these agreements are designed to foreclose distribution to and use of Defendant's competitors for search and online video platform services. *Id.* ¶ 89.

Plaintiff maintains that Defendant's alleged self-preferencing and use of exclusionary agreements has allowed it to unfairly and wrongfully direct a large amount of search traffic to YouTube, and thereby "secure for itself monopoly profits from ad revenue generated by views of video contents on the YouTube platform." FAC ¶ 176. As to the impact of this conduct on the Rumble platform specifically, Plaintiff alleges that but for Defendant's monopolistic conduct beginning in April 2014, potentially as many as 9.3 billion users would have been directed through a Google search to videos on the Rumble platform instead of YouTube. *See id.* ¶¶ 177, 178, 186. Plaintiff contends that in turn, those 9.3 billion video views would have generated millions of additional video uploads and billions more video views on the Rumble platform, resulting in

1 "massive amounts of additional revenue" for Plaintiff. *Id.* ¶ 188. Plaintiff seeks more than $2

2 billion in damages to compensate for this lost revenue. *Id.* ¶ 190.

3      In June 2021, Defendant moved to dismiss certain theories of liability alleged in the

4 amended complaint and to strike Plaintiff's new allegations. Dkt. No. 32. The Court denied the

5 motion in July 2022. Dkt. No. 57. Defendant now moves for summary judgment. Dkt. No. 134.

6 ## II.    LEGAL STANDARD

7      Summary judgment is proper when a "movant shows that there is no genuine dispute as to

8 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

9 A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*

10 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if there is evidence

11 in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.*

12 But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from

13 the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec.*

14 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence

15 or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997),

16 *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

17      The moving party bears the initial burden of identifying those portions of the record that

18 demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477

19 U.S. 317, 322–23 (1986). The burden then shifts to the nonmoving party to "go beyond the

20 pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and

21 admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See*

22 *id.* at 324 (quoting Fed. R. Civ. P. 56(e) (amended 2010)). The nonmoving party must show more

23 than "the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376,

24 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must

25 come forth with evidence from which a jury could reasonably render a verdict in the non-moving

26 party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make

27 this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477

28 U.S. at 323. If a court finds that there is no genuine dispute of material fact as to only a single

United States District Court
Northern District of California

3

1  claim or defense or as to part of a claim or defense, it may enter partial summary judgment.  Fed.

2  R. Civ. P. 56(a).

3  **III.    DISCUSSION**

4          Defendant moves for summary judgment on several grounds, but as a threshold matter,

5  Defendant argues that the applicable statute of limitations bars Plaintiff's antitrust claim.  Dkt. No.

6  143 ("Mot.") at 37.[1]  In its opposition, Plaintiff maintains that because Defendant did not raise this

7  argument in its motions to dismiss, it "has no basis at the summary judgment stage."  Dkt. No. 176

8  ("Opp.") at 34.  However, the Ninth Circuit has held that a statute of limitations defense "may be

9  raised by a motion for dismissal or by summary judgment motion."  *Jablon v. Dean Witter & Co.*,

10  614 F.2d 677, 682 (9th Cir. 1980).  Plaintiff fails to cite any authority in its opposition suggesting

11  that Defendant waived this argument, and did not identify any at the hearing.  In addition,

12  Defendant included a statute of limitations defense in its answer to the operative complaint.  *See*

13  Dkt. No. 63 at 37.  Accordingly, the Court finds that the statute of limitations issue is properly

14  before it.

15          Defendant argues that Plaintiff's complaint is barred by the four-year statute of limitations

16  for antitrust claims.  Mot. at 38 (citing 15 U.S.C. § 15b).  Defendant contends that because

17  Plaintiff seeks damages for its injuries resulting from purported anticompetitive conduct that

18  occurred starting in April 2014, its claim accrued then.  Mot. at 38.  Consequently, according to

19  Defendant, Plaintiff was required to bring this action by April 2018 at the latest, but failed to do

20  so.  *Id.*

21          In opposition, Plaintiff responds that to succeed on its statute of limitations argument,

22  Defendant must prove that Plaintiff had actual or constructive knowledge of Defendant's

23  anticompetitive conduct before the four-year statutory period began.  *See* Opp. at 34–35.  On

24

25  ---
[1] The parties filed their summary judgment briefing under seal, seeking to redact various portions
26  of their memoranda and supporting exhibits.  *See* Dkt. Nos. 134, 166-1, 191.  Accordingly, when
referring to the parties' arguments, the Court cites the publicly-filed, redacted versions of their
27  moving papers.  *See* Dkt. Nos. 143 (Defendant's Motion for Summary Judgment), 176 (Plaintiff's
Opposition to Defendant's Motion for Summary Judgment), 201 (Defendant's Reply).  But the
28  Court notes that in deciding this motion, it considered the full, unredacted versions of the parties'
briefs.

reply, Defendant correctly points out that antitrust claims are not subject to the discovery rule, meaning that Plaintiff's knowledge of Defendant's conduct generally is not relevant to the statute of limitations analysis.  *See* Dkt. No. 201 ("Reply") at 23; *see also Beneficial Standard Life Insurance Co. v. Madariaga*, 851 F.2d 271, 274-75 (9th Cir. 1988) ("In [antitrust] actions governed by 15 U.S.C. § 15b, the plaintiff's knowledge is generally irrelevant to accrual, which is determined according to the date on which injury occurs.").  Plaintiff then stated at the hearing that it did not intend to argue for the application of the discovery rule, but instead contends that the statute of limitations should be tolled on the basis of fraudulent concealment.  *See* Dkt. No. 209, Hearing Transcript ("Tr.") at 5:11–17.  In the alternative, Plaintiff also argues that Defendant's "continuing self-preferencing of YouTube and continued monopolization via the Android Agreements over a number of years constitute continuing violations" that tolled the statute of limitations.  *See* Opp. at 35.

Defendant responds that Plaintiff cannot establish that the limitations period should be tolled on the basis of fraudulent concealment because it failed to plead any such theory.  Mot. at 38; Reply at 23.  Defendant also argues that the continuing violations doctrine does not apply because Plaintiff has not shown any new and independent act committed by Defendant within the limitations period.  Mot. at 38–39; Reply at 24.

As the moving party, Defendant bears the burden of showing that there is no genuine dispute of material fact as to whether Plaintiff's claims accrued more than four years ago.  *See Celotex Corp.*, 477 U.S. at 322–23.  Once Defendant has made this initial showing, the burden shifts to Plaintiff to identify evidence on which a reasonable jury could find that an exception to the applicable statute of limitations applies.  *See In re Oracle*, 627 F.3d at 387; *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("To put at issue a defendant's evidence . . . sufficient to trigger the running of the statute of limitations, the plaintiff must produce at least some significant, probative evidence tending to support the complaint to create a genuine issue of material fact.") (internal citation and quotation omitted); *see also Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1302 (9th Cir. 1986) (plaintiffs seeking to recover damages prior to the limitations period had the burden on summary judgment to "alleg[e] specific facts showing" the

United States District Court
Northern District of California

elements of fraudulent concealment doctrine); *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) ("Because Plaintiffs have the burden of proof at trial to establish that they are entitled to the benefit of the discovery rule, to defeat summary judgment they were required to come forward with evidence establishing a triable issue of fact with regard to whether the discovery rule applies.").

The Court finds that Defendant has met its initial burden.  A Sherman Act claim must be brought within four years after the cause of action accrued.  *See* 15 U.S.C. § 15b.  The claim "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971).  Here, Plaintiff alleges that Defendant's conduct caused Plaintiff to suffer anticompetitive harm as early as April 2014, and seeks damages for that harm.  *See* FAC ¶¶ 177–190.  Plaintiff's antitrust claim therefore began to accrue in April 2014, when it alleges it was first injured by Defendant's purported misconduct.  *See Zenith*, 401 U.S. at 338.  As a result, Plaintiff's 2021 complaint was untimely unless Plaintiff can demonstrate that an exception to the statute of limitations applies.  *See Hexcel*, 681 F.3d at 1063.

## A. Fraudulent Concealment

Defendant argues that because Plaintiff failed to plead that the statute of limitations is tolled based on the doctrine of fraudulent concealment, it cannot rely on that theory now.  Mot. at 23–24.

The Court agrees with Defendant.  The Ninth Circuit has held that "plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings," and has clarified that "this rule applies even where the tolling argument is raised in opposition to summary judgment." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006).  *See id.* at 992 (holding that plaintiff could not toll the statute of limitations based on allegations that "appear[ed] for the first time in its response to [a] summary judgment motion" because "summary judgment is not a procedural second chance to flesh out inadequate pleadings") (internal quotation and citation omitted); *see also Hexcel Corp.*, 681 F.3d at 1060 (plaintiff arguing for the application of the fraudulent concealment doctrine "carries the burden of

United States District Court
Northern District of California

1    pleading and proving fraudulent concealment") (internal citation and quotation marks omitted);

2    *Grimmett v. Brown*, 75 F.3d 506, 514 (9th Cir. 1996) (holding in affirming grant of summary

3    judgment that "[f]ailure to plead [fraudulent concealment] waives this tolling defense").

4          At the hearing on Defendant's motion, Plaintiff conceded that it did not plead fraudulent

5    concealment, but argued that it was not required to do so, citing *Staley v. Gilead Sciences*, No. 19-

6    CV-02573-EMC, 2021 WL 4972628 (N.D. Cal. Mar. 12, 2021), and *Rivera v. Peri & Sons Farms,*

7    *Inc.*, 735 F.3d 892 (9th Cir. 2013). *See* Tr. 5:18–6:18. Neither case is directly applicable here,

8    given that they both addressed motions to dismiss rather than motions for summary judgment.

9    Further, the principles they articulate undermine Plaintiff's position that it was not required to

10   plead any fraudulent concealment theory. In *Rivera*, the Ninth Circuit held that while plaintiffs

11   "ordinarily need not plead on the subject of an anticipated affirmative defense" such as a statute of

12   limitations defense, they may be subject to an attack on the pleadings "when the statute of

13   limitations issues are apparent on the face of the complaint." 735 F.3d at 902 (internal citations

14   and quotations omitted). *Staley*, applying this principle from *Rivera*, granted the defendant's

15   motion to dismiss on statute of limitations grounds because plaintiffs' complaint had an "obvious

16   limitations problem," and plaintiffs had failed to adequately plead a tolling theory "to get around"

17   it. *See Staley*, 2021 WL 4972628, at *14, *17. *Cf. Zenith*, 401 U.S. at 334 ("where . . . plaintiff

18   has no reason to anticipate that a claim of limitations will be raised against him, he need not set

19   forth his claim of tolling until the limitations claim is raised").

20         Here, Plaintiff's statute of limitations problem is obvious on the face of the operative

21   complaint because Plaintiff seeks damages going back to April 2014, *see* FAC ¶ 177, a date that is

22   "well beyond" the four-year limitations period for an antitrust claim brought in 2021. *See Staley*,

23   2021 WL 4972628, at *14. Accordingly, Plaintiff reasonably "[had a] reason to anticipate that a

24   claim of limitations [would] be raised against [it]." *See Zenith*, 401 U.S. at 334. Plaintiff was

25   therefore required to include a tolling theory in its complaint. *See Wasco Prods., Inc.*, 435 F.3d at

26   991; *Grimmett*, 75 F.3d at 514. At the hearing, however, Plaintiff admitted that it never actually

27   pled any fraudulent concealment theory. *See* Tr. 5:18–24. As such, Plaintiff may not assert this

28   theory now as an exception to the applicable statute of limitations.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Moreover, even if Plaintiff was not required to plead fraudulent concealment, the Court finds that it has not met its burden to establish a genuine issue of fact as to whether the doctrine should apply.  To prove fraudulent concealment, a plaintiff must show 1) that the defendant "affirmatively misled it," and 2) that the plaintiff "had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988).  Both elements are "critical component[s]" of a fraudulent concealment claim, and failure to establish a genuine issue of fact as to either element is fatal to the claim as a matter of law on summary judgment.  *See Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1096 (9th Cir. 2005).

The Court finds that Plaintiff has not proffered evidence sufficient to raise a genuine issue for trial as to the first element (i.e., that Defendant affirmatively misled it).  Plaintiff must "establish that its failure to have notice of its claim was the result of [Defendant's] affirmative conduct." *See Conmar*, 858 F.2d at 505.  "Passive concealment of information is not enough to toll the statute of limitations, unless the defendant had a fiduciary duty to disclose information to the plaintiff.  An affirmative act of denial, however, is enough if the circumstances make the plaintiff's reliance on the denial reasonable." *Id.* (internal citations omitted).

In its summary judgment opposition, Plaintiff contends that Defendant "has always claimed publicly that its search results were intended to provide the most responsive, relevant, and high-quality results, thereby concealing its conduct from the public." *See* Opp. at 35.  However, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that it fails to show an affirmative act of denial.  First, Plaintiff cites Defendant's "Honest Results" Policy, which Plaintiff describes as a "public misrepresentation of no favoritism in Google Search" that "effectively concealed from the public the true operation of [Defendant's] search mechanisms." *See id.*  But the statements in the document indicate that it is an internal document summarizing an internal policy:  it appears to be available at an internal Google web address ("go/honest-results"), not a public web address, *see* Dkt. No. 43-17 at 2; it includes instructions and information directed at Google employees, not the public, *see id.* at 4–9; and it even refers to a separate "Public Honest Results site" that is not linked in the document or cited by Plaintiff, *see id.* at 4 ("To share an

8

United States District Court
Northern District of California

1    external overview on the policy, refer to Google's Public Honest Results site[.]").  Plaintiff does

2    not explain how it reasonably relied on one of Defendant's internal documents that is not publicly

3    available in delaying its claim.

4            Further, even assuming that the policy was publicly available, the statements are too

5    general to reasonably constitute an "affirmative act of denying wrongdoing."  *See Rutledge v. Bos.*

6    *Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978).  The policy states that the Google

7    Search team will "not act upon reports of flawed search results for which a reasonable person

8    might perceive an ulterior motivation, such as . . . [p]resenting Google products in a more

9    favorable light."  *See* Dkt. No. 43-17 at 3.  It also advises that the team "should avoid fixing

10   [search issues] only for Google properties, or prioritizing a fix for Google properties over non-

11   Google properties."  *Id.* at 6.  None of these statements directly deny the allegation that

12   Defendant's search mechanisms prioritize YouTube over other video platforms.  *See Conmar*, 858

13   F.2d at 505 (affirmative act of denial may be reasonable if it amounts to a "direct public denial of

14   any wrongdoing"); *see also Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1078 (N.D. Cal.

15   2016) (holding that defendant's public statements that it "obey[ed] antitrust laws and participate[d]

16   in a competitive market alone [did not] suffice to show fraudulent concealment, absent other

17   evidence that the defendant attempted to conceal its alleged antitrust behavior").

18           Second, Plaintiff cites excerpts of reports by Defendant's expert economist, Dr. Murphy, in

19   which, according to Plaintiff, Dr. Murphy "stresses the image of Google Search that the company

20   has promulgated."  Opp. at 35.  None of the cited statements refer to or discuss Defendant's public

21   representations about Google Search, and none reference any public affirmative denial of self-

22   preferencing made by Defendant.  *See* Dkt. No. 176-28 ¶¶ 135–37 (stating opinion that Defendant

23   lacks the ability or incentive to favor YouTube results in search); *id.* ¶¶ 177–181 (discussing

24   Defendant's YouTube growth strategy, not Google Search or its public image); Dkt. No. 176-29

25   ¶¶ 176–187 (critiquing economic analyses of Plaintiff's experts and stating opinion that YouTube

26   is a higher quality platform than Rumble).

27           Third, Plaintiff does not cite any record evidence of affirmative denials or other acts of

28   affirmative concealment relevant to its claim regarding Defendant's allegedly exclusionary

1    contracts.  *See* Opp. at 35.

2        Finally, Plaintiff's opposition improperly cites allegations in the operative complaint to

3    support its fraudulent concealment argument.  *See* Opp. at 35.  A plaintiff may not rely on

4    unsupported allegations alone to avoid summary judgment.  *See Liberty Lobby*, 477 U.S. at 256

5    ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary

6    judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific

7    facts showing that there is a genuine issue for trial.").  And Plaintiff does not establish that any of

8    the cited allegations have since been backed up with facts identified in the summary judgment

9    record.  *See In re Oracle*, 627 F.3d at 387 ("[T]he non-moving party must come forth *with*

10    *evidence* from which a jury could reasonably render a verdict in the non-moving party's favor.")

11    (emphasis added).[2]

12        The Court accordingly finds that Plaintiff both (1) failed to plead fraudulent concealment

13    as required; and (2) failed to identify evidence on which a reasonable jury could rely to find that

14    Defendant affirmatively misled it regarding the alleged self-preferencing or allegedly exclusionary

15    contracts, such that it was reasonably delayed in bringing an antitrust suit based on either theory.

16    "Having failed to satisfy this critical component of [its] claim, [Plaintiff] has not established

17

18    _____

19    [2] Even if Plaintiff had presented record evidence to support the cited allegations, the Court notes
     that several of the facts asserted would not provide a basis for a reasonable jury to find that

20    Defendant committed any affirmative acts of concealment.  For example, Plaintiff's opposition
     references an allegation that cites a September 2019 public blog post in which Defendant

21    purportedly "emphasiz[ed] that original sourced reporting and content will always receive
     preferential treatment by its search engine algorithms."  *See* Opp. at 35 (citing FAC ¶ 72(f)).  This

22    general statement cannot reasonably be construed as a "direct public denial" of the purportedly
     illegal self-preferencing of YouTube sufficient to trigger Plaintiff's reliance in delaying its case.

23    *See Conmar*, 858 F.2d at 505.  Similarly, Plaintiff cites portions of the complaint generally
     alleging that Defendant markets the Android operating system as "open-source," but Android

24    manufacturers must still enter into exclusionary contracts with Defendant because it has made it
     impossible for them to rely solely on the open-source code to manufacture Android devices

25    independently.  *See* Opp. at 35 (citing FAC ¶¶ 77, 109–110).  Even if true, these assertions do not
     sufficiently describe the details of any public representations Defendant made to Plaintiff or the

26    public about its Android code or contracts, including the specific statements that were made, when
     they were made, and to whom.  *See Conmar*, 858 F.2d at 502 (holding that "[c]onclusory

27    statements are not enough" to prove fraudulent concealment because a plaintiff must show "with
     particularity the circumstances of the concealment"); *see also Hexcel Corp.*, 681 F.3d at 1063

28    ("conclusory" evidence "lacking detailed facts" is insufficient to create a genuine issue of material
     fact as to the application of fraudulent concealment).

United States District Court
Northern District of California

1    fraudulent concealment as a matter of law." *See Thorman*, 421 F.3d at 1096. For that reason, the

2    Court does not need to address the issue of Plaintiff's actual or constructive knowledge. *See id.*

3        **B.    Continuing Violations**

4        There is an exception to the standard four-year time limit for Sherman Act claims for

5    continuing violations. *See Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir.

6    2014). "To state a continuing violation of the antitrust laws in the Ninth Circuit, a plaintiff must

7    allege that a defendant completed an overt act during the limitations period that meets two criteria:

8    '1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and

9    2) it must inflict new and accumulating injury on the plaintiff.'" *Id.* (quoting *Pace Industries, Inc.*

10   *v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987)). Put another way, for the continuing

11   violations doctrine to apply, "an overt act by the defendant is required to restart the statute of

12   limitations and the statute runs from the last overt act." *Pace*, 813 F.2d at 237.[3]

13       In its opposition to Defendant's motion for summary judgment, Plaintiff's argument that

14   the continuing violations exception applies totals one cursory sentence. Plaintiff simply states that

15   Defendant's "continuing self-preferencing of YouTube and continued monopolization via the

16   Android Agreements over a number of years constitute continuing violations that, as a matter of

17   law, restart the limitations period." Opp. at 35. Plaintiff does not identify any specific facts that

18   flesh out this general assertion in any detail, and does not identify any evidence in the record to

19   support it. *See id.* Instead, the only facts and record evidence cited are tied to Plaintiff's

20   fraudulent concealment theory, but none of that material is relevant to the continuing violations

21   issue. *See id.* (identifying facts to support theory that Defendant allegedly concealed its conduct

22   from the public).

23       As a matter of law, this showing is inadequate to preclude summary judgment. To

24   demonstrate a genuine issue for trial, Plaintiff must go beyond the pleadings and identify specific

25   facts in the record from which a jury could reasonably find in its favor. *See In re Oracle*, 627 F.3d

26

27   _____

     [3] The Court notes that because the continuing violations doctrine simply restarts the limitations
28   period, if it applied here, Plaintiff could seek damages only for injuries dating back to 2017 (four
     years before Plaintiff filed its complaint) and not earlier. *See Pace*, 813 F.2d at 237.

United States District Court
Northern District of California

United States District Court
Northern District of California

at 387; *Liberty Lobby*, 477 U.S. at 256. As relevant here, Plaintiff must identify specific facts in the record from which a jury could reasonably conclude that during the applicable statutory period (2017 to 2021), Defendant committed a new and independent act that inflicted a new injury on Plaintiff, thus restarting the statute of limitations. *See Samsung* 747 F.3d at 1202 (quoting *Pace*, 813 F.2d at 238). Further, it is Plaintiff's burden to "designate" the particular evidence that supports its argument opposing summary judgment. *See Celotex Corp.*, 477 U.S. at 324. The Court is not required to comb through the record or Plaintiff's briefing to find it. *See* Fed. R. Civ. P. 56(c)(1), (3) (on summary judgment, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record," and a court "need consider only the cited materials"); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (explaining that the court is "not required to comb the record to find some reason to deny a motion for summary judgment"); *see also Voyager Indem. Ins. Co. v. Miller*, 674 F. Supp. 3d 765, 770 (N.D. Cal. 2023) ("[T]he party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment."). And although the Court must view the underlying facts in the record in the light most favorable to Plaintiff, Plaintiff has the burden to identify for the Court the underlying facts that support its position. *See Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56(c)(1).

Here, the Court finds that as presented in the opposition brief, Plaintiff's attempt to avoid summary judgment is fatally vague and conclusory. Plaintiff's single-sentence opposition does not address the required elements of the continuing violations doctrine and the "overt act" test, or articulate how Defendant's alleged "continuing self-preferencing of YouTube and continued monopolization via the Android Agreements," Opp. at 35, amounted to new and independent acts committed during the limitations period that inflicted new injury on Plaintiff. *See Samsung*, 747 F.3d at 1202; *Pace*, 813 F.2d at 238. Moreover, Plaintiff wholly fails to identify any record evidence to support its argument. *See* Opp. at 35. Plaintiff's failure to support its conclusory theory with specific facts and "at least some significant, probative evidence" in the record is fatal on summary judgment as a matter of law. *See Hexcel Corp.*, 681 F.3d at 1063.

At oral argument, Plaintiff's counsel attempted to supplement its opposition by arguing for

the first time that its claim is timely under the Ninth Circuit's decision in *Samsung v. Panasonic*. *See* Tr. 7:13–8:3. According to counsel, *Samsung* holds that "where the defendant takes subsequent unlawful action, even pursuant to a preexisting policy agreement or decision, [the action] restarts the statute of limitations" as long as the defendant "had the ability not to take the challenged action at later junctions." *See* Tr. 9:7–11. Counsel maintained that, applying this principle, Defendant's alleged self-preferencing in Google search and its allegedly exclusionary contracts were new overt acts because Defendant changed its anticompetitive search mechanisms and entered into new exclusionary contracts during the limitations period, which it was not bound to do. *See* Tr. 10:11–22.

When asked to explain why Plaintiff did not cite *Samsung* or include the above argument in its written opposition, Plaintiff's counsel blamed Defendant, claiming that "the continuing violation point was raised by [Defendant] in its reply brief," and that the argument that the alleged conduct constituted reaffirmations as opposed to continuing violations only "came up on reply." *See* Tr. 7:7–9, 18–21. That claim is inaccurate: Defendant's opening brief explicitly argued that the continuing violations doctrine did not apply because Plaintiff had not pointed to any "new and independent act that [was] not merely a reaffirmation of a previous act." *See* Mot. at 38 (citing *Pace*, 813 F.2d at 237); *see also* Mot. at 37 (analogizing to a case in which a court held that "product releases involving the same practices as prior releases were simply reaffirmations of a previous act") (internal citation omitted). Yet in its opposition to Defendant's brief, Plaintiff did not respond to the argument that it had not identified any overt act that was not a reaffirmation, and did not cite or apply the principle from *Samsung*. *See* Opp. at 35. Plaintiff's attempt to raise *Samsung* and assert a new version of its continuing violations theory for the first time at the motion hearing was questionable at best. *See Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010) (deeming contentions raised for the first time at oral argument to be waived).

At any rate, even if Plaintiff had properly asserted its *Samsung* argument, it still cannot meet its burden to avert summary judgment. Importantly, *Samsung* and the other Ninth Circuit case Plaintiff cited at the hearing, *Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014), are of limited application here. Both cases addressed whether plaintiffs had sufficiently *alleged*

continuing antitrust violations, not whether they had *identified evidence* of continuing violations sufficient to overcome summary judgment on statute of limitations grounds. *See Samsung*, 747 F.3d at 1204; *Oliver*, 751 F.3d at 1087.[4]  As discussed above, at the summary judgment stage Plaintiff may not rely on its allegations, and instead must point to specific facts in the summary judgment record from which a reasonable jury could conclude that Defendant committed continuing violations during the statutory period. *See Liberty Lobby*, 477 U.S. at 256; *Hexcel Corp.*, 681 F.3d at 1063.  Like Plaintiff's written opposition, its showing at the hearing cannot meet this burden because it amounts to bare attorney argument lacking any evidentiary support.

First, counsel failed to identify at oral argument, and Plaintiff's summary judgment briefing similarly does not point to, any facts in the record to support the assertion that Defendant committed overt acts by changing its purportedly anticompetitive search mechanisms during the limitations period. *See* Tr. 10:11–17.  Plaintiff has not identified any evidence describing the changes Defendant supposedly made, or showing how such changes inflicted "new and accumulating injury."[5]  *See Samsung*, 747 F.3d at 1202.  The Court questions whether the vague allegation that Defendant's search technology "changes" "over time and over the years," *see* Tr: 10:13–15, would be sufficient even to *plead* a continuing violation. *See, e.g.*, *SaurikIT, LLC v.*

---

[4] Additionally, in *Oliver*, the court relied on Supreme Court authority that specifically applies to price-fixing claims, and Plaintiff does not allege such a claim here.  *See Oliver*, 751 F.3d at 1086 (recognizing that under Supreme Court precedent, the statute of limitations for price-fixing claims restarts "each time a defendant sells its price-fixed product.") (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)).

[5] The Court is not required to hunt through Plaintiff's papers and the record to find evidence relevant to its continuing violations theory when Plaintiff itself did not identify any.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen*, 237 F.3d at 1029.  However, even giving Plaintiff the benefit of the doubt and considering the facts and evidence it identified to support its arguments on issues other than the statute of limitations, Plaintiff still fails to proffer any evidence that could support counsel's allegations regarding modifications to Defendant's search mechanisms.  As it happens, the only specific fact contained in the parties' summary judgment briefing that addresses such modifications is Defendant's own acknowledgment that it "performs thousands of tests and makes thousands of changes to its algorithms every year."  Mot. at 10.  But a reasonable jury could not conclude on that basis alone that Plaintiff's claim is timely, because the simple fact that Defendant frequently changes its search algorithms does not explain how those changes amount to "new and independent" anticompetitive acts that caused Plaintiff to suffer a "new and accumulating injury." *See Samsung*, 747 F.3d at 1202.

1    *Apple, Inc.*, No. 22-16527, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023)[6] (affirming district

2    court's dismissal of complaint that "offer[ed] only conclusory allegations" that allegedly

3    anticompetitive contracts were "modified" during the limitations period); *Ryan v. Microsoft Corp.*,

4    No. 14-CV-04634-LHK, 2015 WL 1738352, at *13–14 (N.D. Cal. Apr. 10, 2015) (holding that

5    "bare allegation" failed to plead an overt act because plaintiffs failed to provide "any dates or

6    details with regards to [defendant's] specific conduct"); *Yelp Inc. v. Google LLC*, No. 24-CV-

7    06101-SVK, 2025 WL 1168900, at *11 (N.D. Cal. Apr. 22, 2025) (rejecting as insufficient to

8    adequately plead overt acts allegations that defendant had "taken actions" and "tweaked its

9    algorithms," when allegations were "bereft of any dates or details" about the alleged changes).

10    But regardless, an entirely unsupported assertion certainly is insufficient as a matter of law to meet

11    Plaintiff's summary judgment burden. *See Hexcel Corp.*, 681 F.3d at 1064 (entering summary

12    judgment for defendant because plaintiff "failed to proffer evidence sufficient to create any

13    genuine issues of material fact" regarding timeliness of claim); *see also CSX Transportation, Inc.*

14    *v. Norfolk S. Ry. Co.*, 648 F. Supp. 3d 679, 721 (E.D. Va. 2023), *aff'd*, 114 F.4th 280 (4th Cir.

15    2024) (finding that plaintiff's "efforts to demonstrate an overt act . . . through speculation" were

16    insufficient as a matter of law on summary judgment).

17         Second, Plaintiff similarly fails to point to any evidence showing that Defendant

18    committed overt acts by entering into "new exclusionary contracts . . . throughout the [statutory]

19    timeframe." *See* Tr. 10:18–22.  Plaintiff does not identify a single fact supported by record

20    evidence that describes Defendant's actual conduct during the limitations period regarding its

21    contracts, including when and with whom Defendant entered into them, their actual terms, or how

22    Defendant's use of them inflicted new and accumulating harm on Plaintiff.  *See Samsung*, 747

23    F.3d at 1202.  As such, there is no basis for a reasonable jury to find that Defendant entered into

24    any exclusionary agreements within the statutory period that constituted overt acts.  *See Eichman*

25    *v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) (affirming grant of summary judgment on

26

27    ───────────────

28    [6] As an unpublished Ninth Circuit decision, this case is not precedent, but may be considered for
its persuasive value.  *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

United States District Court
Northern District of California

statute of limitations grounds because plaintiff failed to show that defendant "actually did enforce" allegedly unlawful agreement during the limitations period). *Cf. Samsung*, 747 F.3d at 1204 (complaint specifically alleged that defendant inflicted new injury on plaintiffs by enforcing its challenged license agreements against plaintiffs within the statutory period); *Oliver*, 751 F.3d at 1086–87 (complaint specifically alleged that plaintiffs suffered new injury during statutory period because they had purchased the price-fixed SD cards from defendant during that time).

Accordingly, Plaintiff simply fails as a matter of law to demonstrate a genuine dispute of fact as to whether Defendant committed continuing violations during the statutory period such that Plaintiff's claim is timely. Plaintiff had ample opportunity to support its conclusory arguments with specific facts and record evidence, but it did not.

\* \* \*

In sum, the Court finds that Defendant has met its initial burden of showing that there is no genuine dispute of material fact as to whether Plaintiff's claims accrued more than four years ago, and Plaintiff has failed to identify any evidence on which a reasonable jury could rely to find that an exception to the statute of limitations applies. Summary judgment is therefore **GRANTED** in Defendant's favor on the ground that Plaintiff's claim is time-barred. *See* Fed. R. Civ. P. 56(e). Because this ruling disposes of Plaintiff's entire claim, the Court declines to address Defendant's additional summary judgment arguments. For the same reason, the Court need not address the parties' *Daubert* motions.

## IV.    MOTIONS TO SEAL

### A.    Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion

must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal "must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents . . . ." Civil L.R. 79-5(a). The party must further explain the interests that warrant sealing, the injury that will result if sealing is declined, and why a less restrictive alternative to sealing is not sufficient. *See* Civil L.R. 79-5(c).

### B.    Discussion

The parties have filed numerous administrative motions to seal information related to their summary judgment motion and *Daubert* motion briefing. *See* Dkt. Nos. 125, 127–131, 150, 153, 155, 157, 159, 161, 162, 165, 178, 180, 182, 184, 186, 188, 190. At the Court's direction, the parties filed three joint omnibus motions that encompass all of their requests. *See* Dkt. Nos. 141 (filed October 25, 2025); 168 (filed December 4, 2024); 194 (filed January 10, 2025).

Beginning with Defendant's requests, Defendant seeks to seal information in four categories: 1) trade secrets; 2) confidential and commercially sensitive information related to the

United States District Court
Northern District of California

terms of Defendant's agreements with third parties; 3) other confidential business information related to Defendant's proprietary product information and business strategy; and 4) personally identifiable information ("PII"), including email addresses and phone numbers, of Defendant's employees and third parties.  *See* Dkt. Nos. 141 at 4–7; 168 at 2–3; 194 at 2.  Defendant's requests include mostly targeted (but voluminous) redactions and a few requests to seal entire documents.  *See* Dkt. Nos. 141 at 7–97; 168 at 3–37; 194 at 3–15.  Defendant provides lengthy declarations supporting each request that describe the competitive harm Defendant would suffer if the information it seeks to seal were to be disclosed to the public.  *See, e.g.*, Dkt. Nos. 141-1, 168-1, 191-1.

Plaintiff requests far fewer redactions than Defendant.  *See* Dkt. Nos. 141 at 97–99; 168 at 37–38; 194 at 16.  On the whole, Plaintiff seeks to redact and seal its non-public financial and business information.  *See, e.g.*, Dkt. No. 141 at 97–99.  However, some of its requests describe the information to be redacted simply as "confidential material."  *See, e.g.*, Dkt. No. 168 at 37.  Plaintiff supports its requests in two of the three joint omnibus motions to seal with detailed declarations.  *See* Dkt. Nos. 142, 169.  In the third motion, Plaintiff requests two redactions and cites a supporting declaration without providing a corresponding docket number, and the Court could not locate any such declaration on the docket.  *See* Dkt. No. 194 at 16.

The Court **GRANTS IN PART AND DENIES IN PART** the motions to seal.  The Court first denies Plaintiff's request to redact part of footnote in Defendant's summary judgment reply brief that quotes the deposition testimony of Rumble's CEO.  *See* Dkt. No. 194 at 16.  In the applicable motion to seal, Plaintiff argues that the material should be sealed simply because the deposition is "confidential" and "has not been made public."  *See id.*  The motion refers to a declaration that ostensibly provides additional support for the request, but as noted, Plaintiff failed to identify the declaration by docket number, *see id.*, and the Court could not locate it.  Accordingly, Plaintiff only provides a cursory justification for its request, which is insufficient to warrant sealing.  Local Rule 97-5 requires any sealing request to be supported with "a specific statement of the applicable legal standard and the reasons for keeping [information] under seal," which must include an explanation of "the legitimate private or public interests that warrant

1    sealing" and "the injury that will result if sealing is denied."  *See* Civil L.R. 79-5(c).  Asserting

2    that the information sought to be redacted is "confidential" does not satisfy this requirement or the

3    compelling reasons standard.  *See id.*; *Kamakana*, 447 F.3d at 1184 (holding that "simply

4    mentioning a general category of privilege, without any further elaboration or any specific linkage

5    with the documents, does not satisfy the burden").[7]

6         The parties' remaining requests, however, are sufficiently supported, and seek to redact

7    commercially sensitive and confidential business information and other information that satisfies

8    the compelling reasons standard and outweighs the public's interest in viewing the information.

9    *See Baird v. BlackRock Institutional Tr., N.A.*, 403 F.Supp.3d 765, 792 (N.D. Cal. 2019)

10   ("[C]onfidential business information in the form of license agreements, financial terms, details of

11   confidential licensing negotiations, and business strategies satisfies the compelling reasons

12   standard."); *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *5

13   (N.D. Cal. June 30, 2015) (sealing "confidential product and business information which is not

14   intended for public disclosure"); *Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988

15   MJJ, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1, 2007) ("The Ninth Circuit has found that

16   compelling reasons exist to keep personal information confidential to protect an individual's

17   privacy interest and to prevent exposure to harm or identity theft.").

18        In addition, many of the requests relate to materials cited in the parties' *Daubert* motions,

19   which the Court never substantively considered.  The public's interest in the disclosure of these

20   materials is therefore minimal as they do not aid the public's understanding of the judicial

21   proceedings here.  *See In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2013 WL

22   12335013, at *2 (N.D. Cal. Nov. 25, 2013) ("The public's interest in accessing these documents is

23   even further diminished in light of the fact that the Court will not have occasion to rule on [the

24   relevant motion]."); *see also Economus v. City & Cty. of San Francisco*, No. 18-CV-01071-HSG,

25   2019 WL 1483804, at *9 (N.D. Cal. Apr. 3, 2019) (finding compelling reason to seal because the

26

27   ───────────────

     [7] The material itself also does not reflect any apparent compelling reason requiring sealing:  the
28   testimony cited does not obviously pertain to Plaintiff's commercially sensitive business
     information or other potentially sealable material.

1    sealing request divulges sensitive information no longer related to the case); *Doe v. City of San*

2    *Diego*, No. 12-CV-689-MMA-DHB, 2014 WL 1921742, at *4 (S.D. Cal. May 14, 2014) (exhibit's

3    disclosure of personal information and irrelevance to the matter are compelling reasons to seal the

4    exhibit).  As such, the Court finds the parties have met the compelling reasons standard to file the

5    requested redactions and exhibits under seal, other than Plaintiff's redaction request that the Court

6    has denied.

7    **V.    CONCLUSION**

8         The Court **GRANTS** Defendant's motion for summary judgment, Dkt. No. 134.  The

9    Court **GRANTS IN PART AND DENIES IN PART** the joint omnibus administrative motions to

10   file under seal, Dkt. Nos. 141, 168, and 194.  Pursuant to Civil Local Rule 79-5(g)(1), documents

11   filed under seal as to which the administrative motions are granted will remain under seal.  The

12   Court **DIRECTS** the parties to meet and confer and file public versions and revised redactions as

13   needed of documents for which the proposed sealing has been denied, or file a new motion to seal,

14   within seven days of this order.  This order terminates all remaining pending administrative

15   motions to seal, Dkt. Nos. 125, 127 through 131, 150, 153, 155, 157, 159, 161, 162, 165, 178, 180,

16   182, 184, 186, 188, and 190.  The pending *Daubert* motions, Dkt. Nos. 135 through 140, are

17   terminated as moot.  The Clerk is **DIRECTED** to enter judgment in Defendant's favor and to

18   close the case.

19        **IT IS SO ORDERED.**

20   Dated:   5/21/2025

21

22   HAYWOOD S. GILLIAM, JR.
     United States District Judge

23

24

25

26

27

28

*United States District Court*
*Northern District of California*