Robert W. Dickerson, Jr. (SBN 89367)
E-mail: rdickerson@comp-techlaw.com
Allan W. Jansen (SBN 81992)
E-mail: ajansen@comp-techlaw.com
Ehab M. Samuel (SBN 228296)
E-mail: esamuel@comp-techlaw.com
COMPETITION & TECHNOLOGY LAW GROUP LLP
11400 West Olympic, Blvd., Suite 200
Los Angeles, CA 90064
Tel:  (310) 774-2337
Fax: (213) 799-3642

Nicholas A. Gravante, *Admitted Pro Hac Vice*
Email:  Nicholas.gravante@cwt.com
Philip J. Iovieno, *Admitted Pro Hac Vice*
Email: philip.iovieno@cwt.com
Jack G. Stern, *Admitted Pro Hac Vice*
Email: jack.stern@cwt.com
Kristen J. McAhren, *Admitted Pro Hac Vice*
Email: kristen.mcahren@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Tel: (212) 504-6000
Fax: (212) 504-6666

*Attorneys for Rumble Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| RUMBLE INC.,<br><br>                         Plaintiff,<br><br>     v.<br><br>GOOGLE LLC,<br><br>                         Defendant. | Case No. 21-cv-00229-HSG (LJC)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR AN INDICATIVE RULING RE RECUSAL AND REASSIGNMENT**<br><br>Honorable Haywood S. Gilliam, Jr. |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   GOOGLE DOES NOT CONTEST THE TIMELINESS OF THIS MOTION ............... 1

II.   THE CONCEDED FACTS CLEARLY REQUIRE RECUSAL ....................................... 1

III. MS. KNIGHT'S DECLARATION IS IRRELEVANT TO THE APPEARANCE OF
      PARTIALITY ISSUE ..................................................................................................... 2

IV. GOOGLE'S OPPOSITION CITES TO EASILY DISTINGUISHABLE CASES .......... 3

      A.     Google's Prior-Recusal Cases Involved Stale and/or Singular Recusals,
             Unaccompanied by Facts of the Type Present Here ........................................... 3

      B.     Google's "Just Friends" Cases Are Inapt ........................................................... 4

      C.     Google Mischaracterizes *In re Creech* ............................................................. 5

      D.     Google's Cited *De Novo* Review Cases Are Inapt ............................................ 6

V.   CONCLUSION ............................................................................................................... 8

# TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*Baker v. City of Detroit*, 458 F. Supp. 374 (E.D. Mich. 1978) ........................................................ 5

*Community of Legal Services etc. v. Hernandez*, 109 F. 3d 1450 (9th Cir. 1997) ........................ 5

*Diversified Numismatics v. City of Orlando,* 949 F.2d 382 (11th Cir. 1991) ................................ 3

*Diversifoods, Inc. v. Diversifoods, Inc.*, 595 F. Supp. 133 (N.D. Ill. 1984) ................................ 5

*Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661 (8th Cir. 2003) .................................................. 5

*Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288 (5th Cir. 1990) ................................ 5

*Higganbotham v. Oklahoma*, 328 F.3d 638 (10th Cir. 2003) ...................................................... 7

*In re Al-Nashiri*, 921 F.3d 224 (D.C. Cir. 2019) ........................................................................ 8

*In re Creech*, 119 F.4th 1114 (9th Cir. 2024) ...................................................................... 6, 7, 8

*Litovich v. Bank of Am. Corp.* 106 F.4th 218 (2nd Cir. 2024) .................................................... 7

*Patterson v. Mobil Oil Corp.*, 335 F.3d 476 (5th Cir. 2003) ...................................................... 7

*Person v. General Motors Corp.*, 730 F. Supp. 51 (W.D.N.Y. 1990) .......................................... 4

*Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir.) .................................................... 8

*Preston v. United States*, 923 F.2d 731 (9th Cir. 1991) .............................................................. 8

*Selfridge v. Gynecol, Inc.*, 564 F. Supp. 57 (D. Mass. 1983) .................................................... 5

*Shell Oil Co. v. United States*, 672 F.3d 1283 (Fed. Cir. 2012) .................................................. 7

*U.S. v. Murphy,* 768 F.2d 1518 (7th Cir. 1985) ........................................................................ 5

*United States v. Merkt,* 794 F.2d 950 (5th Cir. 1986) .............................................................. 3, 4

*Williamson v. Indiana Univ.*, 345 F.3d 459 (7th Cir. 2003) ...................................................... 7

S<small>TATUTES</small>

28 U.S.C. § 455(a) .................................................................................................................. 3, 7, 8

## Rules

Fed. R. App. P. 12.1 ................................................................................................................ 9

## ARGUMENT

Google's opposition and the accompanying Knight Declaration seek to shift focus away from the applicable "appearance of partiality" standard, and to erect strawmen – whether Judge Gilliam is in fact biased in favor of Google, and whether Ms. Knight has actively participated in this case or attempted to sway Judge Gilliam.

Both avoid the real issue—the "appearance of partiality"—which is palpable here.

This Court has *sua sponte* recused itself in (at least) twelve cases when Ms. Knight was VP of litigation for a party.  That should have happened in this case.

This is not a close-call case.

## I.     GOOGLE DOES NOT CONTEST THE TIMELINESS OF THIS MOTION

Google does not dispute, and thus concedes, that the present motion is timely.  It was brought within weeks after Rumble's counsel learned of the Stanford Law School article and the recusals in the other cases.  ABA Formal Opinion 488 likewise recognizes that judges should disclose close friendships or personal relationships that parties might reasonably consider relevant to a potential recusal motion.  Until Rumble's counsel discovered the Stanford article on October 6, 2025, there had been no such disclosure in this case, and Rumble had no opportunity even to consider a Section 455(a) motion, much less to waive it.

## II.     THE CONCEDED FACTS CLEARLY REQUIRE RECUSAL

Google's opposition ignores the timing of the Stanford article, the statements in the Dickerson Declaration, and glosses over the twelve recusals.  Instead, Google insinuates that strategic timing and/or ulterior purposes are the reasons for the motion, as opposed to a good faith belief there is an appearance of partiality that requires recusal.

Given the undisputed facts and the overall weakness of Google's opposition, its  resort to *ad hominem* attacks on Rumble and Rumble's counsel is understandable, but completely baseless.  That the motion was brought timely and in good faith is beyond dispute.  A reasonable person would surely ask – why were recusals appropriate and promptly entered in the other twelve cases when Ms. Knight was VP of litigation for a party, but not appropriate here?  Google does not even attempt an explanation.  Google also does not assert there is any common

denominator among those other recusals other than the undisputed fact that Ms. Knight was VP of litigation for a party when the recusal was entered.

The mere existence of this Court's twelve recusals and the undisputed facts about the closeness and currency of the Knight-Gilliam relationship unquestionably create a disqualifying appearance of partiality.

Notably, neither Google nor Ms. Knight attempt to rebut the long, close, and current relationship between Ms. Knight and Judge Gilliam.  Nor does Google assert that the statements attributed to Judge Gilliam in the article are inaccurate.  Google therefore concedes the closeness and currency of the Knight-Gilliam relationship.  And Google cannot dispute that recusals were promptly issued in the twelve other cases referenced in the motion.

In short, the facts as stated in Rumble's motion and the accompanying declaration are accurate, conceded by Google and clearly confirm the "appearance of partiality."  An indicative order regarding the requested recusal and reassignment is appropriate under these circumstances.

## III.    MS. KNIGHT'S DECLARATION IS IRRELEVANT TO THE APPEARANCE OF PARTIALITY ISSUE

The Knight declaration is notable more for what it *doesn't* say than for what it does.   Ms. Knight distances herself from this case, and assures this Court, Rumble, other litigants who have litigation with Google, and the public at large that notwithstanding her close and current relationship with Judge Gilliam, she has not purposefully attempted to sway the Court in this matter.  These are all irrelevant to the "appearance of partiality" issue.

The Knight declaration confirms that she is not some peripheral, low-level Google employee.  She is Google's Vice President for Legal, Litigation, and Discovery; she supervises more than 200 legal team members; and her group "oversee[s] hundreds of matters" at any given time. ECF 240-1 at ¶ 1.  Those admissions make clear that she is the senior in-house lawyer that sits at the top of Google's litigation pyramid—and that a high-stakes antitrust case seeking significant damages and structural injunctive relief is squarely within the type of matters she oversees.  While she disavows having engaged in any unethical conduct, that has no bearing on the present matter.  Her position very clearly contributes to the appearance of partiality.

Recusal under Section 455(a) does not require the presiding judge and the VP of litigation for a party to engage in *ex parte* communications and/or admit to actual bias or attempts to sway. Recusal turns simply on the *appearance* of partiality. A reasonable observer informed of all the pertinent facts—including Ms. Knight's declaration—would conclude there is at the very least "an appearance of partiality" requiring recusal, just as was done twelve times before. The public sees what is publicly available: a published article describing a very close, ongoing interactive friendship; Ms. Knight's well-publicized role as the Google executive who oversees trial work for the tech giant; and a pattern of recusals in other Google and PayPal cases in which the *only* common denominator is the Knight-Gilliam relationship. Thus, Ms. Knight's declaration does not change how those facts appear to a reasonable observer.

## IV.    GOOGLE'S OPPOSITION CITES TO EASILY DISTINGUISHABLE CASES

### A.    Google's Prior-Recusal Cases Involved Stale and/or Singular Recusals, Unaccompanied by Facts of the Type Present Here

Google cites three out-of-circuit cases that bear no relation to the facts in this case.

First, *Diversified Numismatics v. City of Orlando,* 949 F.2d 382 (11th Cir. 1991), dealt with a judge who recused in three cases in 1988 over counsel's unprofessional conduct. The court noted the passage of time and a lack of current evidence suggesting an appearance of partiality, concluding "we have not been pointed to any evidence of a continuing bias on the part of Judge Sharp … Tempers do cool, and anger does dissipate." *Id.* at 384-85 and n.2. Obviously, the facts in *Diversified* are *far* removed from the facts here (*e.g.,* a long-term, close and current personal relationship involving international travel, giving up tickets to the French Open Tennis Tournament, officiating a wedding, and ongoing fantasy football league participation). *Diversified* is so far removed that by citing it Google merely underscores the weakness of its opposition.

Second, *United States v. Merkt,* 794 F.2d 950 (5th Cir. 1986), involved only a single prior recusal and no other facts that supported recusal:

> Judge Vela's disqualification was not required under § 455 merely because he voluntarily withdrew from another case in which Elder was the defendant. Judge Vela gave no reason for his withdrawal from that case, other than to state that it

was "for none of the reasons urged by the Defendant in his Motions." In this case, Judge Vela considered, and specifically rejected, recusal based on his prior recusal. *The appellants have not shown, by affidavit or otherwise, that Judge Vela's impartiality might reasonably be questioned or that he had a personal bias or prejudice* against either Elder or Merkt or in favor of the government. These facts do not indicate that a reasonable person would harbor doubts about Judge Vela's impartiality based solely on his prior recusal.

*Id.* at 960 (emphasis added). Again, Google cites to an inapt case with *distinctly* different facts that actually supports recusal where, as here, "impartiality might reasonably be questioned." The facts regarding the Knight-Gilliam relationship and the prior twelve recusals more than meet that test.

Finally, *Person v. General Motors Corp.*, 730 F. Supp. 516 (W.D.N.Y. 1990), also involved a single prior recusal and the recusal motion lacked any accompanying substantiation. As the *Person* court explained, the allegations in that case were "so thoroughly vague and unsubstantiated that they are virtually inconsequential for purposes of the present motion" and "the allegations contained in counsel's affidavit are either wholly conclusory or totally without factual support." *Id.* at 519.

In sum, Google cites three completely inapt cases that actually highlight why recusal is necessary here.

### B.    Google's "Just Friends" Cases Are Inapt

Google's claim that Judge Gilliam and Ms. Knight are "just friends" ignores both the nature of their relationship and the twelve prior recusals involving Ms. Knight's employers. The relationship described in the Stanford article—spanning three decades, continuing to this day, involving international travel to speak at the Judge's investiture and the Judge officiating Ms. Knight's wedding—is far from a routine social friendship. And none of Google's "friendship" authorities involved anything comparable, let alone a pattern of twelve prior recusals involving the same friend's employers. These conceded facts render Google's "just friends" argument and cases meaningless.

For example, in *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661 (8th Cir. 2003), the judge hunted with a non-party fact witness who provided testimony in the form of a one and one-half page purely foundational affidavit; there was no evidence of close relationship and no

history of prior recusals. *Id.* at 665. *Selfridge v. Gynecol, Inc.*, 564 F. Supp. 57 (D. Mass. 1983), simply involved a routine professional acquaintance—judges and lawyers interacting through local bar activities—not a close personal relationship, much less one resembling the decades-long, quasi-familial friendship present here. *Id.* at 58. *Diversifoods, Inc. v. Diversifoods, Inc.*, 595 F. Supp. 133 (N.D. Ill. 1984), involved a judge whose spouse's firm handled unrelated matters for the defendant—not anything like a judge's close personal friend serving as the party's senior litigation executive. *Id.* at 137-38. In *Baker v. City of Detroit*, 458 F. Supp. 374 (E.D. Mich. 1978), the relationship was not nearly close as in this case, and there were no prior recusals. *Id.* at 378. *In re Complaint of Judicial Misconduct*, 816 F.3d 12668 (9th Cir. 2016), involved a judge's past attendance at the same university that happened to be a party—an attenuated, impersonal connection bearing no resemblance to the close, decades-long friendship at issue here. *Id.* at 1268. *Henderson v. Dep't of Pub. Safety & Corr.*, 901 F.2d 1288, 1296 (5th Cir. 1990), involved recusal allegations so meritless that, as the court noted, "even the most superficial research would have put [appellant] on notice that the factual circumstances he alleged were not grounds for recusal"—nothing like the close, undisputed, decades-long personal relationship and twelve prior recusals present here. *Id.* at 1296. Similarly, *U.S. v. Murphy,* 768 F.2d 1518, 1537 (7th Cir. 1985), involved attenuated professional contacts and—again—no pattern of recusals. *Id.* at 1537.

In sum, none of Google's authorities describe a very close, current, quasi-familial relationship with a party's senior litigation executive and/or a documented history of prior recusals by the judge involving that individual's employer.

### C.    Google Mischaracterizes *In re Creech*

Google's attempt to distinguish *In re Creech* fails. The Ninth Circuit in *In re Creech*, 119 F.4th 1114 (9th Cir. 2024), stated that the district court judge's friendship with the head of the prosecutor's office (who would not be directly involved in the case) "taken alone, would not necessarily require recusal in a run-of-the-mill case involving" the prosecutor's office. *Id*. at 1123. But *Creech* presented more than a run-of-the-mill case of personal friendship because the

attorney in that case also "*may* have [had] a personal stake in the proceedings." *Id.* at 1122 (emphasis added).

Like *Creech*, this is not a "run-of-the-mill case" that lacks substantial facts relevant to recusal in addition to a long-term, close and current friendship. Clearly, as Google's VP of litigation, Ms. Knight has a personal stake in this case. Every VP of Litigation in every company wants to win cases for the company, particularly one that might result in a huge damages award and injunctive relief forcing Google to change the way it does business in material ways that would also cause it to lose huge sums of lost revenue.

Moreover, this case presents *more facts* favoring recusal than were present in *Creech*. For example, *Creech* did not involve a judge who had *recused himself in a dozen other cases* involving a close friend who was VP of Litigation for one of the parties. Further, the factors in *Creech* were assessed within the context of granting relief via the "drastic and extraordinary remedy" of mandamus, which is "reserved for really extraordinary causes." *Id.* at 1119.

*Creech* thus confirms that a long-standing friendship coupled with a professional stake in the outcome is sufficient to require reassignment, even when the friend is not a party and does not appear as counsel. Where, as here, the relationship is closer, the professional stake more obvious, and there is a pattern of prior recusals involving the same friend's employers, the case for recusal is even stronger than in *Creech*.

### D. Google's Cited *De Novo* Review Cases Are Inapt

Google cites out-of-circuit cases it contends find *de novo* review renders a judge's refusal to recuse harmless. Even if that were an accurate characterization of those cases, it is not the law of the Ninth Circuit. The Ninth Circuit and others hold that "an appellate court can vacate all orders of a district judge who should have been recused." *Creech*, 119 F.4th at 1125.

Like Google here, the plaintiffs in *Shell Oil Co. v. United States*, 672 F.3d 1283 (Fed. Cir. 2012), "argue[d] that any error in the judge's decision not to recuse is harmless because the judgment is subject to *de novo* review on appeal." *Id.* at 1291. And like Google here, the plaintiffs there relied on *Williamson v. Indiana Univ.*, 345 F.3d 459 (7th Cir. 2003), *Patterson v. Mobil Oil Corp.*, 335 F.3d 476 (5th Cir. 2003), and *Higganbotham v. Oklahoma*, 328 F.3d 638

(10th Cir. 2003).  In addition to not being Ninth Circuit cases, those cases did not present the risk

of potential injustice and concern as to public confidence as in *Shell Oil* or this case:

> Unlike the circumstances here, however, the courts in the cases upon which
> Plaintiffs rely specifically found that the risks of injustice and concern for public
> confidence set forth in *Liljeberg* were not implicated.  *See Williamson*, 345 F.3d
> at 465 ("Likewise, the risk of injustice in other cases and concern for public
> confidence are not implicated by these facts."); *Higganbotham*, 328 F.3d at 646
> (considering the risks from *Liljeberg* and concluding that "none of these risks is
> present"); *Patterson*, 335 F.3d at 486 (considering the risk of injustice and the
> public's confidence in the judicial process in finding that the § 455(a) violation
> constituted harmless error).

*Shell Oil*, 672 F.3d at 1293-94.  Moreover, the court in *Shell Oil* pointed out the inherent danger

generally of unduly weighing *de novo* review in a harmless error analysis:

> The fact that this court reviews the grant of summary judgment *de novo* does
> not supplant our consideration of potential injustice stemming from a trial judge's
> failure to recuse … .  In other words, a judge's failure to recuse does not
> automatically constitute harmless error whenever there is *de novo* review on
> appeal.  Otherwise, … under Plaintiffs' theory, there would be no need for a trial
> judge to recuse from any action in which the appellate court will apply *de novo*
> review. …  Such a result is untenable.

*Id.* at 1294.

Other circuits have also declined to find that *de novo* review renders a refusal to recuse

harmless.  For example, in *Litovich v. Bank of Am. Corp.* 106 F.4th 218 (2nd Cir. 2024):

> … Defendants argue[d] in the alternative that even assuming a § 455(a) violation
> based on the appearance of partiality, this Court's *de novo* review of the district
> court's decision to grant the motion to dismiss "ensures that no injustice will
> occur … and renders any recusal failure harmless."
>
> …
>
> … [D]e novo review of the merits of the underlying claim by a Court of Appeals
> does not solve this problem because the root issue—repeated violations of §
> 455—goes unaddressed if the burden of ameliorating it is shifted to reviewing
> courts.  Here, due to the length of time that Judge Liman presided over this case
> with a conflict—albeit almost certainly unknowingly—and the substantive
> motions that came before him in that period, … we therefore vacate the decision
> of the district court granting Defendants' motion to dismiss.

*Id.* at 226, 228.

At bottom, the notion that a district court can ignore a clear appearance of partiality and its obligations under Section 455(a) simply because its ruling will be or may be subject to *de novo* review turns the express language and intent of Section 455(a) on its head.  As noted above, *de novo* review is not an exception to Section 455(a).  In the cases where *de novo* review was cited, it was an add-on factor in a situation where the alleged "appearance of partiality" was tenuous to begin with at best.  That is *not* the situation here.

Indeed, as in *Shell Oil*, there are risks of injustice and to public confidence in the judicial system not present in the out-of-circuit cases cited by Google, or even in *Creech*.  The mere existence of *de novo* review of the Court's summary dismissal of this antitrust action does not protect public confidence in the judicial system in light of the undisputed facts, particularly all of the prior recusals.

As the D.C. Circuit noted in *In re Al-Nashiri*, 921 F.3d 224 (2019), appellate review "on the merits cannot 'detect all of the ways that bias can influence a proceeding.'"  *Id.* at 240-41 (vacating "*all orders* entered … after … the date of [the judge's conflict-creating job] application" to "sufficiently scrub the case of judicial bias without imposing an unnecessarily 'draconian remedy.'") (emphasis added) (cited in *Creech*, 119 F.4th at 1125).

Ultimately, any "unfairness and expense which results from disqualification … can be avoided in the future only if each judge fully accepts the obligation to disqualify himself in any case in which his impartiality might reasonably be questioned."  *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1115 (5th Cir.), *cert. denied*, 449 U.S. 820 (1980) (quoted with approval in *Preston v. United States*, 923 F.2d 731, 735-36 (9th Cir. 1991)).

## V.    CONCLUSION

This is not remotely a close case.  The weakness of Google's opposition is shown by its silence as to the public-appearance effect of this Court's pattern of *twelve* recusals in other Google/Paypal cases but not this one, and failure to rebut or furnish evidence contesting any of the statements in the Stanford article or their impact on public appearance.  Google makes no meaningful substantive opposition at all.

1      Google's suggestion that this Court should not issue an indicative ruling at this time is

2  unwise but not unexpected.  The appearance problem exists now, independent of how the Ninth

3  Circuit ultimately decides the appeal.  Moreover, if the Court defers at Google's request, that

4  would itself add to the appearance of partiality given the prompt recusals entered by the Court in

5  the other Google and PayPal cases with similar facts.

6      This Court should promptly enter an indicative ruling that it would recuse itself and direct

7  the case for reassignment if the matter is remanded, for example per FRAP Rule 12.1.  Rumble

8  respectfully submits that a timely indicative ruling of recusal and reassignment will avoid

9  imposing on the Circuit Court the issue of whether to include an order reassigning the case if

10  remanded.

11  Date: November 26, 2025                Respectfully submitted,

12                                        /s/ *Robert W. Dickerson, Jr.*
                                          Robert W. Dickerson, Jr.
13
14                                        ROBERT W. DICKERSON, JR., ESQ.
                                          ALLAN W. JANSEN, ESQ.
15                                        EHAB M. SAMUEL, ESQ.
                                          COMPETITION & TECHNOLOGY LAW GROUP, LLP
16                                        11400 West Olympic Boulevard, Suite 200
                                          Los Angeles, California 90064
17                                        (310) 774-2337 Telephone
                                          rdickerson@comp-techlaw.com
18
                                          PHILIP J. IOVIENO, ESQ
19                                        JACK G. STERN, ESQ.
                                          CADWALADER, WICKERSHAM & TAFT, LLP
20                                        200 Liberty Street
                                          New York, New York 10281
21                                        (212) 504-6000 Telephone
                                          philip.iovieno@cwt.com
22                                        jack.stern@cwt.com
                                          abigail.kingsley@cwt.com
23
24                                        KRISTEN J. MCAHREN, ESQ.
                                          SANDERS KEYES GILMER, ESQ.
25                                        CADWALADER WICKERSHAM & TAFT, LLP
                                          1919 Pennsylvania Avenue NW
26                                        Washington, District of Columbia 20006
                                          (202) 862-2200 Telephone
27                                        kristen.mcahren@cwt.com
                                          keyes.gilmer@cwt.com
28

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Reply Brief with the Clerk of the Court for the United States District Court for the Northern District of California CM/ECF system on November 26, 2025.

I also hereby certify that service of this document on all participants in this case who are registered CM/ECF users and have appeared for a party will be accomplished by the Court's CM/ECF system promptly upon filing of the referenced document via emails to each such participant by the CM/ECF system.

Date: November 26, 2025                    by:  /s/ *Robert W. Dickerson, Jr.*
                                                  Robert W. Dickerson, Jr.